1   Stephen G. Contopulos, SBN 50317
    scontopulos@sidley.com
2   Bradley H. Ellis, SBN 110467
    bellis@sidley.com
3   SIDLEY AUSTIN LLP
    555 West Fifth Street, Suite 4000
4   Los Angeles, California  90013
    Telephone:  (213) 896-6000
5   Facsimile:  (213) 896-6600

6   Attorneys for Defendant Random House,
    Inc., also erroneously sued as Broadway Books
7   and Crown Publishing Group

8              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF CALIFORNIA
9

10  ROB STUTZMAN, JONATHAN WHEELER,      )   CASE No. 2:13-cv-00116-MCE-KJN
    GLORIA LAURIA, DAVID REIMERS and      )
11  SCOTT ARMSTRONG, on behalf of         )
    themselves and all others similarly situated,  )   DEFENDANTS RANDOM HOUSE, INC.,
12                                        )   BROADWAY BOOKS, AND CROWN
                    Plaintiffs,           )   PUBLISHING GROUP'S NOTICE OF
13                                        )   MOTION AND SPECIAL MOTION TO
    vs.                                   )   STRIKE THE FIRST AMENDED
14                                        )   COMPLAINT PURSUANT TO
                                          )   CALIFORNIA CODE OF CIVIL
15  LANCE ARMSTRONG; PENGUIN GROUP        )   PROCEDURE § 425.16; MEMORANDUM
    (USA), INC.; G.P. PUTNAM'S SONS; THE  )   OF POINTS AND AUTHORITIES
16  BERKLEY PUBLISHING GROUP;             )
    RANDOM HOUSE, INC.; BROADWAY          )
17  BOOKS; CROWN PUBLISHING GROUP;        )   Date:      July 25, 2013
    THOMAS W. WEISEL; WILLIAM J.          )   Time:      2:00 p.m.
18  STAPLETON; and DOES 1-50, inclusive,  )   Location:  Courtroom 7, 14th Floor
                                          )   Judge:     The Honorable Morrison C.
19                  Defendants.           )              England, Jr.
                                          )

20

21

22

23

24

25

26

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 25, 2013 at 2:00 p.m. in Courtroom 7 of the above-entitled court, located at the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814, Defendant Random House, Inc., also erroneously sued as Broadway Books and Crown Publishing Group ("Random House"), will and hereby does move pursuant to California Code of Civil Procedure § 425.16 (the "anti-SLAPP statute") to strike Plaintiffs Rob Stutzman, Jonathan Wheeler, Gloria Lauria, David Reimer, and Scott Armstrong's ("Plaintiffs") First Amended Class Action Complaint (the "Complaint"), which challenges a book published by Random House entitled *Every Second Counts*.  The anti-SLAPP statute applies to this action, because *Every Second Counts* constitutes an exercise of Random House's First Amendment rights and addresses a matter of public interest.[1]

Plaintiffs cannot establish a probability of prevailing on any of their claims against Random House, as they must pursuant to the anti-SLAPP statute, because all such claims are subject to dismissal for each of the following reasons:

1.      All claims against Random House are barred as a matter of law by the First Amendment to the United States Constitution;

2.      The Complaint fails to state facts sufficient to show Plaintiffs are entitled to relief as against Random House, as required by Fed. R. Civ. P. 8 as construed by the United States Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

3.      Plaintiffs' false advertising claims pursuant to California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) ("UCL"), False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*) ("FAL"), and Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*) ("CLRA") fail as a matter of law, because the representations by Random House on which Plaintiffs' claims are premised would not deceive a reasonable consumer as a matter of law;

---

[1] Random House reserves the right to file a subsequent motion seeking attorneys' fees and costs that were incurred in the drafting of this motion and related papers.

4.     Plaintiffs fail to state a UCL, FAL, CLRA, negligent misrepresentation, or fraud claim against Random House.

This motion ("Motion to Strike") is further supported by Random House's accompanying Memorandum of Points and Authorities; Random House's Motion to Dismiss the First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss"); Random House's Request for Judicial Notice in Support of its Motion to Strike and Motion to Dismiss; Random House's Notice of Lodging the Paperback and Hardcover Editions of the Book *Every Second Counts*; any further evidence or argument submitted by Random House at or before the hearing on this motion; as well as Defendant Penguin Group (USA) Inc., G.P. Putnam's Sons, and the Berkley Publishing Group's Special Anti-SLAPP Motion to Strike and Motion to Dismiss, both of which are adopted herewith.


Dated:  April 26, 2013                    SIDLEY AUSTIN LLP
                                          Stephen G. Contopulos
                                          Bradley H. Ellis


                                          By: /s/ Stephen G. Contopulos
                                              Stephen G. Contopulos
                                              Attorneys for Defendant Random House, Inc.,
                                              also erroneously sued as Broadway Books and
                                              Crown Publishing Group

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................3

I.     THE ANTI-SLAPP STATUTE APPLIES TO THE COMPLAINT .................................3

    A.    The Complaint Targets Conduct In Furtherance Of The Constitutional Right Of Free Speech ...................................................................................3

    B.    The Complaint Targets Speech Pertaining To Matters Of Public Interest .............4

    C.    The Complaint Is Not Exempted From The Anti-SLAPP Statute Pursuant To Section 425.17 Of The California Code Of Civil Procedure ...................................5

II.    THE COMPLAINT SHOULD BE DISMISSED, BECAUSE PLAINTIFFS CANNOT ESTABLISH A PROBABILITY OF PREVAILING ON ANY OF THEIR CLAIMS ......6

    A.    The First Amendment Bars The Complaint In Its Entirety .................................7

        1.    Random House Is Not The Guarantor Of The Book's Factual Accuracy ...................................................................................7

        2.    Random House's Statements Are Not Commercial Speech And Are Therefore Subject To Full First Amendment Protection ...........................8

        3.    Random House's Statements Are Protected By The "Adjunct Use" Doctrine ...................................................................................9

    B.    Plaintiffs Cannot Plausibly Allege Scienter, i.e., That Random House Knew Or Should Have Known The Representations Were False ...................................10

    C.    The Complaint Fails To State A Plausible Claim For Relief, Because The Representations On Which Plaintiffs Premise Their Claims Are True ................13

    D.    Plaintiffs Cannot Plausibly Allege They Relied On Random House's Statements ...................................................................................15

    E.    Each Claim Fails Individually For Separate And Independent Reasons ...............16

        1.    Plaintiffs' UCL, FAL, And CLRA Claims Fail, Because The Statements At Issue Would Not Deceive A Reasonable Consumer ..........16

        2.    The Complaint Fails To Plausibly Allege A Violation Of The CLRA .....18

        3.    The Complaint Fails To Plausibly Allege A Violation Of The UCL ........19

        4.    Plaintiffs' Fraud And Negligent Misrepresentation Claims Fail ..............19

III.    THE CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ....................................20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aldrin v. Topps Co.,*
No. CV 10-09939, 2011 WL 4500013 (C.D. Cal. Sept. 27, 2011) ........................................9

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................................10

*Barden v. HarperCollins Publishers, Inc.,*
863 F. Supp. 41 (D. Mass. 1994).......................................................................................8

*Beckham v. Bauer Publ'g Co., L.P.,*
No. CV 10-7980, 2011 WL 977570 (C.D. Cal. Mar. 17, 2011)............................................5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................................10

*Blanchard v. DIRECTV, Inc.,*
123 Cal. App. 4th 903 (2004), *review denied* (2005) ..........................................................5

*Browne v. McCain,*
611 F. Supp. 2d 1062 (C.D. Cal. 2009)..............................................................................20

*Buzayan v. City of Davis Police Dep't,*
No. 2:06-CV-1576, 2007 WL 1831139 (E.D. Cal. June 25, 2007)...................................4, 11

