1  Kent J. Schmidt (SBN 195969)
   schmidt.kent@dorsey.com
2  DORSEY & WHITNEY LLP
   600 Anton Boulevard, Ste. 2000
3  Costa Mesa, CA 92626
   Telephone: (714) 800-1445
4  Facsimile: (714) 800-1499

5  Jonathan M. Herman (admitted *pro hac vice*)
   herman.jonathan@dorsey.com
6  DORSEY & WHITNEY LLP
   51 West 52nd Street
7  New York, NY 10019-6119
   Telephone: (212) 415-9247
8  Facsimile: (646) 607-0943

9  F. Matthew Ralph (admitted *pro hac vice*)
   ralph.matthew@dorsey.com
10 DORSEY & WHITNEY LLP
   50 S. Sixth Street, Suite 1500
11 Minneapolis, MN  55402
   Telephone:  (612) 492-6964
12 Facsimile:  (952) 516-5574

13 Attorneys for Defendants Penguin Group (USA) Inc.,
   G.P. Putnam's Sons, and The Berkley Publishing Group
14

15            UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF CALIFORNIA
16

17 ROB STUTZMAN, JONATHAN WHEELER,        ) CASE No. 2:13-cv-00116-MCE-KJN
   GLORIA LAURIA, DAVID REIMERS and       )
18 SCOTT ARMSTRONG, on behalf of          ) *Assigned for all purposes to the Honorable*
   themselves and all others similarly situated, ) *Morrison C. England, Jr.*
19                                         )
                  Plaintiffs,              ) DEFENDANT PENGUIN GROUP (USA)
20 vs.                                     ) INC., G.P. PUTNAM'S SONS, AND THE
                                           ) BERKLEY PUBLISHING GROUP'S
21 LANCE ARMSTRONG; PENGUIN GROUP         ) NOTICE OF MOTION AND SPECIAL
   (USA), INC.; G.P. PUTNAM'S SONS; THE   ) ANTI-SLAPP MOTION TO STRIKE
22 BERKLEY PUBLISHING GROUP;              ) PLAINTIFFS' FIRST AMENDED CLASS
   RANDOM HOUSE, INC.; BROADWAY           ) ACTION COMPLAINT (UNDER CCP SEC.
23 BOOKS; CROWN PUBLISHING GROUP;         ) 425.16) AND REQUEST FOR AWARD OF
   THOMAS W. WEISEL; WILLIAM J.           ) ATTORNEY'S FEES AND COSTS;
24 STAPLETON; and DOES 1-50, inclusive,   ) MEMORANDUM OF POINTS AND
                                           ) AUTHORITIES IN SUPPORT THEREOF
25                Defendants.              )
                                           ) Date/Time: July 25, 2013, at 2:00 p.m.
26                                         ) Judge: Honorable Morrison C. England, Jr.
                                           ) Courtroom: 7
27                                         )
                                           )
28                                         )

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant Penguin Group (USA) Inc. and its divisions, G. P. Putnam's Sons and The Berkley Publishing Group (collectively "Penguin"), on July 25, 2013, at 2:00 p.m., or as soon thereafter as this matter may be heard, before the Honorable Morrison C. England, Jr. of the District Court for the Eastern District of California, located at the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, California 95814, will move the Court for an Order as follows:

1.      Striking Plaintiffs' First Amended Complaint ("Complaint") and awarding Penguin attorney's fees and costs jointly and severally against Plaintiffs and their attorneys of record, pursuant to California Code of Civil Procedure ("CCP") § 425.16 (b) and (c).

2.      Denying Plaintiffs' further leave to amend their Complaint; and

3.      For such other relief as the Court deems just and proper.

This motion is made on the grounds that all of Plaintiffs' claims against Penguin are subject to a special anti-SLAPP motion to strike pursuant to CCP § 425.16. Plaintiffs' Complaint alleges that Penguin's advertising, marketing, publicity and other promotional efforts relating to the publication of Lance Armstrong's book *It's Not About The Bike: My Journey Back to Life* were unlawful under both California statutes and common law. Contrary to Plaintiffs' claims, the allegedly wrongful promotional efforts made by Penguin were in furtherance of Penguin's rights of free speech, were in connection with public issues and matters of public interest, and were protected activity under CCP § 425.16. Plaintiffs cannot establish a probability of success on the merits of their claims, as each claim fails to meet the standards articulated by Fed. R. Civ. Proc. 8(a) and 9(b), is barred as a matter of law by the First Amendment, fails to state any cognizable claim for damages and is barred by various other common law defenses applicable to publishers, including that publishers are not required to verify the accuracy of the text of nonfiction books they publish. On these grounds, the Court should strike Plaintiffs' Complaint pursuant to CCP § 425.16 without leave to amend and award Penguin its attorneys' fees and costs.

1    This motion is based upon this notice of motion and motion, and is further supported by the

2 accompanying Memorandum of Points and Authorities, Penguin's Memorandum of Points and

3 Authorities in support of its Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, and

4 Penguin's Request for Judicial Notice, all simultaneously filed herewith, as well as Defendant Random

5 House, Inc.'s Motion to Dismiss and Special Motion to Strike, both of which are adopted herewith, and

6 any further argument and evidence submitted by Penguin at or before the hearing on this motion.

7

8                                         Respectfully submitted,

9    Dated:  April 26, 2013              DORSEY & WHITNEY LLP

10

11

12                                        By:  /s/ Kent J. Schmidt
                                          Kent J. Schmidt (SBN 195969)
13                                        Jonathan M. Herman (admitted *pro hac vice*)
                                          F. Matthew Ralph (admitted *pro hac vice*)

14                                        Attorneys for Defendants Penguin Group (USA) Inc.,
                                          G.P. Putnam's Sons, and The Berkley Publishing Group

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................ 1

II.    LEGAL STANDARD ................................................................................. 2

III.   ARGUMENT .............................................................................................. 3

    A.   Penguin's Alleged Conduct Falls Squarely Within CCP §§ 425.16 ..................... 3

    B.   Penguin's Alleged Conduct Does Not Fall Within a Statutory Exemption .......... 4

    C.   Plaintiffs Cannot Establish a Probability of Prevailing on Their Claims.............. 5

        1.   The Amended Complaint Fails to Meet Pleading Standards, Much Less Establish a Probability of Prevailing ................................................. 5

        2.   Plaintiffs Cannot Possibly Amend Their Amended Complaint to State Viable Claims Against Penguin ....................................................... 8

            a.   Plaintiffs Cannot State Viable Claims Against Penguin Based on Alleged Misrepresentations *Within* the Books .............. 8

            b.   Plaintiffs Cannot State Viable Claims Against Penguin Based on Allegedly Deceptive Promotional Statements About the Books......................................................................... 10

                i.   Penguin's Alleged Description of the Book as a "Nonfiction Biography" Is an Adjunct to Fully Protected, Noncommercial Speech .................................. 10

                ii.   Penguin's Alleged Description of the Book as a "Nonfiction Biography" Does Not Meet the Standard for Commercial Speech...................................... 11

                iii.   Penguin's Alleged Conduct Does Not Meet the Standard for Imposing Publisher Liability Under California Law ................................................................ 12

            c.   Plaintiffs' Claims Against Penguin Are Barred by the Statute of Limitations................................................. 14