*Carson v. Bank of Am., N.A.,*
No. 2:12–cv–00739, 2012 WL 6047372 (E.D. Cal. Dec. 5, 2012) ......................................15

*Carver v. Bonds,*
135 Cal. App. 4th 328 (2005) .............................................................................................4

*Charles v. City of Los Angeles,*
697 F.3d 1146 (9th Cir. 2012)........................................................................................9, 10

*Club Members For An Honest Election v. Sierra Club,*
45 Cal. 4th 309 (2008)........................................................................................................5

*Consumer Advocates v. Echostar Satellite Corp.,*
113 Cal. App. 4th 1351 (2003) .........................................................................................16

*Creative Ventures, LLC v. Jim Ward & Assocs.,*
195 Cal. App. 4th 1430 (2011) .........................................................................................19

*Dex Media West, Inc. v. City of Seattle,*
696 F.3d 952 (9th Cir. 2012) ..............................................................................................8

*Equilon Enterprises v. Consumer Cause, Inc.*,
    29 Cal. 4th 53 (2002)........................................................................................2

*Flores v. Emerich & Fike*,
    No. 1:05–CV–0291, 2006 WL 2536615 (E.D. Cal. Aug. 31, 2006).......................20

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995).............................................................................16

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)....................................................................................7, 11

*Gilbert v. Sykes*,
    147 Cal. App. 4th 13 (2007)..............................................................................7

*Greenspan v. Random House, Inc.*,
    859 F. Supp. 2d 206 (D. Mass. 2012), *aff'd*, 2012 WL 5188792
    (1st Cir. 2012), *cert. denied*, 2013 WL 449782 (U.S. 2013)........................14, 18

*Groden v. Random House, Inc.*,
    61 F.3d 1045 (2d Cir. 1995)............................................................................9, 14

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010).....................................................................3, 4, 5, 7

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988)..........................................................................................11

*In re First Alliance Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006)............................................................................11

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    MDL No. 11md2258, 2012 WL 4849054 (S.D. Cal. Oct. 11, 2012)....................19

*Ingels v. Westwood One Broadcasting Servs., Inc.*,
    129 Cal. App. 4th 1050 (2005)......................................................................6, 19

*Jones v. CitiMortgage, Inc.*,
    No. CV F 12–2067, 2013 WL 504761 (E.D. Cal. Feb. 8, 2013).........................20

*Kaing v. Pulte Homes, Inc.*,
    No. 09-5057, 2010 WL 625365 (N.D. Cal. Feb. 18, 2010)................................16

*Keimer v. Buena Vista Books, Inc.*,
    75 Cal. App. 4th 1220 (1999)...........................................................................10

*Kowalsky v. Hewlett-Packard Co.*,
    771 F. Supp. 2d 1156 (N.D. Cal. 2011)............................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Lacoff v. Buena Vista Publ'g, Inc.*,
    183 Misc. 2d 600, 705 N.Y.S.2d 183 (2000)................................................9, 10

*Lane v. Random House, Inc.*,
    985 F. Supp. 141 (D.D.C. 1995)......................................................................10

*Long v. Hewlett-Packard Co.*,
    No. 06-02816, 2007 WL 2994812 (N.D. Cal. July 27, 2007)...........................18

*Low v. LinkedIn Corp.*,
    Case No. 11–CV–01468, 2012 WL 2873847 (N.D. Cal. July 12, 2012)............15

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012)..............................................................................2

*McDonald v. Coldwell Banker*,
    543 F.3d 498 (9th Cir. 2008)............................................................................19

*McKinniss v. Sunny Delight Beverages Co.*,
    No. CV 07-02034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007)..................16, 17

*Moreau v. Daily Indep.*,
    No. 1:12–CV–01862, 2013 WL 85362 (E.D. Cal. Jan. 8, 2013)........................4

*Morgan v. Harmonix Music Sys., Inc.*,
    No. C08-5211, 2009 WL 2031765 (N.D. Cal. July 7, 2009)............................18

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009)............................................................................10

*N.A.A.C.P. v. Button*,
    371 U.S. 415 (1963)............................................................................................7

*Nygard, Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027 (2008).......................................................................4, 5

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*,
    487 U.S. 781 (1988)........................................................................................8, 9

*Rivero v. Am. Fed'n of State, County and Mun. Employees*,
    105 Cal. App. 4th 913 (2003)............................................................................4

*Rusheen v. Cohen*,
    37 Cal. 4th 1048 (2006)......................................................................................1

*Sateriale v. R.J. Reynolds Tobacco Co.*,
    697 F.3d 777 (9th Cir. 2012).......................................................................15, 16

*Settle v. World Sav. Bank, F.S.B.*,
    No. ED CV 11–00800, 2012 WL 1026103 (C.D. Cal. Jan. 11, 2012)................20

RANDOM HOUSE'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE CIV. PROC. § 425.16
CASE NO. 2:13-cv-00116-MCE-KJN

*Shepard v. Miller*,
  No. CIV. 2:10–1863, 2010 WL 5205108 (E.D. Cal. Dec. 15, 2010) ......................................4

*Snyder v. Phelps*,
  131 S. Ct. 1207 (2010) ......................................7

*Stuart v. Cadbury Adams USA, LLC*,
  No. CV 09-6295, 2010 WL 1407303 (C.D. Cal. Apr. 5, 2010) ............................15

*United States v. Alvarez*,
  132 S. Ct. 2537 (2012) ......................................7

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
  190 F.3d 963 (9th Cir. 1999) ......................................3

*Varian Medical Systems, Inc. v. Delfino*,
  35 Cal. 4th 180 (2005) ......................................1

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976) ......................................8

*Winter v. G.P. Putnam's Sons*,
  938 F.2d 1033 (9th Cir. 1991) ......................................7, 8

STATUTES

Cal. Bus. & Prof. Code § 17200 ......................................1

Cal. Bus. & Prof. Code § 17500 ......................................1, 11

Cal. Bus. & Prof. Code § 17502 ......................................11

Cal. Civ. Code § 1750 ......................................1

Cal. Civ. Code § 1755 ......................................11

Cal. Civ. Code § 1770 ......................................18

Cal. Code Civ. Proc. § 425.16(a) ......................................3

Cal. Code Civ. Proc. § 425.16(b)(1) ......................................6

Cal. Code Civ. Proc. § 425.16(e) ......................................4

Cal. Code Civ. Proc. § 425.16(e)(3) ......................................4

Cal. Code Civ. Proc. § 425.17(b) ......................................5

Cal. Code Civ. Proc. § 425.17(d)(1)-(3) ......................................5

RANDOM HOUSE'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE CIV. PROC. § 425.16
CASE NO. 2:13-cv-00116-MCE-KJN

**RULES AND OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2) ............................................................................................ 10

The First Amendment to the United States Constitution.........................................passim

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3

Notwithstanding their 85 page, prolix First Amended Class Action Complaint (Dkt. No. 22)

4

(the "Complaint"), Plaintiffs' allegations against Random House are thin.  Plaintiffs contend that

5

Random House falsely represented (1) that the book *Every Second Counts*, an autobiographical

6

memoir about the life of world famous cyclist Lance Armstrong published by Random House in

7

2003, is a "true and honest work of non-fiction biography," and (2) that its author is "the five-time

8

Tour de France winner." *See, e.g.,* Compl. ¶¶ 115, 130-31, 140(b), 150, 152, 165 and Ex. A.[1]  As is

9

now well-known, for years Armstrong lied about his use of performance-enhancing drugs.  Through

10

this action, Plaintiffs seek to punish Random House for those lies, contending that, because

11

Armstrong lied in his autobiography, the book is not a "biography" at all, but rather a "work[] of

12

*fiction*," and that Armstrong is not a "five-time Tour de France winner," because he "doped his way

13

to his 'victories'" and Random House is responsible for disseminating these alleged falsehoods.[2]

14

Plaintiffs' meritless lawsuit is the quintessential "SLAPP" suit – a strategic lawsuit against

15

public participation that "seeks to chill or punish a party's exercise of constitutional rights to free

16

speech . . . ."  *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055 (2006).  The California Legislature enacted

17

section 425.16 to prevent and deter lawsuits aiming to chill constitutional rights by providing a

18

mechanism for "ending [the SLAPP] early and without great cost to the SLAPP target."  *See Varian*

19

*Medical Systems, Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005) (internal quotation marks omitted).