    D.   This Special Motion to Strike Is Properly Decided Without Early Discovery .... 15

    E.   Penguin Is Entitled to Recover Its Reasonable Attorney's Fees and Costs ......... 15

IV.    CONCLUSION........................................................................................ 16

1

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aeroplate Corp. v. Arch Ins. Co.*,
   No. 061099, 2006 WL 3257487 (E.D. Cal. 2006) ................................................... 15

*Aldrin v. Topps Company, Inc.*,
   No. CV 10–09939, 2011 WL 4500013 (C.D. Cal. Sept. 27, 2011) ................................. 11, 13

*Animal Legal Defense Fund v. Mendes*,
   160 Cal. App. 4th 136, 72 Cal.Rptr.3d 553 (2008) ................................................ 6

*Aryeh v. Canon Bus. Solutions*,
   No. S184929, 2013 WL 263509 (Cal. Jan. 24, 2013) ............................................. 14

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) ...................................................... 5, 7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................ 5, 7

*Blanchard v. DIRECTV, Inc.*,
   123 Cal. App. 4th 903 (2004) .............................................................. 4, 15

*Buzayan v. City of Davis Police Dep't*,
   No. 2:06-CV-1576, 2007 WL 1831139 (E.D. Cal., Jan. 25, 2007) ................................. 3

*Central Hudson Gas & Elec. Corp. v. Public Svc. Comm'n of N.Y.*,
   447 U.S. 557 (1980) ...................................................................... 11, 12

*Charles v. City of Los Angeles*,
   697 F.3d 1146 (9th Cir. 2012) ............................................................ 11, 13

*Cher v. Forum Int'l, Ltd.*,
   692 F.2d 634 (9th Cir.1982) .............................................................. 11, 13

*ComputerXpress, Inc. v. Jackson*,
   93 Cal. App. 4th 993 (2001) ................................................................ 4

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*,
   479 F.3d 1099 (9th Cir. 2007) .............................................................. 2

*D.A.R.E. America v. Rolling Stone Magazine*,
   101 F.Supp.2d 1270 (C.D. Cal. 2000) ........................................................ 7

*Dex Media West, Inc. v. City of Seattle*,
   696 F.3d 952 (9th Cir. 2012) .............................................................. 12

1

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,*
    47 Cal. App. 4th 777 (1996)...................................................................... 15

*Equilon Enterprises v. Consumer Cause, Inc.,*
    29 Cal. 4th 53 (2002) ............................................................................. 2

*Erie R.R. v. Tompkins,*
    304 U.S. 64 (1938) ................................................................................ 2

*Flores v. Emerich & Fike,*
    No. 1:05-CV-0291, 2006 WL 2536615 (E.D. Cal., Aug. 31, 2006)................... 5, 7

*Geiger v. Dell Publishing Co., Inc.,*
    719 F.2d 515 (1st Cir. 1983) ..................................................................... 8

*Gilbert v. Sykes,*
    147 Cal. App. 4th 13 (2007)..................................................................... 5

*Gorran v. Atkins Nutritionals, Inc.,*
    464 F.Supp.2d 315 (S.D.N.Y. 2006)....................................................... 9, 13

*Greenspan v. Random House, Inc.,*
    859 F.Supp.2d 206 (D.Mass. 2012), *aff'd*, 2012 WL 5188792 (1st Cir. 2012) ................ 6, 10

*Groden v. Random House, Inc.,*
    61 F.3d 1045 (2d Cir. 1995) ..................................................................... 11

*Hall v. Time Warner, Inc.,*
    153 Cal. App. 4th 1337 (2007)................................................................... 3

*Hanberry v. Hearst Corp.,*
    276 Cal. App. 2d 680 (1969) ..................................................................... 12

*Herbert v. Lando,*
    441 U.S. 153 (1979) ................................................................................ 9

*Herceg v. Hustler Magazine, Inc.,*
    565 F.Supp. 802 (S.D. Tex. 1983) .............................................................. 7

*Hilton v. Hallmark Cards,*
    599 F.3d 894 (9th Cir. 2010)................................................................... 2, 3

*Hunt v. City of Los Angeles,*
    638 F.3d 703 (9th Cir. 2011)..................................................................... 12

*Ingels v. Westwood One Broadcasting Services, Inc.,*
    129 Cal. App. 4th 1050 (2005).................................................................. 5

*Jolly v. Eli Lilly & Co.,*
    44 Cal. 3d 1103 (1988) ............................................................................ 14

2

*Keimer v. Buena Vista Books, Inc.,*
   75 Cal. App. 4th 1220 (Cal. App. 1999) ............................................................ 9, 13

*Kibler v. Northern Inyo County Local Hosp. Dist.,*
   39 Cal. 4th 192 (2006) ............................................................................................ 2

*Lacoff v. Buena Vista Publishing, Inc.,*
   183 Misc.2d 600, 705 N.Y.S.2d 183 (N.Y. Sup. Ct. 2000) .................................. 9

*Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.,*
   940 F.2d 397 (9th Cir. 1991).................................................................................. 7

*Lusksh v. Latham,*
   675 F.Supp.1198 (N.D. Cal. 1987) ...................................................................... 14

*Macias v. Hartwell,*
   55 Cal. App. 4th 669 (1997).................................................................................. 4

*Moreau v. Daily Independent*
   No. 1:12-CV-01862, 2013 WL 85362 (E.D. Cal. Jan. 8, 2013) ............................ 4

*N.A.A.C.P. v. Button,*
   371 U.S. 415 (1963) ................................................................................................ 9

*Navarro v. IHOP Props., Inc.,*
   134 Cal. App. 4th 834 (2005)................................................................................. 2

*New York Times Co. v. Sullivan,*
   376 U.S. 254 (1964) ................................................................................................ 9

*Nygard, Inc., v. UUSI-Kerttula,*
   159 Cal. App. 4th 1027 (2008)............................................................................... 4

*Ries v. Ariz. Bevs. United States LLC,*
   2012 U.S. Dist. LEXIS 169853 (N.D. Cal. 2012)................................................ 14

*Riley v. Nat'l Fed. of the Blind of North Carolina,*
   487 U.S. 781 (1988) .............................................................................................. 11

*Rivero v. American Federation of State, County & Municipal Employees,*
   105 Cal. App. 4th 913 (2003)................................................................................. 4

*Rogers v. Home Shopping Network, Inc.,*
   264 F.3d 832 (9th Cir. 2001).............................................................................. 15

*Shepard v. Miller,*
   2:10 Civ. 1863, 2010 WL 5205108 (E.D. Cal., Dec. 15, 2010)............................ 3

*Simon & Schuster v. Members of the N.Y. State Crime Victims Bd.,*
   502 U.S. 105 (1991) ................................................................................................ 9