20

Here, Random House's allegedly false statements are exercises of First Amendment rights

21

22

[1] As detailed *infra* fn. 12, Plaintiffs do not allege where or when Random House supposedly used the phrase "true and honest work of non-fiction," which does not appear on the book's cover or its flyleaf.  *See* Defendants Random House Inc., Broadway Books, and Crown Publishing Group's Notice of Lodging the Paperback and Hardcover Editions of the Book *Every Second Counts* ("Notice of Lodging").  Regardless, had Random House used that phrase, it would make no difference to the outcome – the case should still be dismissed for multiple, independent reasons.

23

24

25

[2] The Complaint alleges claims against Random House pursuant to (1) the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA") (Compl. ¶¶ 113-118), (2) the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") (*id.* ¶¶ 127-134), and (3) the False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL") (*id.* ¶¶ 139-142), as well as common law claims for (4) negligent misrepresentation (*id.* ¶¶ 149-154), and (5) fraud and deceit (*id.* ¶¶ 164-172).  All claims against Random House are based on its publication of *Every Second Counts*, which is the only book included in the Complaint that Random House published.

26

27

28

concerning matters of public interest, deserving of the highest level of legal protection.  As such, before substantial resources are spent in litigation, by this motion Random House seeks an expeditious end to Plaintiffs' suit, which suffers from multiple independent and irremediable legal defects.  *See Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 66 (2002) (referring to "the Legislature's carefully crafted scheme for disposing of SLAPP's quickly and at minimal expense to taxpayers and litigants").[3]

First, all of Plaintiffs' claims against Random House are barred as a matter of constitutional law.  Random House's statements are not "commercial speech" because they do not merely "propose a commercial transaction."  Moreover, even assuming *arguendo* the statements contained some commercial content, they are still fully protected by the First Amendment, because these statements also describe the book's text and are thus "inextricably interwined" with First Amendment speech.  Further, these statements are protected from liability by the "adjunct use" doctrine, which shields the truthful promotion of First Amendment speech from tort and false advertising liability.  Finally, Plaintiffs' theory of liability for each of its causes of action depends on the imposition of a duty by Random House to verify the factual accuracy of the statements contained in *Every Second Counts*.  The First Amendment prohibits the imposition of any such duty, and, therefore, Plaintiffs' fundamental theory of liability fails.

Second, the Complaint fails as a matter of law, because Plaintiffs cannot plausibly allege either scienter or reliance – both required elements of all claims.  Plaintiffs themselves allege they failed to uncover the truth and could not have done so "in the exercise of reasonable diligence." These allegations undermine any plausible contention that Random House – among all the people and entities Armstrong duped – reasonably should have known Armstrong was lying.  Further, Plaintiffs' allegations of what caused them to buy *Every Second Counts* are flatly inconsistent with any plausible contention that they relied on Random House's representations in buying the book.

---

[3] In addition to the numerous, irremediable defects respecting the merits of Plaintiffs' claims, Plaintiffs' putative class cannot be certified under Rule 23.  Individualized issues predominate, including issues relating to when and why each consumer bought the book. *See, e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (vacating class certification because "an individualized case must be made for each member showing reliance").

For both of these reasons – either one of which is a sufficient basis for the dismissal of all claims against Random House with prejudice – Plaintiffs fail to state a plausible claim.

Third, Armstrong's recent admission that he has been lying about his use of performance-enhancing drugs for over a decade does not render the challenged Random House statements untrue. The book remains Armstrong's own account of his life, and thus remains a biography or autobiography; we now simply know that he *lied* in that account. Equally implausible is Plaintiffs' contention that, because Armstrong doped to win the Tour de France, it is false to say he "won" the Tour de France. But Armstrong did win the Tour de France; we now simply know that he *cheated* doing so. Accordingly, the Complaint fails to state a plausible claim for this reason as well.

Plaintiffs' claims are individually defective as a matter of law for various additional reasons, as detailed below. For all these reasons, the Court should grant this motion with prejudice.

## ARGUMENT

### I.   THE ANTI-SLAPP STATUTE APPLIES TO THE COMPLAINT

The anti-SLAPP statute, which by its terms is to be "construed broadly," permits a party to file a special motion to strike claims that (1) arise from conduct in furtherance of constitutional rights, and that (2) involve speech that addresses "a public issue." Cal. Code Civ. Proc. § 425.16(a) and (e).[4] Both elements are satisfied here.

#### A.   The Complaint Targets Conduct In Furtherance Of The Constitutional Right Of Free Speech

Section 425.16(e)(4) establishes a low threshold for "conduct in furtherance of" constitutional free speech rights, which is satisfied by showing merely that "the defendant's activity is communicative." *Hilton v. Hallmark Cards*, 599 F.3d 894, 904 (9th Cir. 2010) (greeting card bearing image and catchphrase of Paris Hilton "falls comfortably within the universe of types of communication that California courts have considered 'conduct in furtherance of' the exercise of free speech rights upon which to base anti-SLAPP motions to strike"). As the Ninth Circuit explained, the statutory "language includes not merely actual exercises of free speech rights but also

---

[4] Anti-SLAPP motions may be filed in federal court. *See United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972 (9th Cir. 1999).

1   conduct that furthers such rights." *Id.* at 903.

2       Statements made about the biographical nature of *Every Second Counts* and the cycling

3   career of its world-famous author in connection with the publication of a bestselling book

4   undeniably constitute "communicative activity" that satisfies this threshold. *See Shepard v. Miller*,

5   No. CIV. 2:10–1863, 2010 WL 5205108, at *7 (E.D. Cal. Dec. 15, 2010) (UCL claim arising from

6   research and publication of a book about mental health issues and therapy); *Carver v. Bonds*, 135

7   Cal. App. 4th 328, 342 (2005) (publication of news article about plaintiff's relationship with sports

8   star Barry Bonds was an exercise of free speech covered by Section 425.16).

9       Moreover, as alleged in the Complaint, *see* Compl. ¶ 25, the statements at issue were made

10  in various public forums, including the internet, and thus were "made in a place open to the public

11  or a public forum" within the meaning of Section 425.16(e)(3) of the Code of Civil Procedure. *See*

12  *Moreau v. Daily Indep.*, No. 1:12–CV–01862, 2013 WL 85362, at *4 (E.D. Cal. Jan. 8, 2013)

13  (article published in print and website constituted statements "'made in a place open to the public or

14  a public forum' within the meaning of the anti-SLAPP statute" (quoting Section 425.16(e)(3)).

15       **B.    The Complaint Targets Speech Pertaining To Matters Of Public Interest**

16       In addition, it cannot seriously be disputed that Random House's representations regarding

17  *Every Second Counts* and its author's participation in the Tour de France constitute speech

18  pertaining to "a public issue" or an "issue of public interest" pursuant to Section 425.16(e).

19       As this Court has noted, an issue of public interest is simply "'something of concern to a

20  substantial number of people.'" *Buzayan v. City of Davis Police Dep't*, No. 2:06-CV-1576, 2007

21  WL 1831139, at *3 (E.D. Cal. June 25, 2007) (England, Jr., J.); *see also Nygard, Inc. v. Uusi-*

22  *Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) ("'[A]n issue of public interest' within the meaning

23  of section 425.16, subdivision (e)(3) is *any issue in which the public is interested*. In other words,

24  the issue need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is

25  one in which the public takes an interest."). The "public interest" element is also met if the

26  statements "concerned a person or entity in the public eye." *Rivero v. Am. Fed'n of State, County*

27  *and Mun. Employees*, 105 Cal. App. 4th 913, 924 (2003).