3

*Simpson Strong-Tie Co., Inc. v. Gore,*
    49 Cal. 4th 12 (2010) ........................................................................................... 4

*Tamkin v. CBS Broadcasting Inc.,*
    193 Cal. App. 4th 133 (2011) ............................................................................... 3

*Tucker v. Pacific Bell Mobile Svcs.,*
    145 Cal.Rptr.3d 340 (Cal. App. 2012) ................................................................. 6

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.,*
    190 F.3d 963 (9th Cir. 1999) ............................................................................... 2

*United States v. Alvarez,*
    638 F.3d 666 (9th Cir. 2011), *aff'd,* 132 S. Ct. 2537 (2012) ........................... 6, 9

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,*
    425 U.S. 748 (1976) ........................................................................................... 12

*Wilcox v. Superior Court,*
    27 Cal. App. 4th 809 (1994) ................................................................................. 2

*William L. Lyon & Assocs. v. Superior Court,*
    204 Cal. App. 4th 1294 (2012) ........................................................................... 14

*Wilson v. Parker, Covert & Chidester,*
    28 Cal. 4th 811 (2002) ......................................................................................... 2

*Winter v. G.P. Putnam's Sons,*
    938 F.2d 1033 (9th Cir. 1991) .......................................................................... 8, 13

**STATUTES**

Cal. Bus. & Prof. Code §17208 ............................................................................. 14

Cal. Civ. Code § 1780 ........................................................................................... 14

Cal. Code Civ. Proc. § 338 .................................................................................... 14

Cal. Code Civ. Proc. § 425.16 ................................................................. 2, 3, 4, 5, 15

Cal. Code Civ. Proc. § 425.17 ............................................................................. 4,5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a) ................................................................................................. 5

Fed. R. Civ. P. 9(b) ............................................................................................ 5, 14

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 15

# I.    **INTRODUCTION**

California's anti-SLAPP statute protects publishers who engage in First Amendment activities such as publishing and promoting a literary work. Plaintiffs who sue a publisher for its publishing activities must be able to establish a probability of prevailing on their claims. Otherwise, the action is dismissed with prejudice and the defendant is awarded its fees and costs, on the ground that the lawsuit is an improper attempt to chill First Amendment activity.

Plaintiffs in this action are California residents who purchased books authored by Lance Armstrong, including *It's Not About the Bike: My Journey Back to Life* (the "Book"), the sole book at issue published by Penguin. Although the Book, first published in 2000, is largely about Armstrong's battle with cancer, a few passages contain Armstrong's denials of rumors that he had doped while winning the first of seven consecutive Tour De France cycling races. In January 2013, Armstrong admitted those denials were false during a public confession to Oprah Winfrey. Plaintiffs allege Penguin is liable for Armstrong's deception and for promoting the Book as "nonfiction biography" when it contained Armstrong's lies.

Penguin engaged in the very type of First Amendment activities that is shielded by the anti-SLAPP statute. It published and promoted the Book, which is unquestionably a literary work on a matter of public interest – Armstrong's famous cycling career and his recovery from cancer. Penguin therefore moves to strike this action and to recover its fees and costs.

Plaintiffs cannot establish a probability that they will prevail in this lawsuit. The Amended Complaint fails even to meet basic pleading standards. Although the Amended Complaint alleges a number of fraud-based theories of liability, none of the Plaintiffs identifies any particular misrepresentations that induced them to buy the Book. Their allegations that Penguin knew about Armstrong's deception or conspired with him are conclusory and unsupported by facts. Plaintiffs are outraged at Armstrong, but the only injury they allege is the fact that they were deceived – not a cognizable type of damage. These pleading defects cannot possibly be cured. Moreover, Plaintiffs will never be able to state viable claims against Penguin under the First Amendment; and their claims are also likely barred by the statute of limitations. Plaintiffs therefore fall well short of establishing the probability of success required by the anti-SLAPP statute.

## II.   LEGAL STANDARD

A strategic lawsuit against public participation (i.e., a "SLAPP suit") is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 815 n. 2 (1994), overruled in part on other grounds by *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 68 (2002).  California's anti-SLAPP statute requires dismissal of SLAPP suits when: (1) the suit arises out of the defendant's protected activities in furtherance of their right of free speech; and (2) the plaintiff is unable to establish a probability of success on the merits of his or her claims.  Cal. Code Civ. Proc. ("CCP") § 425.16(b)(1); *Navarro v. IHOP Props., Inc.*, 134 Cal. App. 4th 834, 829 (2005).  The burden of proof is different for each step.[1]  First, the defendant must establish that the plaintiff's cause of action arises out of an act "in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue."  CCP § 425.16(b); *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010).  Once the defendant meets this threshold, the burden shifts to the plaintiff to establish a probability of success on the merits.  *Id.*  The plaintiff must establish that "the complaint is both legally sufficient ***and*** supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson v. Parker, Covert & Chidester,* 28 Cal. 4th 811, 821 (2002) (emphasis added).[2]  Courts construe the protections of the anti-SLAPP statute broadly to ensure that the constitutional rights of free speech and petition are protected.  *Hilton*, 599 F.3d at 902; *Kibler v. Northern Inyo County Local Hosp. Dist.*, 39 Cal. 4th 192, 199 (2006).

---

[1] In its analysis, the court may examine not only the pleadings, but also declarations filed by the parties.  CCP § 425.16(b)(2).  Here, such declarations are not necessary to Penguin's arguments, which are solely based on the legal deficiencies in Plaintiffs' claims.

[2] It is well-established that special motions to strike state law claims under California's anti-SLAPP statute are properly brought in federal court.  *See United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972 (9th Cir. 1999) (Ninth Circuit applying *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), and determining that there was no direct collision between the Federal Rules of Civil Procedure and CCP § 425.16); *see also CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007) (articulating that under *Erie v. Tompkins*, federal courts sitting in diversity are required to apply state substantive law).

## III.   ARGUMENT

**A.   <u>Penguin's Alleged Conduct Falls Squarely Within CCP §§ 425.16</u>**

The anti-SLAPP statute protects "conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest." CCP § 425.16(e)(4). *Hilton,* 599 F.3d at 904. The standard for determining whether a defendant engaged in "conduct in furtherance of" free speech is whether the defendant's activity was "communicative" in nature. *Hilton,* 599 F.3d at 904. In *Hilton,* defendant's publication of greeting cards containing a likeness of plaintiff were deemed to meet the extremely low "communicative" standard. *Id.* Here, Plaintiffs allege that Penguin published the Book and promoted it as "nonfiction biography." *See* Compl. at ¶ 25. These alleged activities are clearly "communicative" under *Hilton,* as well as other authorities. *See Shepard v. Miller*, 2:10 Civ. 1863, 2010 WL 5205108, at *7 (E.D. Cal., Dec. 15, 2010) (publication of a book about mental health issues was an act in furtherance of defendant's free speech rights in connection with an issue of public interest) (citing *Taus v. Loftus*, 40 Cal. 4th 683, 712-13 (2007) (same)); and *Buzayan v. City of Davis Police Dep't*, No. 2:06-CV-1576, 2007 WL 1831139 (E.D. Cal., Jan. 25, 2007).