28       Random House's representations easily satisfy this standard. The statements describe an

1   athlete famous around the world.  *Hilton*, 599 F.3d at 907 ("There is no dispute that [Paris] Hilton is

2   a person 'in the public eye.'"); *Beckham v. Bauer Publ'g Co., L.P.*, No. CV 10-7980, 2011 WL

3   977570, at *1 (C.D. Cal. Mar. 17, 2011) ("Plaintiff [David Beckham] is a world renowned soccer

4   star who is no stranger to the media and he puts himself in the public spotlight."); *Nygard, Inc.*, 159

5   Cal. App. 4th at 1042 ("public interest" element satisfied by story regarding prominent

6   businessman).  The statements also describe a book about an issue of widespread public interest,

7   i.e., doping in cycling, and, in particular, Lance Armstrong's autobiographical story respecting

8   doping and his cycling career.  *See Beckham* at *1 ("Allegations of [David Beckham's] alleged

9   affairs would be a topic of interest to a wide variety of people.").

### C.   The Complaint Is Not Exempted From The Anti-SLAPP Statute Pursuant To Section 425.17 Of The California Code Of Civil Procedure

10
11          In the Joint Status Report filed pursuant to Rule 26 of the Federal Rules of Civil Procedure,

12   Plaintiffs took the position that their lawsuit is exempt from the anti-SLAPP statute pursuant to Cal.

13   Code Civ. Proc. § 425.17(b), because it is a "proposed class action."  *See* Dkt. No. 33 at 6.

14   Plaintiffs simply misread this statute, which by its plain terms applies only to actions "brought

15   solely in the public interest or on behalf of the general public."  Plaintiffs' action is not brought

16   solely in the public interest; it seeks relief only on behalf of a putative class of purchasers of

17   Armstrong's books.  *See Club Members For An Honest Election v. Sierra Club*, 45 Cal. 4th 309,

18   317 (2008) ("The statutory language of 425.17(b) is unambiguous and bars a litigant seeking 'any'

19   personal relief from relying on the section 425.17(b) exception."); *Blanchard v. DIRECTV, Inc.*,

20   123 Cal. App. 4th 903, 916 (2004) (holding the exemption inapplicable to putative UCL class

21   action seeking injunction and restitution because the lawsuit was "not designed to confer a benefit

22   upon anyone other than plaintiffs," and noting that the exemption applies only to suits in which a

23   person acts only in the public interest as a private attorney general and does not seek special relief

24   for themselves), *review denied* (2005).

25          In addition, the anti-SLAPP provisions specifically provide that Section 425.17(b) does not

26   apply to three enumerated categories of defendants.  *See* Cal. Code Civ. Proc. § 425.17(d)(1)-(3).

27   Random House qualifies under two of these categories.

28

First, Section 425.17(d)(1) provides that anti-SLAPP protections remain for "any person engaged in the dissemination of ideas or expression in any book or academic journal, while engaged in the . . . processing of information for communication to the public." Plaintiffs premise their claims on Random House's descriptions of the biographical nature of *Every Second Counts* and its author's cycling accomplishments made in connection with the book's publication. As such, the claims are based upon Random House's processing of information provided by Lance Armstrong about his life, as Random House prepared to communicate that information to the public.

Second, Section 425.17(d)(2) provides that anti-SLAPP protections remain in actions against "any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work, including, but not limited to, a motion picture or television program, or an article published in a newspaper or magazine of general circulation." *See Ingels v. Westwood One Broadcasting Servs., Inc.*, 129 Cal. App. 4th 1050, 1067-68 (2005) (applying Section 425.17(d)(2) in suit against radio talk show host and show's producer). Plaintiffs' claims against Random House, a book publisher, are based upon its involvement in the "creation," "dissemination," and/or "advertisement" of *Every Second Counts*, a "literary…work."[5] Accordingly, the Complaint falls within the plain language of this provision. *See id.* at 1067 (Section 425.17(d) specifically intended to "exempt the news media and *other media defendants*" (emphasis added)) (quoting Sen. Com. on Judiciary, Analysis of Sen. Bill No. 515 (2003–2004 Reg. Sess.) as amended May 1, 2003, p. 14).

## II.    THE COMPLAINT SHOULD BE DISMISSED, BECAUSE PLAINTIFFS CANNOT ESTABLISH A PROBABILITY OF PREVAILING ON ANY OF THEIR CLAIMS

Because Random House has met its burden of establishing that Section 425.16 applies, the burden of proof shifts to Plaintiffs, who must demonstrate a "***probability*** that [they] will prevail" to avoid dismissal of this lawsuit. Cal. Code Civ. Proc. § 425.16(b)(1) (emphasis added). Specifically, Plaintiffs must demonstrate that the Complaint is *both* (i) "'legally sufficient'" and (ii) "'supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the

---

[5] "Literary" means "of or relating to books." *See* http://www.merriam-webster.com/dictionary/literary.com. (last visited April 24, 2013)

1   evidence submitted by the plaintiff is credited.'"  *Hilton*, 599 F.3d at 903 (quoting *Wilson v. Parker,*

2   *Covert & Chidester*, 28 Cal. 4th 811, 821 (2002)).  In short, Plaintiffs must both "state" and

3   "substantiate" a legally sufficient claim.  *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 31 (2007).  To the

4   extent they rely on evidence, Plaintiffs' "showing must be made through 'competent and admissible

5   evidence.'"  *Id.* at 26.  For multiple reasons, even accepting the Complaint's allegations of fact as

6   true, Plaintiffs cannot meet their burden.

   **A.    The First Amendment Bars The Complaint In Its Entirety**

7       It is axiomatic that any statement in the text of *Every Second Counts* is speech protected to

8   the highest possible level by the First Amendment.  *Snyder v. Phelps*, 131 S. Ct. 1207, 1215 (2010).

9   Accordingly, to the extent Plaintiffs' claims are premised on statements, even if false, in the text of

10  *Every Second Counts*, they are barred by the First Amendment.  *See United States v. Alvarez*, 132 S.

11  Ct. 2537, 2550 (2012) ("The remedy for speech that is false is speech that is true.  This is the

12  ordinary course in a free society.  The response to the unreasoned is the rational; to the uninformed,

13  the enlightened; to the straightout lie, the simple truth."); *N.A.A.C.P. v. Button*, 371 U.S. 415, 444-

14  45 (1963) ("the Constitution protects expression and association without regard to the . . . truth,

15  popularity, or social utility of the ideas and beliefs which are offered").[6]  In addition, as detailed

16  below, the First Amendment also bars claims *about* the book, i.e., claims premised on the

17  description of the book as a "biography" and its author as a Tour de France "winner."

   **1.    Random House Is Not The Guarantor Of The Book's Factual Accuracy**

18      Under controlling First Amendment jurisprudence, a claim that would effectively impose a

19  duty on a book publisher to verify the factual accuracy of statements in a book is precluded as a

20  matter of law.  In *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9th Cir. 1991), readers of a

21  reference guide for mushrooms were poisoned from eating mushrooms and sued the book's

---

[6] As noted above, Plaintiffs' claims against Random House are premised on only two representations, both of which are statements *about* the book *Every Second Counts* and not part of the book's text.  Nevertheless, the Complaint is a tangled mess of "shotgun" allegations regarding various books and five Named Defendants.  Accordingly, while it does not appear that any claims against Random House are based on the text of *Every Second Counts*, to the extent the Complaint purports to allege any such claims, they are indisputably barred by the First Amendment.  This issue is more fully briefed in the Motion to Dismiss filed by Defendant Penguin Group (USA) Inc., *see* Section V.B, and Random House incorporates that briefing here.