The standard for determining whether free speech relates to a "public issue or an issue of public interest" under § 425.16(e)(4) is similarly low. California courts have determined that an issue of public interest is "any issue in which the public is interested." *Tamkin v. CBS Broadcasting Inc.*, 193 Cal. App. 4th 133, 143 (2011) (the creation and broadcasting of *CSI* episode 913 is an issue of public interest). The issue "need not be significant to be protected by the anti-SLAPP statute." *Id.* (quoting *Nygard, Inc., v. UUSI-Kerttula*, 159 Cal. App. 4th 1027, 1036-39 (2008)) (where a considerable number of people had an interest in the subject at issue, activities relating to the subject are considered connected to matters of public interest, regardless of whether the issues were "significant" or not); *Hall v. Time Warner, Inc.*, 153 Cal. App. 4th 1337, 1347 (2007) (public interest speech "concerns a topic of widespread public interest and contributes in some manner to a public discussion of the topic"); *Buzayan*, 2007 WL 1831139, at *3 (a matter of public interest is "something of concern to a substantial number of people."). Statements concerning a nationally-known public figure or a person in the public

1  eye are matters of "public interest." *Rivero v. American Federation of State, County & Municipal*

2  *Employees,* 105 Cal. App. 4th 913, 924 (2003).

3      The Book indisputably meets the "public interest" standard. The Book was authored by a

4  world-famous athlete. It describes, in his own words, his recovery from cancer and his return to

5  professional cycling. Large numbers of people all over the world have been, and still are, interested in

6  Armstrong's life and cycling career.

7      Penguin's conduct also falls under CCP §425.16(e)(3), which protects statements or writings

8  "made in a place open to the public or a public forum in connection with an issue of public interest."

9  California courts have interpreted "public forum" to include publications made available to the general

10  public, such as magazines and newspapers. *Nygard,* 159 Cal. App. 4th at 1036-39; *see also*

11  *ComputerXpress, Inc. v. Jackson,* 93 Cal. App. 4th 993, 1006-07 (2001) (online website is public

12  forum); *Macias v. Hartwell,* 55 Cal. App. 4th 669, 674 (1997) (union campaign flyer is a "recognized

13  public forum under the anti-SLAPP statute"); *Moreau v. Daily Independent* No. 1:12-CV-01862, 2013

14  WL 85362, at *3 (E.D. Cal. Jan. 8, 2013) (newspaper; "a publication can be a 'public forum' even if it

15  only gives voice to a single viewpoint"). As the Book was offered to the general public, it falls within

16  the "public forum" standard of CCP §425.16(e)(3).

17  **B.**    **Penguin's Alleged Conduct Does Not Fall Within a Statutory Exemption**

18      Plaintiffs have suggested in the Joint Status Report that Penguin is exempted from anti-SLAPP

19  coverage because this is an action brought "solely in the public interest" under CCP §425.17(b)(1)-(3).

20  *See* Dkt. 33, at 6. But Plaintiffs cannot sustain their burden to establish that Penguin falls within this

21  exemption from anti-SLAPP coverage.[3] First, the exemption applies "only when the entire action is

22  brought in the public interest" and must be "narrowly construed." *Simpson Strong-Tie,* 49 Cal. 4th at

23  22 (quoting *Club Members for an Honest Election v. Sierra Club,* 45 Cal. 4th 309, 312 (2008)).[4]

24  Second, and perhaps more importantly, the exemption does ***not*** apply to publishers. The statute

25

---

26  [3] The party seeking the benefit of a particular exemption of the anti-SLAPP statute bears the burden of
    demonstrating it applies. *Simpson Strong-Tie Co., Inc. v. Gore,* 49 Cal. 4th 12, 22-23 (2010).

27  [4] *See also Blanchard v. DIRECTV, Inc.,* 123 Cal. App. 4th 903, 916 (2004) (§ 425.17(b) exemption

28  inapplicable to putative UCL class seeking restitution and damages, as suit was "not designed to confer
    a benefit upon anyone other than plaintiffs" and sought relief for themselves personally).

1   specifically creates an exception to the exemption with respect to persons who engage in

2   "dissemination of . . . any book" or in the "creation, dissemination, exhibition, advertisement, or

3   promotion" of any literary work, including literary works that are offered to the general public.  CCP §

4   425.17(d)(1) and (2).  *See, e.g., Ingels v. Westwood One Broadcasting Services, Inc.*, 129 Cal. App. 4th

5   1050, 1067-68 (2005).  In other words, § 425.17(d)(1) and (2) provide  "exceptions to the exemptions"

6   that protect publishers like Penguin from the provisions of §425.17(b).

7   **C.      Plaintiffs Cannot Establish a Probability of Prevailing on Their Claims**

8           As this action falls squarely within the anti-SLAPP statute, Plaintiffs bear the burden of

9   establishing a probability they will prevail on the merits of their claims.  CCP § 425.16(b)(1).  To meet

10  this burden, Plaintiffs must demonstrate that the Complaint is both legally sufficient and supported by

11  a sufficient prima facie showing of facts to sustain a favorable judgment.  *Id.  See also Gilbert v. Sykes*,

12  147 Cal. App. 4th 13, 26 (2007) (plaintiffs' "showing must be made through 'competent and

13  admissible evidence'").  Here, the Complaint clearly fails as a matter of law, and could not possibly be

14  amended to state a claim against Penguin.  *Flores v. Emerich & Fike*, No. 1:05-CV-0291, 2006 WL

15  2536615, at *10 (E.D. Cal., Aug. 31, 2006) (granting motion to strike without leave to amend

16  complaint because "[t]o allow amendment after an anti-SLAPP motion to strike has been granted

17  eviscerates the purpose of the anti-SLAPP statute.").

18      **1.      The Amended Complaint Fails to Meet Pleading Standards, Much Less Establish a
                  Probability of Prevailing**

19          Plaintiffs' Amended Complaint fails even to meet the pleading standards of Fed. R. Civ. P. 8(a)

20  and 9(b), much less establish a probability that Plaintiffs will prevail.  As described in more detail in

21  Penguin's concurrently filed Motion to Dismiss, Plaintiffs fail to plead necessary facts in support of

22  critical elements of each of their claims.  Once Plaintiffs' conclusory allegations are disregarded, the

23  remaining allegations are insufficient to state viable claims against Penguin.  *Bell Atlantic Corp. v.*

24  *Twombly,* 550 U.S. 544, 569 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (a

25  complaint fails to allege plausible relief if it tenders 'naked assertion[s]' devoid of 'further factual

26  enhancement) (citations omitted).