LA1 2719072v.1

1   publisher under the theory that "the publisher is a guarantor of the accuracy of an author's

2   statements of fact."  *Id*. at 1036.  But the court refused to impose any such duty: "Indeed the cases

3   uniformly refuse to impose such a duty.  Were we tempted to create this duty, the gentle tug of the

4   First Amendment and the values embodied therein would remind us of the social costs."

5   *Id*. at 1037; *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) ("Our decisions

6   recognize that a rule of strict liability that compels a publisher or broadcaster to guarantee the

7   accuracy of his factual assertions may lead to intolerable self-censorship.")

8          As in *Winter*, Plaintiffs state no basis for Random House's liability "[u]nless it is assumed

9   that the publisher is a guarantor of the accuracy of an author's statements of fact."  *Winter*, 938 F.2d

10  at 1036.  The premise of all of Plaintiffs' claims against Random House is that its statements *about*

11  the book are false because Armstrong falsely represented *within* the book that he did not use

12  performance enhancing drugs.  Random House is therefore allegedly liable to Plaintiffs for failing

13  to verify the truth of Armstrong's representations before characterizing the book as a "biography"

14  and Armstrong as the "winner" of the Tour de France.  But, the First Amendment countenances no

15  such duty to verify being imposed on publishers, as the Ninth Circuit and other courts have

16  uniformly recognized.  *See, e.g., Barden v. HarperCollins Publishers, Inc.*, 863 F. Supp. 41, 45 (D.

17  Mass. 1994) ("The burden placed upon publishers to check every fact in the books they publish is

18  both impractical and outside the realm of their contemplated legal duties.").  This Court should hold

19  likewise.

20  ### 2.   Random House's Statements Are Not Commercial Speech And Are Therefore Subject To Full First Amendment Protection

21         Random House's statements are entitled to full First Amendment protection because they are

22  not commercial speech.  "The First Amendment affords protection to both commercial and

23  noncommercial speech.  The strength of that protection, however, depends on how that speech is

24  classified."  *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 956-57 (9th Cir. 2012) (citation

25  omitted).  Speech that does "'no more than propose a commercial transaction'" is commercial

26  speech and may be subject to some regulation.  *See Virginia State Bd. of Pharmacy v. Virginia

27  Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976).  However, noncommercial speech, as

28  well as speech in which noncommercial and commercial elements are "inextricably intertwined," are

subject to full First Amendment protection.  *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 796 (1988).

Random House's statements do not merely propose a commercial transaction.  "Biography" is nothing more than the standard Library of Congress classification of the book.  "Winner" of the Tour de France likewise does not propose a commercial transaction, but rather merely describes one of the accomplishments of the author of the book.

Even assuming *arguendo* these statements are commercial to the extent they were made in connection with the sale of a book, "biography" and "winner" of the Tour de France contain noncommercial elements.  "Biography" signifies that the content of the book is an account of a real person's life, and Tour de France "winner" restates the author's own description of his accomplishments in the book itself.  In this way, such speech cannot be divorced from, i.e., is "inextricably intertwined" with, the noncommercial text of the book and is therefore protected to the same degree as the text itself.  *See Lacoff v. Buena Vista Publ'g, Inc.*, 183 Misc. 2d 600, 608, 705 N.Y.S.2d 183 (2000) ("While [statements about the book on the book's cover and flyleaf] have a commercial element—to entice readers to buy the Book—they also have artistic or content-related expression, which is entitled to full First Amendment protection.").

### 3.   Random House's Statements Are Protected By The "Adjunct Use" Doctrine

Random House's statements are also fully protected by the First Amendment as "adjuncts" or "incidental" to the expressive work.  The First Amendment precludes tort and false advertising liability for statements made in the course of the "truthful promotion of protected expressive works," i.e., statements that are "adjuncts" to an expressive work.  *See Charles v. City of Los Angeles*, 697 F.3d 1146, 1153-55 (9th Cir. 2012).  Here, the representations by Random House generally – and truthfully – categorize the book's contents ("biography") and restate the author's own description of his accomplishments ("winner" of the Tour de France).  Promotional "adjuncts" to the protected work like these are entitled to the same First Amendment protection as the book itself.  *See id.* at 1155 ("if advertisements for expressive works were not entitled to the same immunity from tort as the underlying work, publishers would be unable to truthfully advertise certain protected works"); *Aldrin v. Topps Co.*, No. CV 10-09939, 2011 WL 4500013, at *3 (C.D.

Cal. Sept. 27, 2011) (ads for collectible cards protected by First Amendment as adjuncts).

Indeed, courts have repeatedly rejected attempts to hold book publishers liable for publicizing the contents of constitutionally protected texts. *See, e.g., Charles*, 697 F.3d at 1154-55 (citing cases); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1050 (2d Cir. 1995) (use of photo and name "to inform potential readers about the contents of the Book and induce them to purchase it" shielded from liability as an "incidental use"); *Lane v. Random House, Inc.*, 985 F. Supp. 141, 147-48 (D.D.C. 1995) (same).[7]  This Court should do likewise.

### B.  Plaintiffs Cannot Plausibly Allege Scienter, i.e., That Random House Knew Or Should Have Known The Representations Were False

Rule 8 requires that a complaint set forth a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To satisfy Rule 8, a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  In this case, Plaintiffs' allegations do not allow the Court to "draw the reasonable

---

[7] The outlier, *Keimer v. Buena Vista Books, Inc.*, 75 Cal. App. 4th 1220 (1999), has garnered little or no following.  Indeed, the Ninth Circuit has characterized *Lacoff*, 183 Misc. 2d 600, which reached the opposite conclusion as *Keimer* respecting the same representations regarding the same book, as consistent with Ninth Circuit authority.  *See Charles*, 697 F.3d at 1154-55.  *Keimer* is also distinguishable on its facts.  The book concerned an investment club of retired women in Beardstown, Illinois who calculated that they had a sustained annual investment return in excess of 23%.  The publisher advertised the book as such, prominently touting the annual returns and the ladies' "secret recipe for success" that would allow readers to outperform professional money managers, when, in truth, the investment returns were actually about 9% per year.  On those highly unusual facts – and applying the state court standard for demurrers that is inapplicable here – the Court allowed the case to proceed beyond the pleading stage because (1) the publisher conceded that the challenged statements were advertisements; (2) the publisher "knew or should have known" the statements were false because it noted in the book itself that the rate of return had not been calculated in the conventional manner, and (3) the conceded advertisements were, in fact, verifiably false.  In stark contrast to *Keimer*, here, as detailed below, the challenged statements are true – the book is a biography and Armstrong did win the Tour de France.  Moreover, the statements are neither ads nor "commercial speech" nor were they used as the primary basis for advertising or marketing the book.  Finally, as the allegations of the Complaint itself make clear, Random House was in no position to know whether Armstrong doped during his cycling career.

RANDOM HOUSE'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE CIV. PROC. § 425.16
CASE NO. 2:13-cv-00116-MCE-KJN

inference" that Random House is "liable for the misconduct alleged." *See Iqbal* at 678. Specifically, the Complaint fails to plausibly allege scienter by Random House.

Scienter is a required element of all of Plaintiffs' claims. Negligent conduct is a required element of the negligent misrepresentation and FAL claims. *See* Compl. ¶¶ 140(b), 150; Cal. Bus. & Prof. Code § 17500 (FAL prohibits only advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."). Plaintiffs must also demonstrate negligent conduct by Random House to prevail on their CLRA and UCL claims, even though these statutes purport to impose strict liability. As a matter of constitutional law, state statutes cannot impose strict liability for conduct in the exercise of the constitutionally protected right of freedom of speech. *See Gertz*, 418 U.S. at 340-41; *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988) (false factual statements are "inevitable in free debate, and a rule that would impose strict liability on a publisher for false factual assertions would have an undoubted chilling effect on speech relating to public figures that does have constitutional value") (internal citations and quotation marks omitted).[8]

Further, actual knowledge is a required element of Plaintiffs' claim against Random House for aiding and abetting Armstrong's alleged fraud. *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) ("'[L]iability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person . . . *knows* the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so act.'"). Accordingly, for each of their claims, Plaintiffs must demonstrate negligent or intentional conduct.