27

28

1      Each of Plaintiffs' claims requires them to allege a false or misleading statement by Penguin.

2  *See* Penguin's Dismissal Brief, § V(A)(1).  But Plaintiffs do not identify any specific statement at any

3  time, in any particular medium, that Penguin ever made about the Book.  Plaintiffs allege generally

4  that Penguin promoted the Book as "nonfiction biography" (without identifying where or when), but

5  such statements are not actionable because they are both true and not misleading.  The Book is

6  unquestionably a written work about Armstrong's life (i.e., a biography or autobiography), and neither

7  word – "biography" or "nonfiction" – means or implies that every statement within the Book is true or

8  accurate.  "The term nonfiction only means that the literature is based on true stories or events, not that

9  every statement is in fact demonstrably true."  *Greenspan v. Random House, Inc.*, 859 F.Supp.2d 206,

10  220 (D.Mass. 2012), *aff'd*, 2012 WL 5188792 (1st Cir. 2012);  *accord*, *United States v. Alvarez*, 638

11  F.3d 666, 674 (9th Cir. 2011) (Kozinski, C.J., concurring in denial of rehearing petition) ("Speaking

12  about oneself is precisely when people are most likely to exaggerate, obfuscate, embellish, omit key

13  facts or tell tall tales. Self-expression that risks [liability] if it strays from the monotonous reporting of

14  strictly accurate facts about oneself is no expression at all."), *aff'd*, 132 S. Ct. 2537 (2012).

15      Each of Plaintiffs' claims requires them to allege that they relied on statements that Penguin

16  made, *see* Penguin's Dismissal Brief, §  V(A)(2); but Plaintiffs have not identified any specific

17  statements by Penguin that induced them to purchase the Book.  While Plaintiffs allege that they would

18  not have purchased the Book had they known Armstrong doped, this allegation falls well short of

19  establishing actual reliance, which requires exposure to a false or misleading statement.  *Tucker v.*

20  *Pacific Bell Mobile Svcs.*, 145 Cal.Rptr.3d 340, 361 (Cal. App. 2012).

21      Plaintiffs' failure to identify false or misleading statements by Penguin that induced them to

22  buy the Book highlights their inability to allege cognizable damages.  Penguin's alleged conduct

23  (publishing a book that allegedly contained lies) did not cause Plaintiffs any economic injury.  It

24  merely caused them frustration, disappointment, and outrage at Armstrong when he confessed nearly

25  13 years after the Book was first published.  California law does not permit recovery for "moral

26  injury," *Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 147 (2008); and "Courts have

27  found that First Amendment considerations . . . argue against the liability of a publisher for a reader's

28

1  reactions to a publication, absent incitement." *Herceg v. Hustler Magazine, Inc.*, 565 F.Supp. 802, 804

2  (S.D. Tex. 1983). *See also* Penguin's Dismissal Brief, § V(A)(3).

3        Each of Plaintiffs' claims also requires them to allege that Penguin knew or had reason to know

4  its statements were false or misleading when made. *See* Penguin's Dismissal Brief, Section V(A)(4).

5  While Plaintiffs allege, in a conclusory fashion, that Penguin "knew or should have known" that

6  Armstrong lied, these types of conclusory allegations must be disregarded under *Twombly* and *Iqbal*

7  unless Plaintiffs can identify facts to support them (which they cannot do). Plaintiffs alternatively

8  allege that, by January 2011, Penguin had reason to know Armstrong had lied based on public rumors,

9  (Compl. at ¶¶ 2, 95); but these allegations are simply implausible and unreasonable. Plaintiffs allege

10  that the rumors existed at all relevant times, *id.*, ¶¶ 37, 42-43, 47-53, 55, 58, 60, 63-64, 68, but that

11  they themselves continued to believe Armstrong's denials of those rumors until he confessed. (*Id.*, ¶

12  46.) Plaintiffs also allege that it was not until June 2012 that the United States Anti-Doping Agency –

13  the entity best situated to know whether Armstrong had doped or not – actually charged Armstrong

14  with having doped. (*Id.*, ¶ 69.) Plaintiffs plead no facts to support the conclusion that Penguin "knew

15  or should have known" that Armstrong lied, and even if their Complaint could be further amended to

16  allege such facts, Penguin had no duty to retract the Book. *D.A.R.E. America v. Rolling Stone*

17  *Magazine*, 101 F.Supp.2d 1270, 1287 (C.D. Cal. 2000) ("There is no authority to support Plaintiffs'

18  argument that a publisher may be liable . . . because it fails to retract a statement upon which grave

19  doubts are cast after publication.").

20        Finally, Plaintiffs allege that Penguin conspired with Armstrong to deceive the public and is

21  therefore liable for everything he said. (Compl. at ¶ 21.) But these allegations are simply legal

22  conclusions that must be disregarded under *Twombly* and *Iqbal*. When alleging conspiracy, Plaintiffs

23  are required to allege facts about the specific "***role of each defendant in each scheme.***" *Lancaster*

24  *Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (emphasis added).

25        As the Complaint fails to plead viable claims, Plaintiffs cannot possibly meet the anti-SLAPP

26  standard for establishing a probability that they will prevail here. Therefore, this action should be

27  dismissed with prejudice and without leave to amend. *Flores*, 2006 WL 2536615, at *10.

28

**2.      Plaintiffs Cannot Possibly Amend Their Amended Complaint to State Viable Claims Against Penguin**

Plaintiffs' action is based on an untenable premise.  Plaintiffs appear to contend that a publisher (*i.e.*, Penguin) who exercises its First Amendment right to offer a nonfiction work to the general public (*i.e.*, the Book) thereby guarantees the truth and accuracy of all the factual statements in the work.  The premise is faulty, and Plaintiffs' action cannot succeed, because no court has ever found that publishers owe such a duty.

Over the years, numerous cases have been brought by consumers against publishers like Penguin on the theory that the publisher was responsible for non-defamatory inaccuracies or outright lies in nonfiction publications like the Book.  In most of those cases, plaintiffs alleged only that the publisher was negligent by failing to verify the accuracy of the author's words; but plaintiffs in some of those cases, like Plaintiffs here, alleged that the publisher engaged in fraud because it actually ***knew*** the allegedly nonfiction books' contents were false.  None of those plaintiffs prevailed on their claims, and Plaintiffs here cannot prevail for the same reasons.  (*See* Penguin's Dismissal Brief, § V(B)(2)(b).)

**a.      Plaintiffs Cannot State Viable Claims Against Penguin Based on Alleged Misrepresentations *Within* the Books**

To the extent Plaintiffs' claims against Penguin are based on allegedly false or inaccurate statements within the Book, they cannot possibly succeed.  It is black-letter law in the United States that a publisher owes no "duty to investigate the accuracy of the contents of the books it publishes."[5] *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1037 (9th Cir. 1991); *see also* Penguin's Dismissal

---

[5] Penguin recognizes that publishers, in various circumstances, owe a limited duty to verify the truth or accuracy of an author's statements about other persons that are potentially defamatory.  The duty is limited in order to protect First Amendment activities:

> A nonfiction work often details events that are long past and describes people who are unavailable to verify the author's statements.  To require a book publisher to check, as a matter of course, every potentially defamatory reference might raise the price of nonfiction works beyond the resources of the average man.  This result would, we think, produce just such a chilling effect on the free flow of ideas as First Amendment jurisprudence has sought to avoid.