Plaintiffs cannot do so. Plaintiffs' own allegations preclude a plausible contention that Random House "knew or should have known" that Armstrong was lying. As an initial matter, the Complaint makes no specific factual allegation regarding how Random House "knew or should have known" that Armstrong was lying. *See Buzayan*, 2007 WL 1831139, at *4-5 (granting anti-

---

[8] In addition, as noted in Penguin's Motion to Dismiss, actual knowledge is a required element where, as here, a plaintiff predicates a CLRA or UCL claim on fraud, *see Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1160-63 (N.D. Cal. 2011), or brings a CLRA or FAL claim against a publisher. *See* Cal. Civ. Code § 1755; Cal. Bus. & Prof. Code § 17502.

SLAPP where there was "no allegation that the Defendants acted improperly" and improper conduct was prerequisite for all claims).  The Complaint simply concludes that Random House "knew or should have known" the book was a "work[] of *fiction*."  Compl. ¶ 2; *id.* ¶ 25 (Random House "knew or should have known that [the representations re: *Every Second Counts* and Armstrong] were and are false and misleading").

More importantly, the Complaint sets forth in minute detail the *unresolved* public debate over the veracity of Armstrong's denials that he doped, which debate lasted for *fourteen years*, from 1999 to 2013.  *See* Compl. ¶¶ 58-87 (detailing unresolved debate well publicized in news media beginning in 1999 until Armstrong's admission on Oprah Winfrey's show in 2013); *id.* ¶ 90 ("Armstrong's continued, vehement and well-publicized protests that he was innocent, the fact that it was widely reported that Armstrong had never tested positive for a banned substance, and the fact that Armstrong had successfully sued accusers for defamation, led Stutzman to believe that Armstrong was telling the truth.").  Indeed, though Armstrong had doped beginning as early as 1998, the U.S. Anti-Doping Agency ("USADA") – whose very job it is to uncover doping in sport – did not recognize as such until 2012.  Compl. ¶¶ 64, 69.

Moreover, the Complaint alleges that Defendants Armstrong, Weisel, and Stapleton engaged in a "conspiracy to defraud" not only U.S. consumers, but also "various corporate entities that entered into sponsorship (or other commercial) agreements with Armstrong."  *See* Compl. ¶ 16. According to Plaintiffs' own allegations, then, Random House was itself defrauded by Armstrong and his alleged co-conspirators respecting his use of performance-enhancing drugs.[9]  Simply put, the Complaint cannot plausibly allege that Random House was in any position to know anything more about Armstrong's lies than the USADA, Plaintiffs, or anyone else.

In a last-ditch attempt to allege scienter on the part of Random House, Plaintiffs contend that, "[a]s early as January 2011 and certainly not later than June 2012, Defendant[] Random House . . . knew that Defendant Armstrong was engaged in fraudulent activities and violations of

---

[9] Plaintiffs' conclusory allegation that all Defendants acted "in conspiracy with" each other, including Armstrong, should be disregarded in light of the Complaint's specific factual allegations regarding the conspiracy amongst *only* Armstrong, Weisel, and Stapleton.  *See* Compl. ¶ 21.

California law, yet continued to give him substantial assistance or encouragement by continuing to publish, market, promote and/or sell Every Second Counts." Compl. ¶ 170.  Initially, because Plaintiffs do not allege that Random House actually knew of Armstrong's alleged fraud before January 2011, Plaintiffs fail to state a fraud claim for any putative class member who bought *Every Second Counts* before January 2011.

But Plaintiffs also fail to state a plausible fraud claim with respect to anyone who bought the book *after* January 2011 or June 2012.  These dates were not arbitrarily selected.  The Complaint alleges that, in January 2011, *Sports Illustrated* magazine reported that an Armstrong cycling teammate had confirmed that Armstrong "had encouraged his cycling teammates to use EPO, which is a banned performance enhancing drug." Compl. ¶ 66.  The Complaint further alleges that, in June 2012, the USADA formally charged Armstrong with doping.  *Id.* ¶ 69.  Yet Plaintiffs fail to explain how these allegations state a plausible claim that Random House actually knew Armstrong was lying.  Plaintiffs do not explain why the *Sports Illustrated* report or the mere initiation of charges by the USADA – as opposed to any of the other numerous indications in the media over the years that Armstrong was doping – proved to be the decisive data point from which Random House knew Armstrong was lying.[10]  Nor do Plaintiffs provide a plausible explanation for how, even if Random House did know Armstrong was lying at either of these purportedly decisive moments, there could even have been a "fraud" anymore being perpetrated by Armstrong that Random House aided and abetted.  If Random House knew he was lying on the basis of this publicly available evidence, then so did *everyone else* who was exposed to these reports.

Plaintiffs cannot plausibly contend Random House either knew or reasonably should have known Armstrong was lying, so all claims should be dismissed with prejudice.

C.     **The Complaint Fails To State A Plausible Claim For Relief, Because The Representations On Which Plaintiffs Premise Their Claims Are True**

Plaintiffs fail to state a plausible claim for *false* advertising, because their claims are premised on *truthful* representations that *Every Second Counts* is a "biography" and that its author

---

[10] Indeed, Plaintiffs do not allege that anyone at Random House was even aware of either the *Sports Illustrated* report or the USADA charges.

is "the five-time Tour de France winner." *See, e.g.,* Compl. ¶¶ 115, 130-31, 140(b), 150, 152, 165. Random House described *Every Second Counts* as a "biography," and it is a biography. "Biography" is defined as "a usually written history of a person's life" or "an account of the life of something."[11]   The book is precisely an "account of the life" of Lance Armstrong.

Plaintiffs' theory is that the book is not a biography, but rather a "work[] of *fiction*," *see* Compl. ¶ 2 (emphasis in original), because, years after the book was published, Armstrong admitted the "lies and misconduct and his admitted involvement in a sports doping scandal…." *Id.*  But the fact that Armstrong later admitted he lied about aspects of his life, including that he used performance-enhancing drugs, in no way converts the book's classification from "biography" into "fiction." *See Greenspan v. Random House, Inc.*, 859 F. Supp. 2d 206, 220 (D. Mass. 2012) (designation of book, which contained alleged factual inaccuracies, as "non-fiction" could not support false advertising claim under the Lanham Act, because "[t]he term nonfiction only means that the literature is based on true stories or events, not that every statement is in fact demonstrably true"), *aff'd*, 2012 WL 5188792 (1st Cir. 2012), *cert. denied*, 2013 WL 449782 (U.S. 2013); *Groden*, 61 F.3d at 1052 ("No matter what the true facts might be concerning the Kennedy assassination, the ad's statements said nothing false about Posner's book."). Armstrong really exists and participated in, and won, the Tour de France multiple times. In spite of Armstrong's lies, *Every Second Counts* remains Armstrong's account of his actual life and cycling career and thus remains a "biography."[12]

In a similar way, Random House described Lance Armstrong as a "five-time Tour de France winner," and that is true. He was the victor in the Tour de France at least five times, albeit he won

---

[11] *See* http://www.merriam-webster.com/dictionary/biography. (last visited April 24, 2013)

[12] The Complaint repeatedly alleges that Random House marketed the book as "*nonfiction* biography," *see, e.g.,* Compl. ¶¶ 2, 3, 24, 25, 115, 130 (emphasis added), and as a "truthful" and "honest" work, *see id.* ¶¶ 2, 3, 40, 56, 96, 130-31. However, Plaintiffs fail to allege any facts showing where or when Random House marketed the book as "nonfiction" or as a "truthful" or "honest" work. Certainly, Random House did not do so in or on the book or on its flyleaf. *See* Notice of Lodging. Indeed, even the word "biography" only appears in the book within the Library of Congress classification, and, on the paperback edition only, on the back cover in the upper left corner in miniscule type. *Id.*  But even had Random House used such words to describe the book, the outcome would be the same. *See Greenspan*, 859 F. Supp. at 220. Armstrong's later admissions about his doping do not convert the nature and classification of *Every Second Counts* to "fiction."