*Geiger v. Dell Publishing Co., Inc.*, 719 F.2d 515 (1st Cir. 1983).  But the scope of this long-recognized and limited duty as to potentially defamatory statements is far narrower than the duty that Plaintiffs seek to impose on the publisher defendants here – namely, a duty to investigate every factual statement that an author may make on any topic, including about himself.

8

1   Brief, § V(B)(2)(b).  If a publisher were required to guarantee or insure the truth and accuracy of

2   everything an author says, the costs of publishing books would be prohibitive.  Imposing such a duty

3   would deep-freeze publishing and, with it, free speech.  Neither the First Amendment nor common law

4   would tolerate it.

5          The First Amendment bars civil lawsuits for the publication of intentional non-defamatory

6   falsehoods in order "to eliminate the risk of undue self-censorship and the suppression of truthful

7   material," *see Herbert v. Lando*, 441 U.S. 153, 172 (1979), and thereby to give necessary "breathing

8   space" to free speech.  *New York Times Co. v. Sullivan*, 376 U.S. 254, 272 (1964).  "Authoritative

9   interpretations of the First Amendment guarantees have consistently refused to recognize an exception

10  for any test of truth – whether administered by judges, juries, or administrative officials – and

11  especially one that puts the burden of proving truth on the speaker." *Id.* at 271.  "For the Constitution

12  protects expression and association without regard to . . . the truth, popularity, or social utility of the

13  ideas and beliefs which are offered." *N.A.A.C.P. v. Button*, 371 U.S. 415, 445 (1963).

14  Autobiographies, in particular, need such breathing space.  *Simon & Schuster v. Members of the N.Y.*

15  *State Crime Victims Bd.*, 502 U.S. 105, 121-23 (1991).  Federal courts have accorded "near absolute

16  protection" to "false but nondefamatory statements of fact outside the commercial realm." *United*

17  *States v. Alvarez*, 638 F.3d 666, 670 (9th Cir. 2011) (Smith, J., concurring in denial of rehearing

18  petition), *citing* Elena Kagan, *Private Speech, Public Purpose: The Role of Governmental Motive in*

19  *First Amendment Doctrine*, 63 U. Chi. L. Rev. 413, 477 (1996), *aff'd,* 132 S. Ct. 2537 (2012).

20         While fraudulent speech is not protected by the First Amendment, no court has ever upheld

21  fraud claims based on the contents of nonfiction books (much less autobiographies like the Book) that

22  were offered to the general public.  Instead, courts have unanimously rejected such claims as

23  challenges to fully protected First Amendment speech.  *E.g., Gorran v. Atkins Nutritionals, Inc.*, 464

24  F.Supp.2d 315 (S.D.N.Y. 2006) (First Amendment bars claims under Florida Deceptive and Unfair

25  Trade Practices Act against publisher of Atkins diet book);  *Keimer v. Buena Vista Books, Inc.*, 75 Cal.

26  App. 4th 1220, 1231 (Cal. App. 1999) ("no one involved in modern jurisprudence can reasonably

27  dispute [that] the content of *The Beardstown Ladies'* books is entitled to the full protection of the First

28  Amendment."); *Lacoff v. Buena Vista Publishing, Inc.*, 183 Misc.2d 600, 605, 705 N.Y.S.2d 183 (N.Y.

1   Sup. Ct. 2000) ("it is clear that the [book's content] is protected under both the Federal and New York

2   Constitutions for its truthful, as well as erroneous, statements of facts.").

3        Even if fraud claims based on a book's contents were theoretically possible, Plaintiffs here fail

4   to allege them properly.  Plaintiffs fail to identify any statements within the Book that they read before

5   buying the Book and that induced them to buy it.  Nor do Plaintiffs allege any basis for concluding that

6   they justifiably relied on statements within the Book in order to purchase the Book.  Nor do Plaintiffs

7   allege any facts from which it could be inferred that Penguin knew or had reason to know that any

8   statements in the Books were false or misleading when the Book was first published in 2000.

9           **b.**    **Plaintiffs Cannot State Viable Claims Against Penguin Based on Allegedly**
                            **Deceptive Promotional Statements About the Books**

10

11        Plaintiffs' claims against Penguin rest upon their general allegation that Penguin promoted the

12   Book as "nonfiction biography," (Compl. at ¶¶ 2-3, *et al.*), which was allegedly false or misleading

13   because the Book contained lies.  Even if Plaintiffs could amend their complaint to provide the

14   requisite particularity,[6] their fundamental claim will never be viable because (1) the alleged statement

15   is an adjunct to fully protected First Amendment speech, (2) the alleged statement does not otherwise

16   meet the standard for commercial speech, and (3) the alleged statement does not meet the standard

17   under California law for imposing publisher liability.

18           **i.**     **Penguin's Alleged Description of the Book as a "Nonfiction**
                           **Biography" Is an Adjunct to Fully Protected, Noncommercial**

19                              **Speech**

20        Describing the Book as "nonfiction biography" is true, accurate and not misleading.  The Book

21   is, in fact, a written account of certain aspects of a person's life based on fact, not imagination.  *See*

22   *Greenspan*, 859 F.Supp.2d at 220.  Those words correctly identify the general category of the work.

23   To the extent the words imply anything about the Book's content, they derive their meaning from the

24   Book's content and are therefore "inextricably intertwined with otherwise fully protected speech."

25

26   _____

27   [6] That is, Plaintiffs are required to plead when Penguin made those statements, where Penguin made
those statements, that those statements induced Plaintiffs to buy the Book, that the statements were

28   material statements of fact, and facts supporting why Penguin knew or had reason to know the
statements were false or misleading when made.

1  *Riley v. Nat'l Fed. of the Blind of North Carolina*, 487 U.S. 781, 796 (1988). It is impossible to verify

2  whether "nonfiction" or "biography" is a correct description without consulting the Book's contents.[7]

3      Courts have developed doctrines to protect publishers from liability when fully protected

4  speech and speech that promotes it are inextricably intertwined.[8] Promotional statements about books

5  are deemed "adjuncts" or "incidental" to the protected work and thus entitled to the same First

6  Amendment protection. *Charles v. City of Los Angeles*, 697 F.3d 1146, 1154 (9th Cir. 2012)

7  (recognizing First Amendment protection of "advertisements for expressive works so as to prevent tort

8  actions from choking the truthful promotion of protected speech."); *Cher v. Forum Int'l, Ltd.*, 692 F.2d

9  634, 639 (9th Cir.1982) (same); *Aldrin v. Topps Company, Inc.*, No. CV 10–09939, 2011 WL

10  4500013, at *3 (C.D. Cal. Sept. 27, 2011) ("To the extent that the 'Visor Shot' image on the cards'

11  cardboard packaging constitutes an advertisement, it is a 'mere adjunct' to the cards themselves, and is

12  also protected."). This does not mean that all statements promoting First Amendment works are

13  immune from liability. It means only that courts distinguish between promotional statements made to

14  summarize the contents of a book and promotional statements about a book as a product. "The former

15  are essentially a matter of argument, to be accepted or rejected by those who read the book, while the

16  latter might often be statements of fact that might be verifiable." *Groden v. Random House, Inc.*, 61

17  F.3d 1045, 1052 (2d Cir. 1995) (no publisher liability under "incidental use" doctrine for use of photo

18  and name "to inform potential readers about the contents of the Book and induce them to purchase it").