RANDOM HOUSE'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE CIV. PROC. § 425.16
CASE NO. 2:13-cv-00116-MCE-KJN

by cheating.  Of course, as Plaintiffs point out, Armstrong was *later* "retroactively disqualified" by the U.S. Anti-Doping Agency and banned from the sport.  *See* Compl. ¶¶ 57, 64, 71, 105, 106.  But Armstrong's later disqualification does not render false the representation that he "won" the Tour de France.  Indeed, the Complaint itself quotes a Department of Justice news release dated February 22, 2013 – i.e., *after* Armstrong was stripped of his Tour de France titles – that states that Armstrong "won six consecutive Tour de France titles…."  Compl. ¶ 64.  The news release later points out that Armstrong's competitive results were "disqualified" in 2012.  *Id.*  Nothing about the latter fact contradicts the former representation in the news release, and the same is true respecting Random House's representations.[13]

Because Armstrong's late admissions about his use of performance-enhancing drugs do not contradict Random House's alleged statements, Plaintiffs fail to state a plausible claim, and they cannot establish a probability of prevailing on the merits for the purposes of this anti-SLAPP motion.

### D.       Plaintiffs Cannot Plausibly Allege They Relied On Random House's Statements

Plaintiffs' claims fail for the additional reason that they cannot plausibly allege actual reliance, or that Random House's statements caused the purported injury they suffered: buying a book they would not have bought or would have paid less for had they known Armstrong doped.

Actual reliance is a necessary element of each of Plaintiffs' claims.  *See Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793-94 (9th Cir. 2012) (UCL and CLRA); *Low v. LinkedIn Corp.*, Case No. 11–CV–01468, 2012 WL 2873847, at *10-11 (N.D. Cal. July 12, 2012) (FAL); *Carson v. Bank of Am., N.A.*, No. 2:12–cv–00739, 2012 WL 6047372, at *4 (E.D. Cal. Dec. 5, 2012) (fraud and negligent misrepresentation).  Here, the three Named Plaintiffs who bought *Every Second Counts* did so in reliance on representations wholly separate from Random House's description of the book as a "biography" and its author as the "winner" of the Tour de France.  *See* Compl. ¶¶ 9, 12

---

[13] Plaintiffs contend Random House described Armstrong as a "*legitimate* five-time winner of the Tour de France."  *See, e.g.,* Compl. ¶¶ 152, 165 (emphasis added).  Again, Plaintiffs do not allege where Random House supposedly used this word, and it appears nowhere on the book itself or its flyleaf.  *See Stuart v. Cadbury Adams USA, LLC*, No. CV 09-6295, 2010 WL 1407303, at *3 (C.D. Cal. Apr. 5, 2010) (dismissing false advertising claims with prejudice for failure to state plausible claim, since plaintiffs' theory of deception was contradicted by the text of the ads themselves).

(Plaintiffs Wheeler and Scott Armstrong bought *Every Second Counts* because they enjoyed reading Armstrong's earlier autobiographical work, *It's Not About the Bike*: *My Journey Back to Life*); *id.* ¶ 10 (Plaintiff Lauria saw "advertising featuring reports of Armstrong's successful battle against cancer which moved her to purchase Armstrong's books," including *Every Second Counts*). These allegations are flatly inconsistent with the notion that Plaintiffs, in purchasing *Every Second Counts*, relied on Random House's statements – with their supposed implication that Armstrong did not dope. *See Sateriale* at 793 (misrepresentation must be the "immediate cause" of injury).[14] Accordingly, all claims should be dismissed with prejudice. *See Kaing v. Pulte Homes, Inc.*, No. 09-5057, 2010 WL 625365, at *4 (N.D. Cal. Feb. 18, 2010) (dismissing claims with prejudice because plaintiff could not plausibly allege injury was caused by defendant's statement, in light of allegations that contradicted purported causal connection).

### E.    Each Claim Fails Individually For Separate And Independent Reasons

#### 1.    Plaintiffs' UCL, FAL, And CLRA Claims Fail, Because The Statements At Issue Would Not Deceive A Reasonable Consumer

Plaintiffs' false advertising claims pursuant to the UCL, FAL, and CLRA fail as a matter of law, for the independently sufficient reason that a "reasonable consumer" would not be deceived in the manner alleged in the Complaint. To state a valid false advertising claim under the UCL, FAL, or CLRA, the ads must be "likely" to deceive a "reasonable consumer."[15] *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003) ("unless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer") (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-07 (2003)). Significantly, "[t]he term 'likely' indicates that deception must be probable, not just possible." *See McKinniss v. Sunny Delight Beverages Co.*, No. CV 07-02034, 2007 WL 4766525, at *3 (C.D. Cal. Sept. 4, 2007). If the advertisement would

---

[14] Plaintiffs' conclusory allegations of reliance on Random House's representations should be disregarded by the Court in ruling on this motion. *See, e.g.*, Compl. ¶ 141 ("Plaintiffs and other members of the Class relied on and were deceived by Defendants' false and deceptive advertisements and practices as set forth above . . . .").

[15] Here, Plaintiffs have failed to identify any "ads" at all.

not deceive a reasonable consumer, then the claim may be dismissed with prejudice on a motion to dismiss. *Id.* at *3-5, 7 (dismissing with prejudice false advertising claims under UCL and FAL, where ads would not deceive a reasonable consumer as a matter of law so amendment "would be futile").

No reasonable consumer of Armstrong's own narrative about his cycling career would construe its classification as a "biography," or the characterization of Armstrong as a "five-time winner of the Tour de France," to denote or connote the very specific factual statement that he did not dope in winning the Tour de France. These statements neither state nor imply anything of the sort, but rather are far-fetched inferential leaps that no reasonable consumer would make.

The possibility that a reasonable consumer would infer from these generic statements that Armstrong did not dope becomes even more unlikely in light of the widely publicized accusations that Armstrong *did* dope. As Plaintiffs point out, *see* Compl. ¶¶ 58-87, allegations that Armstrong was doping date back at least as far as 1999 and continued until Armstrong's admission to Oprah Winfrey in 2013. Claims of Armstrong's potential doping were not only persistent over a fourteen-year period, but also widely publicized in various worldwide media outlets, including in global outlets such as *The New York Times*, CNN, the television show *60 Minutes*, and the magazine *Sports Illustrated*, among other forms of media. *See* Compl. ¶¶ 58-68. A reasonable consumer of an autobiography by Lance Armstrong about his own cycling career would have been well aware of the public accusations that Armstrong was doping. The Named Plaintiffs themselves demonstrate as much. Two of the three alleged to have bought *Every Second Counts* are described as avid cyclists and followers of the sport, including Armstrong's career in cycling. *See* Compl. ¶ 9 (describing Plaintiff Wheeler as a "life-long, avid cycling enthusiast" who "followed Defendant Armstrong's early cycling career"); *id.* ¶ 12 (describing Plaintiff Scott Armstrong as a person "actively involved in cycling" since the 1990's and who "has followed professional cycling . . . and in particular the career of Defendant Armstrong"). The third Plaintiff is a cancer survivor who was inspired by Armstrong's battle against cancer to buy *Every Second Counts*. *Id.* ¶ 10. All three Plaintiffs knew who Armstrong was before they bought the book, two admit to being aware of the doping allegations, and it is highly unlikely that any reasonable consumer was completely unaware

LA1 2719072v.1

1  of the very public allegations, and thus the possibility, that Armstrong doped – and thus lied in his

2  book – when they bought it.