19         **ii.   Penguin's Alleged Description of the Book as a "Nonfiction**
     **Biography" Does Not Meet the Standard for Commercial Speech**

20

21      To state viable claims based on alleged statements that the Book is a "nonfiction biography"

22  Plaintiffs must allege that those words were uttered as pure commercial speech and therefore deserve

23  "lesser protection" than speech within the Book. *Central Hudson Gas & Elec. Corp. v. Public Svc.*

---

24  [7] Ironically, Plaintiffs' interpretation of the word "nonfiction" is even more inextricably intertwined

25  with the Book's fully protected contents. Plaintiffs imply that "nonfiction" is a guarantee that every
   statement in the Book is truthful and accurate. Obviously, the accuracy of Plaintiffs' definition of

26  "nonfiction" could never be verified without the most intensive scrutiny imaginable of the Book's
   contents.

27  [8] No court has ever permitted claims against a publisher based on a publisher's description of a book as

28  "nonfiction" or "true." No standards exist for drawing the line where "fiction" becomes "nonfiction,"
   or vice versa; and the courts are not a proper place for developing such standards or policing that line.

*Comm'n of N.Y.*, 447 U.S. 557, 563 (1980). But "[c]ommercial speech is 'defined as speech that does no more than propose a commercial transaction.'" *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011). Plaintiffs cannot establish that Penguin described the Book as "true" or "nonfiction" in the course of proposing commercial transactions. Plaintiffs allege only that Penguin made these statements on the cover and flyleaf and in various media in order to promote the Book, *e.g.*, Compl., ¶ 2; but protected speech does not automatically become commercial speech simply because it promotes or sells something.[9] *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976).

Descriptive words such as "true" or "nonfiction" do not have the "[t]wo features of commercial speech [that] permit regulation of its content." *Central Hudson*, 447 U.S. at 564 n.6. First, such words do not reflect or imply that the speaker has "extensive knowledge" of the Book or is "well situated to evaluate the accuracy of their messages," *id.*, especially when, as here, Penguin had no duty to verify the accuracy of the content of the Book. Second, such statements are not "a hardy breed of expression" that is likely to survive the imposition of liability. *Id.* If publishers could be held liable for describing books as "true" or "nonfiction," publishers would likely stop using those words rather than incur the costs and delays of reviewing the accuracy of their authors' statements; or else, the review would take place, and the expense of conducting it would be passed along to readers, rendering the cost of purchase untenable.

### iii. Penguin's Alleged Conduct Does Not Meet the Standard for Imposing Publisher Liability Under California Law

Under California law, describing a book as a "nonfiction biography" does not meet the standard necessary for a publisher to assume a duty as to the truth or accuracy of a publication's content. In *Hanberry v. Hearst Corp.*, 276 Cal. App. 2d 680, 683-84 (1969), the court imposed liability on a publisher for injuries caused by a defective product it had advertised. The court concluded that

---

[9] Plaintiffs allege that the Book itself is an advertisement because its flyleaf recommends that readers visit the websites of Penguin, Armstrong, and Armstrong's foundation for more information, *id.*, ¶ 39; but this allegation is clearly insufficient to establish that the Book as a whole is commercial speech. *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 957-61 (9th Cir. 2012) (even the Yellow Pages directory was not considered to be commercial speech).

1  publisher liability was warranted in that instance because the publisher had inspected and tested the

2  product[10] and had imprinted the "Good Housekeeping's Consumer's Guaranty Seal" on the

3  advertisement.  Here, in contrast, Plaintiffs do not allege that Penguin investigated Armstrong's denials

4  of doping before publishing the Book and then, by describing the Book as "nonfiction biography,"

5  thereby guaranteed the truth and accuracy of every factual statement within it.

6  In their portion of the Joint Status Report, Dkt. 33, at 2, Plaintiffs cited the *Keimer* case, where

7  a California appellate court concluded that false promotional statements on a book's cover were

8  actionable as false advertising or unfair business practices under the UCL and FAL.  But *Keimer* is not

9  persuasive for at least the following reasons:

10  First, *Keimer* involved allegedly false statements on the covers of the books.  Here, although

11  Plaintiffs have similarly alleged that the cover and flyleaf proclaimed the Book to be "nonfiction

12  biography," the Court may consider those documents and confirm that the word "nonfiction" appears

13  nowhere on the covers or flyleaf of the Book.  *Branch*, 14 F.3d at 454.

14  Second, the statements at issue in *Keimer* were "verifiably false" investment returns.  *Keimer*,

15  75 Cal. App. 4th at 1223-24.  The statements at issue here – that the Penguin described the Book as a

16  "nonfiction biography" – are not verifiably false for the reasons noted above.

17  Third, the defendants in *Keimer* conceded that the statements on the book covers were

18  advertisements, *Keimer*, 75 Cal. App. 4th at 1229, and the defendant publisher in *Keimer* admitted that

19  the touted rates of return had not been calculated in the ordinary manner.  *Id.* at 1225.  The defendants

20  in *Keimer* also conceded that false advertising and unfair business practices had been adequately

21  alleged, and their entire defense rested on First Amendment grounds.  75 Cal. App. 4th at 1226-27.

22  Penguin has made, and makes, no similar concessions here.

23  Finally, *Keimer* overlooked, misunderstood or improperly failed to apply the "adjunct to free

24  speech" doctrine previously articulated in *Cher*, 692 F.2d at 639 (9th Cir. 1982), and later refined in

25  *Charles*, 697 F.3d at 1154; and *Aldrin*, 2011 WL 4500013, at *3.  The discussion of this doctrine in

26

27  [10] Incidentally, the Ninth Circuit and other courts have recognized that the intellectual content of books

28  is not a "product" for purposes of product liability.  *See, e.g.*, *Winter*, 938 F.2d at 1035-36; *Gorran*, 464 F.Supp.2d at 325.

13

*Charles* makes clear that it is not a component of state law inherent in the UCL or FAL, but rather a federal constitutional doctrine that applies to all tort claims implicating the First Amendment.

### c.    Plaintiffs' Claims Against Penguin Are Barred by the Statute of Limitations

Plaintiffs' claims are stale. Penguin published the Book 13 years ago, and the longest statute of limitations that applies to any of Plaintiffs' claims is four years. *See* Cal. Bus. & Prof. Code §17208 (UCL – four years); Cal. Civ. Code § 1780 (CLRA – three years); Cal. Code Civ. Proc. § 338(a); *Ries v. Ariz. Bevs. United States LLC*, 2012 U.S. Dist. LEXIS 169853 *26 (N.D. Cal. 2012) (FAL – three years); Cal. Code Civ. Proc. § 338(d); *Lusksh v. Latham*, 675 F.Supp.1198, 1204 n.10 (N.D. Cal. 1987) (negligent misrepresentation – three years); Cal. Code Civ. Proc. § 338(d); *William L. Lyon & Assocs. v. Superior Court*, 204 Cal. App. 4th 1294, 1312 (2012) (fraud/deceit – three years). Plaintiffs do not allege the dates on which each of them bought the Book, but it is highly unlikely that any of them bought the Book within the past four years; and, if they did, their allegations establish that they were on notice by that time that Armstrong may well have doped.