3  It is simply not plausible, let alone "likely," that a reasonable consumer would construe

4  Random House's representations that the book is a biography and that its author won the Tour de

5  France as either stating or implying that Armstrong did not embellish or outright lie about certain

6  facts in his book.  Plaintiffs' statutory false advertising claims cannot succeed as a matter of law.

7  ### 2.   The Complaint Fails To Plausibly Allege A Violation Of The CLRA

8  Plaintiffs have alleged violations of five subsections of the CLRA, but plead no facts

9  plausibly demonstrating how any of them are violated.  Nor can they.  "Biography" is a general

10  classification of a book as an account of a person's life, and, as such, it is not actionable pursuant to

11  the CLRA.  *See Morgan v. Harmonix Music Sys., Inc.*, No. C08-5211, 2009 WL 2031765, at *3

12  (N.D. Cal. July 7, 2009) ("California courts require more than 'vague statements' about a product to

13  form the basis of an actionable CLRA misrepresentation claim.").  For instance, in *Long v. Hewlett-*

14  *Packard Co.*, No. 06-02816, 2007 WL 2994812, at *7 (N.D. Cal. July 27, 2007), the court held that

15  "notebook," used to advertise a computer with a defective screen, was not actionable under the

16  CLRA and UCL, because it merely "describes the type of product being sold; it does not constitute

17  a representation regarding the quality of the computer's parts, nor a representation regarding the

18  consistency or longevity of the computer's operation."  Similarly, "biography" describes the type of

19  book; it in no way constitutes a specific confirmation that everything stated in the book is accurate

20  and true.  *See Greenspan*, 859 F. Supp. 2d at 220 ("[t]he term nonfiction only means that the

21  literature is based on true stories or events, not that every statement is in fact demonstrably true").

22  Further, the representation that Armstrong is a "five-time Tour de France winner" is not

23  about the book, but rather a representation about its author.  Accordingly, Plaintiffs cannot state a

24  claim premised on this statement pursuant to subsections (a)(2), (a)(7), (a)(9), or (a)(16) of Section

25  1770 of the California Civil Code, which apply only to representations about "goods," "services,"

26  or "the subject of a transaction."  Armstrong is none of these things.  Subsection (a)(5) prohibits

27  representing "that a person has a sponsorship, approval, status, affiliation, or connection which he

28  or she does not have."  But Plaintiffs fail to explain how describing Armstrong as having won the

LA1 2719072v.1

1  Tour de France five times – which is true – runs afoul of this provision of the CLRA.

2  ### 3.  The Complaint Fails To Plausibly Allege A Violation Of The UCL

3  The Complaint alleges that Random House's representations were "unlawful and constitute

4  an 'unfair business practice.'"  Compl. ¶ 131.  First, Plaintiffs' claim of "unfair" conduct under the

5  UCL fails, because Plaintiffs do not and cannot allege how classifying a book later discovered to

6  contain lies as a "biography," or describing an author who, unbeknownst to Random House, cheated

7  to win the Tour de France as the "winner" of that race, "offends an established public policy" or "is

8  immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  *See*

9  *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (an unfair business practice is

10  "one that either offends an established public policy or is immoral, unethical, oppressive,

11  unscrupulous or substantially injurious to consumers") (internal quotation marks omitted).  Second,

12  all of the possible predicate violations to support a claim for "unlawful" conduct have failed, so this

13  claim fails too.  *See Ingels*, 129 Cal. App. 4th at 1060 ("'If the [underlying] claim is dismissed, then

14  there is no 'unlawful' act upon which to base[] the derivative [UCL] claim.'").

15  ### 4.  Plaintiffs' Fraud And Negligent Misrepresentation Claims Fail

16  Plaintiffs' common law claims for negligent misrepresentation and fraud are also legally

17  insufficient.  First, Plaintiffs fail to allege legally cognizable damages.  *See Creative Ventures, LLC*

18  *v. Jim Ward & Assocs.*, 195 Cal. App. 4th 1430, 1444 (2011) ("In order to recover for either [fraud

19  or negligent misrepresentation], plaintiffs had to prove that the alleged misrepresentation resulted in

20  a *loss*.  Deception without loss is not actionable.").  Plaintiffs allege only that they are angry at

21  being deceived by Armstrong and that they would not have bought his book had they known the

22  truth.  *See, e.g.,* Compl. ¶ 10 (learning about Armstrong's lies "left [Plaintiff Lauria] bitterly

23  angry"); *id.* ¶ 12 (Plaintiff Scott Armstrong would not have bought the book "had he known that

24  Armstrong's representations as to his drug-free cycling career and life were false").  But such

25  speculative, non-appreciable harm is not legally cognizable under either a negligence or fraud

26  theory.  *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, MDL No.

27  11md2258, 2012 WL 4849054, at *12 (S.D. Cal. Oct. 11, 2012) (allegation that Sony gaming

28  console has "diminished in value" as a result of theft of users' personal information was too

1   speculative and not appreciable to constitute cognizable damages under negligence claim).

2          Second, as detailed above, *see supra* at pp. 7-8, the First Amendment prohibits the

3   imposition of a legal duty on a book publisher to verify the factual accuracy of the contents of a

4   book.  Without a duty, there can be no negligent misrepresentation claim.  *See Jones v.*

5   *CitiMortgage, Inc.*, No. CV F 12–2067, 2013 WL 504761, at *5 (E.D. Cal. Feb. 8, 2013) ("'As is

6   true of negligence, responsibility for negligent misrepresentation rests upon the existence of a legal

7   duty, imposed by contract, statute or otherwise, owed by a defendant to the injured person.'"

8   (quoting *Eddy v. Sharp*, 199 Cal. App. 3d 858, 864 (1988))); *Settle v. World Sav. Bank, F.S.B.*, No.

9   ED CV 11–00800, 2012 WL 1026103, at *7 (C.D. Cal. Jan. 11, 2012) (citing cases).

10          Third, Plaintiffs fail to plausibly allege that Random House was "without reasonable

11   grounds for believing" the book truly was a "biography" and Armstrong truly did win the Tour de

12   France.[16]  As detailed above, *see supra* at p. 12, the controversy over whether Armstrong was lying

13   endured for over a decade and included numerous indications that Armstrong was telling the truth.

14   **III.    THE CLAIMS SHOULD BE DISMISSED WITH PREJUDICE**

15          Random House respectfully requests that the Court grant its motion and dismiss all claims

16   against Random House *with prejudice*.  *See Flores v. Emerich & Fike*, No. 1:05–CV–0291, 2006

17   WL 2536615, at *10 (E.D. Cal. Aug. 31, 2006) ("To allow amendment after an anti-SLAPP motion

18   to strike has been granted eviscerates the purpose of the anti-SLAPP statute."); *Browne v. McCain*,

19   611 F. Supp. 2d 1062, 1068 (C.D. Cal. 2009) ("since the statutory intent is to provide a quick,

20   inexpensive method of dismissing SLAPP suits, leave to amend is improper").

21   Dated:  April 26, 2013                          Respectfully submitted,

22                                                   SIDLEY AUSTIN LLP

23                                                   By: /s/ Stephen G. Contopulos
                                                         Stephen G. Contopulos
24                                                       Attorneys for Defendant Random House, Inc.,
                                                         also erroneously sued as Broadway Books and
25                                                       Crown Publishing Group

26

27   ---

[16] *See Jones*, 2013 WL 504761, at *5 (claim for negligent misrepresentation requires, *inter alia*, assertion of a past or existing material fact "without reasonable grounds for believing it to be true").

28