Plaintiffs anticipate the likelihood that their claims are time-barred by including in the Amended Complaint two paragraphs that attempt to allege facts sufficient to toll the statutes of limitations. (Compl. at ¶¶ 105-06.) Paragraph 106 alleges that Armstrong and his business associates fraudulently concealed the truth about his doping from the public until January 2013; but these allegations are conclusory, lack the requisite particularity under Rule 9(b), and are not directed toward Penguin. Paragraph 105 alleges that Plaintiffs had no reason to discover, and could not have discovered, Armstrong's lies earlier.[11] These allegations are attempts to invoke the discovery rule, which provides that the statute of limitations begins to run "when the plaintiff suspects or should suspect that her injury was caused by wrongdoing." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988); *see also Aryeh v. Canon Bus. Solutions*, No. S184929, 2013 WL 263509 (Cal. Jan. 24, 2013). But Plaintiffs cannot meet the discovery rules standard because they cannot reasonably or plausibly

---

[11] Plaintiffs do not allege any facts to support an inference that Penguin knew or should have known any more than Plaintiffs knew, and indeed alleged that Defendants Armstrong, Weisel and Stapleton concealed the knowledge of the doping from their contractors. E.g., Dkt. 22, ¶ 47.

1   allege they did not have a "suspicion of wrongdoing, and therefore an incentive to sue" based on

2   widespread public rumors that Armstrong had doped. *Jolly*, 44 Cal. 3d at 1111.

3   **D.     This Special Motion to Strike Is Properly Decided Without Early Discovery**

4          Subdivision (g) of CCP § 425.16 expressly stays all discovery proceedings.  CCP § 425.16(g)

5   ("[a]ll discovery proceedings in the action ***shall be stayed*** upon the filing of a notice of motion made

6   pursuant to this section" and "shall remain in effect until notice of entry of the order ruling on the

7   motion") (emphasis added).  Where, as here, a special motion to strike is based solely on the alleged

8   deficiencies in the Plaintiffs' complaint, the motion must be treated as one under Fed. R. Civ. P.

9   12(b)(6).  *See Rogers v. Home Shopping Network, Inc.*, 264 F.3d 832, 981-82 (9th Cir. 2001)

10  (recognizing such a motion is treated the same as a 12(b)(6) motion with the exception that the

11  attorney's fee provision of CCP §425.16(c) is also applicable); *Aeroplate Corp. v. Arch Ins. Co.*, No.

12  061099, 2006 WL 3257487, at *5 (E.D. Cal. 2006) ("[i]f the motion pursuant to section 425.16

13  challenges the legal sufficiency of the complaint, and does not require the consideration of facts that

14  are produced through the discovery process, then the issue is decided under the standards applicable to

15  a motion to dismiss pursuant to Rule 12(b)(6)").  Unless the special motion is based on the plaintiff's

16  alleged failure of proof, discovery is not permitted.  *Id.*

17         Penguin's anti-SLAPP special motion to strike is based purely on the legal deficiencies

18  inherent in Plaintiffs' Complaint, subjecting it to dismissal under the anti-SLAPP statute, including the

19  fact that (1) Plaintiffs' claims allege conduct of Penguin that is constitutionally protected; and (2)

20  Plaintiffs' claims cannot succeed on the merits because they fail as a matter of law and are barred by

21  the First Amendment.  These issues do not command or require the resolution of any factual dispute,

22  and Penguin has introduced no evidence which would warrant the need for Plaintiffs to pursue and

23  obtain discovery prior to adjudication of this motion.  Therefore, this Court should treat the instant

24  motion as one under Fed. R. Civ. P. 12(b)(6) and issue a decision without permitting discovery.

25  **E.     Penguin Is Entitled to Recover Its Reasonable Attorney's Fees and Costs**

26         Upon the granting of an anti-SLAPP motion, the award of attorney's fees to a prevailing

27  defendant is mandatory.  "A prevailing defendant on a special motion to strike ***shall be entitled*** to

28  recover his or her attorney's fees and costs."  CCP § 425.16(c) (emphasis added); *DIRECTV*, 123 Cal.

1 | App. 4th at 912, 923 (affirming award of $97,222.10 in fees); *see also Dove Audio, Inc. v. Rosenfeld,*

2 | *Meyer & Susman*, 47 Cal. App. 4th 777, 785 (1996) (affirming trial court's granting of sanctions in

3 | amount of $27,000 to defendants in connection with successful anti-SLAPP motion).

4 |     Penguin has incurred attorneys' fees for the preparation of the instant anti-SLAPP motion and

5 | will incur additional attorneys' fees and costs associated with the filing and service of this motion, the

6 | preparation of the reply brief and counsel's preparation for and appearance at the hearing on the

7 | motion.   If this motion is granted, Penguin will submit appropriate evidence of the fees and costs it

8 | incurred in responding to this lawsuit.   Penguin requests an award of its attorney's fees and costs in the

9 | amount it will demonstrate at the appropriate time.

### IV.   CONCLUSION

11 |     For the reasons set forth above, the Court should grant Penguin's special motion to strike

12 | Plaintiffs' Amended Complaint and grant Penguin recovery of its reasonable attorney's fees and costs

13 | incurred herein.

Respectfully submitted,

Dated:  April 26, 2013

DORSEY & WHITNEY LLP

By:  /s/  *Kent J. Schmidt*
Kent J. Schmidt (SBN 195969)
Jonathan M. Herman (admitted *pro hac vice*)
F. Matthew Ralph (admitted *pro hac vice*)

Attorneys for Defendants Penguin Group (USA) Inc.,
G.P. Putnam's Sons, and The Berkley Publishing Group

**CERTIFICATE OF SERVICE**

I, Sarah K. Shaholli, hereby certify and declare as follows:

I am over the age of 18 years and not a party to the within action.  My business address is 600 Anton Blvd., Costa Mesa, California 92626.  On April 26, 2013, I caused service of the following document(s) on counsel for all parties to this action by electronically filing the document(s) with the Clerk of the District Court using its ECF System which electronically notifies them.  The document(s) served include:

**DEFENDANT PENGUIN GROUP (USA) INC., G.P. PUTNAM'S SONS, AND THE BERKLEY PUBLISHING GROUP'S NOTICE OF MOTION AND SPECIAL ANTI-SLAPP MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT (UNDER CCP SEC. 425.16) AND REQUEST FOR AWARD OF ATTORNEY'S FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 26th day of April, in Costa Mesa, California.

_____
SARAH K. SHAHOLLI