Zia F. Modabber (CA 137388)
zia.modabber@kattenlaw.com
Gregory S. Korman (CA 216931)
greg.korman@kattenlaw.com
Andrew J. Demko (CA 247320)
andrew.demko@kattenlaw.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East
Suite 2600
Los Angeles, CA 90067-3012
Telephone:    310.788.4400
Facsimile:    310.788.4471

Attorneys for Defendant LANCE ARMSTRONG

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROB STUTZMAN, JONATHAN WHEELER, GLORIA LAURIA, DAVID REIMERS and SCOTT ARMSTRONG, on behalf of themselves and all others similarly situated,, | Case No. 2-13-cv-00116 MCE-KJN |
| Plaintiffs, | **DEFENDANT LANCE ARMSTRONG'S NOTICE OF SPECIAL MOTION, AND SPECIAL MOTION, TO STRIKE (ANTI-SLAPP MOTION); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| LANCE ARMSTRONG; PENGUIN GROUP (USA), INC.; G.P. PUTNAM'S SONS; THE BERKELEY PUBLISHING GROUP; RANDOM HOUSE, INC.; BROADWAY BOOKS; CROWN PUBLISHING GROUP; THOMAS WEISEL; WILLIAM J. STAPLETON; and DOES 1-50, inclusive,, | DATE:      July 25, 2013<br>TIME:      2:00 p.m.<br>PLACE:     Courtroom 7<br><br>[Filed concurrently with Defendant Armstrong's Request for Judicial Notice] |
| Defendants. | |

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31736581v2_383429-00001

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

  **PLEASE TAKE NOTICE THAT** on July 25, 2013, at 2:00 P.M., in Courtroom 7 of the above-named Court, located at the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, California, the Honorable Morrison C. England presiding, Defendant Lance Armstrong will and hereby does move pursuant to Cal. Civ. Proc. Code §425.16 to strike Plaintiffs Rob Stuzman, Jonathan Wheeler, Gloria Lauria, David Reimers, and Scott Armstrong's Unfair Competition Law ("UCL"), False Advertising Law ("FAL") and Consumer Legal Remedies Act ("CLRA") claims from their First Amended Complaint because the speech Plaintiffs seek to regulate falls within the scope of speech and conduct protected by Cal. Civ. Proc. Code § 425.16, and Plaintiffs cannot demonstrate a probability that they will prevail on the merits of these claims.

  This motion is based upon the Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and Proposed Order, the Court's file, and any other matters the Court may consider at or before the hearing on this Motion.

  Respectfully submitted,

Dated:  April 26, 2013

KATTEN MUCHIN ROSENMAN LLP
Zia F. Modabber (CA 137388)
Gregory S. Korman (CA 216931)
Andrew J. Demko (CA 247320)

By:  /s/ Zia F. Modabber
  Zia F. Modabber
**Attorneys for Defendant Lance Armstrong**

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

1

## TABLE OF CONTENTS

I.      INTRODUCTION...................................................................................................... 1

II.     SUMMARY OF ALLEGATIONS. ........................................................................ 2

     A.      Plaintiffs Vaguely Allege Learning About And Buying Two Armstrong
          Books......................................................................................................... 2

     B.      Plaintiffs Insert Allegations About Three Other Books That None Of
          Them Alleges To Have Bought................................................................ 3

     C.      The FAC Lists Many Allegedly Fraudulent Statements, But Does Not
          Allege That A Single Plaintiff Saw Or Heard Any Of Them Before
          Buying The Books.................................................................................... 4

          1.      Armstrong's public statements denying the use of PEDs. ......... 4

          2.      Armstrong's statements within the pages of his books. ............. 4

          3.      Statements attributed to no particular defendant that purportedly
              describe the books. ..................................................................... 4

     D.      Plaintiffs' "Brand" Theory. ..................................................................... 5

     E.      Plaintiffs Repeat USADA's Findings. ..................................................... 5

III.    LEGAL STANDARD FOR ANTI-SLAPP MOTIONS. ....................................... 5

IV.     STEP ONE:  ARMSTRONG HAS MET HIS BURDEN BECAUSE
      PLAINTIFFS' CLAIMS ARISE FROM ACTIVITY PROTECTED BY THE
      ANTI-SLAPP STATUTE. ..................................................................................... 6

     A.      Section 426.16(e)(3) Is Satisfied Because The Statements Attributed To
          Armstrong Were Made In A Public Forum In Connection With An Issue
          Of Public Interest. ................................................................................... 7

          1.      Armstrong's statements about PEDs were made in a public
              forum. .......................................................................................... 8

          2.      Armstrong's statements were made in connection with an issue
              of public interest.......................................................................... 9

     B.      Section 425.16(e)(4) Is Also Satisfied Because Armstrong's Speech Is
          In Connection With An Issue Of Public Interest................................... 10

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

ii

V.    STEP TWO:  PLAINTIFFS CAN NEVER MEET THEIR BURDEN
      BECAUSE (1) CALIFORNIA'S CONSUMER-PROTECTION LAWS APPLY
      TO COMMERCIAL SPEECH ONLY; (2) NO PLAINTIFF SAW OR HEARD
      ANY OF THE CHALLENGED SPEECH BEFORE BUYING; AND (3) NO
      PLAINTIFFS BOUGHT THREE OF THE FIVE BOOKS. ............................................. 11

      A.    The UCL, FAL, And CLRA Claims Apply Only To Commercial
            Speech, And The Speech Attributed To Armstrong Is Noncommercial. .............. 11

            1.    The Ninth Circuit's commercial speech test. ............................................ 12

            2.    Armstrong's public statements about using PEDs are not
                  commercial speech because they do not propose a commercial
                  transaction, are not advertisements, and do not reference the
                  products. .................................................................................................... 13

            3.    Armstrong's statements on the pages *inside* the books are not
                  commercial speech for the same reasons. ................................................. 14

            4.    Categorizing the books as non-fiction biographies and describing
                  the author as a Tour de France Winner is not commercial speech. ............ 15

            5.    The "Armstrong Brand" allegations do not transform
                  noncommercial speech into commercial speech; at best, they
                  allege an economic motivation. ................................................................. 17

      B.    Plaintiffs Did Not See, Hear, Or Read Any Of The Alleged False
            Statements Before Buying The Books, So Their Claims Should Be
            Stricken. .............................................................................................................. 18

      C.    Plaintiffs' Claims Based On The Three Books They Never Purchased
            Should Be Stricken. ............................................................................................. 18

VI.   CONCLUSION. .................................................................................................... 19

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

# TABLE OF AUTHORITIES

**Cases**

*1-800 Contacts, Inc. v. Steinberg*,
   107 Cal. App. 4th 568 (2003) ................................................................. 10

*Annette F. v. Sharon S.*,
   119 Cal. App. 4th 1146 (2004) ................................................................. 8

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ................................................................. 19

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983) ................................................................. passim

*Buzayan v. City of Davis Police Dept.*,
   No. 2:06-cv-01576, 2007 WL 2288334 (E.D. Cal. Aug. 8, 2007) ................................................................. 9

*Chaker v. Mateo*,
   209 Cal. App. 4th 1138 (2012) ................................................................. 8

*Charles v City of Los Angeles*,
   697 F.3d 1146 (9th Cir. 2012) ................................................................. 16

*Cher v. Forum Int'l, Ltd.*,
   692 F.2d 634 (1982) ................................................................. 16

*City of Costa Mesa v. D'Alessio Invs.*,
   214 Cal. App. 4th 358 (2013) ................................................................. 7

*Club Members For An Honest Election v. Sierra Club*,
   45 Cal. 4th 309 (2008) ................................................................. 6

*Consol. Edison Co. v. Pub. Serv. Comm'n*,
   447 U.S. 530 (1980) ................................................................. 14

*Damon v. Ocean Hills Journalism Club*,
   85 Cal. App. 4th 468 (2000) ................................................................. 8

*Dex Media West, Inc. v. City of Seattle*,
   696 F.3d 952 (9th Cir. 2012) ................................................................. 12, 13, 16, 17

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ................................................................. 18

*Dvora v. Gen. Mills, Inc.*,
   No. 11-1074, 2011 WL 1897349 (C.D. Cal. May 16, 2011) ................................................................. 18

*Hailstone v. Martinez*,
   169 Cal. App. 4th 728 (2008) ................................................................. 10

*Hall v. Time Warner, Inc.*,
   153 Cal. App. 4th 1337 (2007) ................................................................. 9

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ................................................................. 6, 9, 15

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

LANCE ARMSTRONG'S ANTI-SLAPP MOTION

CASE NO. 2:13-CV-00116-MCE-KJN

31736581v2_383429-00001

*Hunt v. City of Los Angeles*,
   638 F.3d 703 (9th Cir. 2011)................................................................ 12

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011) ............................................... 18

*In re GlenFed, Inc. Sec. Lit.*,
   42 F.3d 1541 (9th Cir. 1994).............................................................. 17

*Johns v. Bayer Corp.*,
   No. 09-1935, 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010) ................. 18

*Joseph Burstyn, Inc. v. Wilson*,
   343 U.S. 495 (1952) ......................................................................... 14

*Keimer v Buena Vista Books, Inc.*,
   75 Cal. App. 4th 1220 (1999)......................................................... 11, 14, 15

*Kronemeyer v. Internet Movie Database, Inc.*,
   150 Cal. App. 4th 941 (2007) ............................................................ 15

*Kurwa v. Harrington, Foxx, Dubrow & Canter, LLP*,
   146 Cal. App. 4th 841 (2007)............................................................. 8

*Lacoff v. Buena Vista Publishing, Inc.*,
   705 N.Y.S.2d 183 (N.Y. Sup. Ct. 2000) ............................................... 15

*Navellier v. Sletten*,
   29 Cal. 4th 82 (2002) ....................................................................... 6

*New.Net, Inc. v. Lavasoft*,
   356 F. Supp. 2d 1090 (C.D. Cal. 2004)............................................. 12, 18

*Nygard , Inc. v. Uusi-Kerttula*,
   159 Cal. App. 4th 1027 (2008) ........................................................ 8, 9

*O'Connor v. Super. Ct.*,
   177 Cal. App. 3d 1013 (1986) ........................................................... 11

*Rezec v. Sony Pictures Entertainment, Inc.*,
   116 Cal. App. 4th 135 (2004)......................................................... 11, 17

*Riley v. Nat'l. Fed. For the Blind*,
   487 U.S. 795 (1988) ......................................................................... 16

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ............................................................ 18

*SEC v. Wall St. Publ'g Inst.*,
   851 F.2d 365 (D.C. Cir. 1988) .......................................................... 16

*Seelig v. Infinity Broad. Corp.*,
   97 Cal. App. 4th 798 (2002)............................................................. 8

*Shekhter v. Fin. Indem. Co.*,
   89 Cal. App. 4th 141 (2001) ............................................................. 6

*Tamkin v. CBS Broad., Inc.*,
   193 Cal. App. 4th 133 (2011).......................................................... 9, 10

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
    190 F.3d 963 (9th Cir. 1999) ................................................................................ 6

*Varian Med. Systems, Inc. v. Delfino*,
    35 Cal. 4th 180 (2005) ......................................................................................... 6

*Weinberg v. Feisel*,
    110 Cal. App. 4th 1122 (2003) ......................................................................... 8, 9

*Zwart v. Hewlett-Packard Co.*,
    No. 10-3992, 2011 WL 767750 (N.D. Cal. Feb. 25, 2011) ............................... 19

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................. 11

Cal. Bus. & Prof. Code § 17500 ............................................................................. 11

Cal. Civ. Code § 1770(a) ........................................................................................ 11

Cal. Civ. Code § 425.16 (e)(4) .......................................................................... 7, 10

Cal. Civ. Code § 425.16(b)(1) ................................................................................. 5

Cal. Civ. Code § 425.16(e) ...................................................................................... 6

Cal. Civ. Code § 425.16(e)(2) .................................................................................. 7

Cal. Civ. Code § 425.16(e)(3) ......................................................................... 7, 8, 9

**Rules**

Fed. R. Civ. P., Rule 12(b)(6) ................................................................................ 18

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31736581v2_383429-00001

## I.    INTRODUCTION.

For years, there has been intense public and media interest and discussion on the use of performance enhancing drugs (PEDs) in sports.  In professional cycling, Lance Armstrong has been at the center of that controversy for well over a decade.  Both the cycling press and mainstream media have reported on him constantly, while numerous investigations around the world have been opened and closed.  Any number of authors published articles and wrote books about him, almost uniformly covering whether he used PEDs while racing.  In the midst of this public discussion, Armstrong spoke about PEDs.

Until January 2013, Armstrong's speech contained vigorous denials of his use of PEDs. But in a live interview with Oprah Winfrey broadcast around the world, in January 2013, Armstrong admitted using PEDs, and admitted that he had been untruthful in his denials.  In so doing, Armstrong understood the possibility of negative consequences, which to date have included losing his Tour de France victories; being banned for life from sanctioned athletic competition; the loss of many millions of dollars in sponsorships and other revenues; and public anger and scorn from those he let down.  What he did not lose, however, was his right not to be sued for exercising his rights to speak on a matter of public interest.

This action arises directly out of Armstrong's speech on the issue of PEDs in that Plaintiffs allege that Armstrong's speech denying PED use misled them into buying two books Armstrong co-wrote.  Distilled to its essence, Plaintiffs claim that they would not have bought these books, had Armstrong not spoken.  Plaintiffs sue claiming that Armstrong's speech is actionable under the Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA).

Because Plaintiffs' claims arise from protected activity, they trigger California's anti-SLAPP statute.  The burden then shifts to Plaintiffs to present admissible evidence of probable success on the merits.  As detailed below, *on the face of their pleading*, Plaintiffs cannot shoulder their burden, because (1) each statement attributed to Armstrong is noncommercial speech, and California's consumer protection laws apply only commercial speech; (2) no Plaintiff alleges to have actually seen or heard any of the allegedly fraudulent statements before buying any books;

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

1

and (3) no Plaintiff alleges to have purchased three of the five books upon which they sue. Consequently, Plaintiffs' UCL, FAL, and CLRA claims are legally insufficient on their face, and should be stricken.

## II.   SUMMARY OF ALLEGATIONS.

Through this lawsuit, Plaintiffs seek a refund for every individual in California who purchased a book authored in whole or in part by Armstrong. The basis for this request is that Armstrong, the Publisher Defendants, and Armstrong's associates allegedly made misrepresentations inside and outside the books.

### A.   Plaintiffs Vaguely Allege Learning About And Buying Two Armstrong Books.

Plaintiffs allege that they learned about and bought either or both of two books Armstrong co-wrote, IT'S NOT ABOUT THE BIKE: MY JOURNEY BACK TO LIFE, and EVERY SECOND COUNTS. FAC ¶¶ 9-12. The following sets forth each Plaintiff's allegations:

**Plaintiff Stutzman.**  "Sometime between 2001 and 2003," Stutzman "learned about" IT'S NOT ABOUT THE BIKE. FAC ¶ 8. Other than the fact of the book's existence, he does not specify what he learned, or that he heard or read any specific statement about the book. Nor does Stutzman allege from whom, how, or where he learned about the book. Stutzman later "bought the book in California and read it." *Id.* He provides no details about his purchase.

**Plaintiff Wheeler.**  Wheeler is a "life-long, avid cycling enthusiast and bike racer" who followed Armstrong's career before any of the books were published. *Id.* ¶ 9. Wheeler purchased IT'S NOT ABOUT THE BIKE shortly after it was published. *Id.* He learned through "the media" about Armstrong's "supposedly truthful and inspiring account of his triumphant return" to cycling. *Id.* Wheeler does not allege that he saw or heard any specific statement, by anyone, about the book, or that he bought the book in reliance on any specific statement by any defendant. Wheeler also purchased EVERY SECOND COUNTS. *Id.* The only reason Wheeler provides for buying the second book is that he enjoyed reading the first.

**Plaintiff Lauria**.  Lauria purchased both IT'S NOT ABOUT THE BIKE and EVERY SECOND COUNTS after being inspired "by advertising featuring Armstrong's successful battle against cancer." *Id.* ¶ 10. Lauria does not allege what particular advertisement she saw; what was being

advertised; what statements it contained; who made those statements; where, when, or how she saw them; or even that they were false (as Armstrong did successfully battle cancer). Nor does she disclose the circumstances of her purchases. Lauria explains that she sued Armstrong because she is "bitterly angry" that he "took banned substances in order to win his cycling races." *Id.* Had she known Armstrong "doped his way to his 'victories,'" she allegedly would not have bought either book. *Id.*

**Plaintiff Reimers**. Reimers saw non-specific "advertisements" about Armstrong's Tour de France win after he "conquered testicular cancer"; Remiers later purchased IT'S NOT ABOUT THE BIKE. *Id.* ¶ 11. Reimers does not allege that Armstrong did not conquer testicular cancer (*i.e.*, falsity as to these ads), nor does he allege seeing any other false or misleading statements at all. He omits any specific details about the advertisements he saw and his purchase of the book. Reimers concludes that "had [he] known that Armstrong cheated," he would not have bought the book. *Id.*

**Plaintiff S. Armstrong**. S. Armstrong is another long-time, avid cyclist inspired by Lance Armstrong's career. *Id.* ¶ 12. Not relying on any particular statements about the books, S. Armstrong instead relied on "representations" that Armstrong lived "drug-free" when he bought IT'S NOT ABOUT THE BIKE. *Id.* The FAC does not allege when, where, how, or by whom these "representations" were made. Likewise, S. Armstrong is silent about when, where, or how he purchased the book. S. Armstrong also alleges he "read" EVERY SECOND COUNTS, but not that he actually bought it. *Id.* Like Lauria and Reimers, he alleges he would not have purchased the book "had he known that Armstrong's representations as to his drug-free cycling career and life were false." *Id.*

**B.     Plaintiffs Insert Allegations About Three Other Books That None Of Them Alleges To Have Bought.**

The FAC also discusses three other books: THE LANCE ARMSTRONG PERFORMANCE PROGRAM, LANCE ARMSTRONG:  IMAGES OF A CHAMPION, and COMEBACK 2.0: UP CLOSE AND PERSONAL. FAC ¶ 2. None of Plaintiffs alleges buying any of these three books.

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

3

C.     **The FAC Lists Many Allegedly Fraudulent Statements, But Does Not Allege That A Single Plaintiff Saw Or Heard Any Of Them Before Buying The Books.**

The FAC alleges that the following false statements by Armstrong and other defendants induced them to buy IT'S NOT ABOUT THE BIKE and/or EVERY SECOND COUNTS.  Throughout the 171 paragraph, 80-plus page FAC, however, *no Plaintiff ever alleges to have seen or heard any of these statements before buying either book.*

1.     **Armstrong's public statements denying the use of PEDs.**

Plaintiffs' FAC lists scores of "direct quotes" from Armstrong discussing PEDs in cycling including the allegations, and his denials, of the use of PEDs.  These quotes, which span from 1999 through 2012, were made in public appearances, press conferences, on the Larry King Live show, in newspapers, etc.  *See* FAC ¶ 45.

2.     **Armstrong's statements within the pages of his books.**

Plaintiffs also republish several pages of excerpts from IT'S NOT ABOUT THE BIKE and EVERY SECOND COUNTS.  *See* FAC ¶¶ 42-43.  These excerpts discuss the global controversy involving PEDs, including international investigations into Armstrong by cycling's governing bodies, accusations levied against Armstrong from any number of sources, and drug testing by the United States Anti-Doping Agency (USADA) and the International Cycling Union ("UCI").  *Id.*

3.     **Statements attributed to no particular defendant that purportedly describe the books.**

Plaintiffs also identify allegedly fraudulent statements describing the books.  Plaintiffs do not specify who made these statements; instead, they lump together all "Defendants" and attribute the statements to all of them.[1]

With respect to IT'S NOT ABOUT THE BIKE, Plaintiffs identify four basic statements they allege are fraudulent:  that (1) it was a "truthful work of non-fiction biography"; (2) Armstrong is a "Tour de France Winner"; (3) the book is a "personal story  of Lance Armstrong's life so far,

---

[1]     While it is obvious that the publishers, not Armstrong, made these alleged statements, Armstrong addresses them for completeness.

Katten
Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31736581v2_383429-00001

from childhood . . . [to] more triumph (victory in the 1999 Tour de France)"; and (4) "Champion cyclist Lance Armstrong's Tour de France victory has been hailed as amount [sic] 'the most memorable in sports history during this century' (*USA Cycling* magazine)."   FAC ¶ 109. Variations on these statements are peppered throughout the FAC.  *See*, *e.g.*, FAC ¶¶ 23, 25, 27.

When discussing EVERY SECOND COUNTS, Plaintiffs allege two basic statements alleged to be fraudulent:  that (1) it was "a true and honest work of non-fiction biography;" and (2) Armstrong was "the five-time Tour de France winner."  FAC ¶ 115.[2]  Similar allegations appear elsewhere in Plaintiffs' pleading.  *See* FAC ¶¶ 24-25.

### D.    Plaintiffs' "Brand" Theory.

Plaintiffs devote one-third of the FAC to claiming that Armstrong's public discussion of hot-topic issues (*i.e.*, his cycling victories, performance enhancing drugs, and his support for cancer research) were intended to "build" and "maintain" the "Lance Armstrong 'Brand.'"  FAC ¶¶ 35-57.  Plaintiffs do not base any causes of action on this theory.[3]

### E.    Plaintiffs Repeat USADA's Findings.

Nearly twenty pages of Plaintiffs' FAC is devoted exclusively to detailing USADA's findings on Armstrong's (and his teammates') use of performance enhancing drugs—use he ultimately admitted in a January 2013 interview with Oprah  Winfrey.  *See* FAC ¶¶ 56-88.

## III.    LEGAL STANDARD FOR ANTI-SLAPP MOTIONS.

California law authorizes anti-SLAPP motions, which are special motions to strike a cause of action, "against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States [or] California Constitution in connection with a public issue."  Cal. Civ. Proc. Code  § 425.16(b)(1).   The statute provides for "the early

---

[2]    Plaintiffs also include a "post" from Defendant Random House's website that contains "promotional information."  The post purportedly categorizes the book as "Biography & Autobiography – Sports," and provides a synopsis of the book.  *Id.* ¶ 26.

[3]    Plaintiffs "brand" theory includes Armstrong's formation of and fundraising on behalf of the Livestrong Foundation.  FAC ¶ 37-38.  Plaintiffs allege Armstrong's books are "solicitations or advertisements to raise money for his foundation," because the flyleaf of the books includes the internet address for the Lance Armstrong Foundation website.  *Id.* ¶ 39.  No Plaintiff alleges donating anything to the Livestrong Foundation.

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *Club Members For An Honest Election v. Sierra Club*, 45 Cal. 4th 309, 315 (2008).  The anti-SLAPP statute applies equally in this Court.  *See Hilton v. Hallmark Cards*, 599 F.3d 894, 900 n.2 (9th Cir. 2010) ("we have long held that the anti-SLAPP statute applies to state law claims that federal courts hear pursuant to their diversity jurisdiction") (citing *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999)).

The anti-SLAPP statute "should 'be construed broadly,'" *Club Members,* 45 Cal. 4th at 315, but its statutory exceptions should be construed narrowly, *id.* at 316.  In short, "the point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights."  *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 193 (2005).

Anti-SLAPP motions entail a two-step analysis.  *Club Members*, 45 Cal. 4th at 315-16.  First, the defendant must make a threshold showing that the challenged cause of action is one arising from protected activity.  *Id.*  If so, the burden shifts to the plaintiff to demonstrate the complaint is both legally sufficient and is supported by a prima facie showing of facts sufficient to sustain a favorable judgment if the evidence submitted by the plaintiff is given credit.  *Id.*; *Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (2002).  Applying the two-step process to Plaintiffs' claims under the UCL, FAL, and CLRA, this motion should be granted.[4]

## IV.   STEP ONE:  ARMSTRONG HAS MET HIS BURDEN BECAUSE PLAINTIFFS' CLAIMS ARISE FROM ACTIVITY PROTECTED BY THE ANTI-SLAPP STATUTE.

Under the first step, the Court determines whether Plaintiffs' claims arise from one or more of the followings activities enumerated in section 425.16(e) of the Code of Civil Procedure:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other

---

[4]   Armstrong moves to strike only these three claims.  *See, e.g.*, *Shekhter v. Fin. Indem. Co.*, 89 Cal. App. 4th 141, 150 (2001) (anti-SLAPP motions may be directed at fewer than all claims asserted).

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

In deciding step one, the merits are immaterial.  *Cf. City of Costa Mesa v. D'Alessio Invs.*, 214 Cal. App. 4th 358, 371 (2013) (the merits of the claims "should play no part in the first step of the anti-SLAPP analysis").  Instead, step one is satisfied so long as the activity Plaintiffs complain about falls within one or more of the four categories.  In this case, the acts underlying Plaintiffs' claims constitute written and oral statements in a public forum on a matter of public interest, as well as conduct in furtherance of the right to free speech on a matter of public interest.  Therefore, Plaintiffs' lawsuit arises out of conduct covered in at least subdivisions 425.16(e)(3) and (e)(4).[5]

### A.     Section 426.16(e)(3) Is Satisfied Because The Statements Attributed To Armstrong Were Made In A Public Forum In Connection With An Issue Of Public Interest.

Plaintiffs' claims arise from Armstrong's public statements denying PED use during his cycling career made in front of or to the press, or in the pages of his books.  Plaintiffs allege these statements were false, and by extension rendered several other purported "statements" false, such as representations that the books were true and honest works of nonfiction biography about a Tour de France winner.[6]  Plaintiffs endeavor to establish that the falsity of these statements made

---

[5]     Plaintiffs also allude to Armstrong's denials in deposition testimony in certain legal proceedings (although they do not allege they heard or relied upon them), as well as investigations by governmental and quasi-governmental bodies.  Both would fit within section 425.16(e)(2) as well.

[6]     While Plaintiffs identify some statements specifically attributed to Armstrong—things he said to the press, for example—when it comes to the statements describing the books as nonfiction, or truthful, or a biography, Plaintiffs lump all the defendants together.  Common sense dictates that Armstrong did not say or write the statements *describing* his books.  *See* FAC ¶¶ 09, 115.  But those statements are still in furtherance of constitutionally protected activity.  So while Plaintiffs inability to identify who actually made these statements does not bear on step one in the anti-SLAPP analysis, it bears directly on Plaintiffs' ability to satisfy step two.  They will need to come forward with evidence establishing specifically who said what to whom.

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

the books valueless, and that they would not have been injured (by buying the books) but for Armstrong's statements.

As explained next, Armstrong's public statements in the media and in books on the issue of whether he used PEDs in professional cycling meet both the public forum test and the public interest test; step one of the anti-SLAPP analysis is therefore satisfied.

### 1.    Armstrong's statements about PEDs were made in a public forum.

The statutory phrase "public forum" is interpreted broadly to include not only parks and other places of public assembly, but settings and contexts beyond those protected by the First Amendment. *See Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 475-78 (2000) (holding that a homeowners' association newsletter is a "public forum" because it is a vehicle for discussing public issues and distributed to a large and interested community).  Courts have thus defined news outlets to be public fora. *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1165 (2004) (holding that "the Gay and Lesbian Times clearly qualifies as a 'public forum'"); *see also Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1038-39 (2008) (holding that a magazine is a public forum).  Social networking websites on the internet are also public fora, *Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1143-44 (2012), as are on-air talk radio conversations, *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 807 (2002).  In contrast, a private letter from a shareholder of a company to the president of an HMO is not. *Kurwa v. Harrington, Foxx, Dubrow & Canter, LLP*, 146 Cal. App. 4th 841, 846 (2007).  Nor is a defamatory statement made about a token collector in a newsletter circulated to other token collectors. *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132-33 (2003).[7]

Plaintiffs allege that in media interviews, press conferences, newspapers, inside the books and elsewhere, Armstrong *publicly* denied using PEDs.   In other words, Plaintiffs' own

---

[7]    *Weinberg* narrowly interpreted the anti-SLAPP statute and concluded that media outlets are not public fora. *Id.*  Its reasoning on this point has been rejected in *Nygard* and elsewhere. *See Nygard*, 159 Cal. 4th at 1037-39 ("a newspaper or magazine need not be an *open* forum to be a *public* forum—it is enough that it can be purchased and read by members of the public").  The *Nygard* analysis is the more persuasive and in keeping with the California Supreme Court's view that the anti-SLAPP statute be broadly construed.

Katten

Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

allegations establish that these statements were made in a public forum. The first element of section 425.16(e)(3) is thus easily satisfied.

### 2. Armstrong's statements were made in connection with an issue of public interest.

Armstrong's statements were also "in connection with an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(3). An issue of public interest "is *any issue in which the public is interested*." *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143 (2011) (quoting *Nygard*, 159 Cal. App. 4th at 1039). The issue need not be a "significant" one; "it is enough that is one in which the public takes an interest." *Id.*, *but cf. Weinberg*, 110 Cal. App. 4th at 1132-33 (applying a more restrictive standard to find private token collector's defamation claim against publisher of a token collecting newsletter was not of sufficient public interest). Even applying the restrictive standard from *Weinberg*, this Court found an issue of public interest in a case where the arrest of a Muslim teenager caused criticism of the Davis police department, generated media attention, and led to public protests. *Buzayan v. City of Davis Police Dept.*, No. 2:06-cv-01576, 2007 WL 2288334 at *4-5 (E.D. Cal. Aug. 8, 2007).

The international public controversy about PEDs in sports generally (including professional baseball, football, swimming and soccer), as well as Armstrong's and others' use in professional cycling, far surpasses the public interest in the *Buyazan* case. The FAC itself illustrates that interest, citing scores of books and articles written on the subject, an agency investigation, and Armstrong's interview with Oprah Winfrey. The many purchasers of Armstrong's own books highlight the public interest surrounding him as a person.

Moreover, this case involves a celebrity on an issue connected to the source of his notoriety; this alone establishes the requisite public interest. *See Hilton*, 599 F.3d at 906-08 (answering the question "whether the topic, the [public] issue, can be a celebrity like Paris Hilton, or whether, as Hilton argues, it must be the subject of some defined debate"). In *Hilton*, the Ninth Circuit found that Paris Hilton's claim against Hallmark for using her likeness and catchphrase ("that's hot") on a greeting card was a matter of public interest for anti-SLAPP purposes. *Id.* Similarly, a California court found a television interview with Marlon Brando's

Katten
Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

9

housekeeper, who was named in Brando's will, to be an issue of sufficient public interest. *Hall v. Time Warner, Inc.*, 153 Cal. App. 4th 1337, 1347 (2007) ("The public's fascination with Brando and widespread public interest in his personal life made Brando's decisions concerning the distribution of his assets a public issue or an issue of public interest").

Even if Armstrong's celebrity is not sufficient by itself to constitute an issue of public interest, it certainly is when combined with the public debate about PED use in sports generally, and particularly in relation to Armstrong and cycling. In short, any discussion of Armstrong's use of performance enhancing drugs in cycling generally, and the Tour de France specifically, is an issue of public interest. The second element of section 425.16(e)(4) is therefore also met.

**B.      Section 425.16(e)(4) Is Also Satisfied Because Armstrong's Speech Is In Connection With An Issue Of Public Interest.**

The same activity Plaintiffs' complain about automatically meets section 425.16(e)(4). That section dispenses with the public forum requirement, and focuses on the public interest element alone. In other words, this subsection applies to private communications about issues of public interest. *Hailstone v. Martinez*, 169 Cal. App. 4th 728, 736 (2008). Further, it protects not only pure speech, but conduct in furtherance of speech. *Tamkin*, 193 Cal. App. 4th at 144 (creating a television show is a free speech right); *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 583 (2003) (meeting of optometrists to discuss legal issues affecting their business was in furtherance of protected speech).

Accordingly, under section 425.16(e)(4), it does not matter whether the statements were public or private (though here of course they were public). All that matters is whether they involved an issue of public interest. As discussed above, Armstrong's statements regarding PEDs in cycling easily meet the test.

With Armstrong having met step one of the anti-SLAPP analysis, the second step is evaluating whether the FAC is both legally sufficient and supported by facts. It is not.

V.      **STEP TWO:  PLAINTIFFS CAN NEVER MEET THEIR BURDEN BECAUSE (1) CALIFORNIA'S CONSUMER-PROTECTION LAWS APPLY TO COMMERCIAL SPEECH ONLY; (2) NO PLAINTIFF SAW OR HEARD ANY OF THE CHALLENGED SPEECH BEFORE BUYING; AND (3) NO PLAINTIFFS BOUGHT THREE OF THE FIVE BOOKS.**

A.      **The UCL, FAL, And CLRA Claims Apply Only To Commercial Speech, And The Speech Attributed To Armstrong Is Noncommercial.**

California courts construe their consumer protection laws to apply to commercial speech *only*.  As one court plainly put it: "California's consumer protection laws, like the unfair competition law, govern only *commercial* speech.  Noncommercial speech is beyond their reach." *Rezec v. Sony Pictures Entm't, Inc.*, 116 Cal. App. 4th 135, 140 (2004) (citations omitted); *see also Keimer v. Buena Vista Books, Inc.*, 75 Cal. App. 4th 1220, 1231 (1999) ("The [UCL] does not seek to restrict noncommercial speech in any manner").  This restrictive interpretation avoids First Amendment overbreadth.  *See, e.g.*, *Keimer* at 1231 (observing that the UCL is not constitutionally overbroad because it "is tailored to protect the public from false *commercial* speech," which is less valuable than "fully protected *non*commercial speech") (emphases added) *see also O'Connor v. Super. Ct.*, 177 Cal. App. 3d 1013, 1019-20 (1986) (holding the UCL and FAL do not reach political speech; observing that "had the Legislature intended for sections 17200 et seq. and 17500 et seq. to encompass activity in the political, *rather than commercial*, arena, it would have made that intention clear") (emphasis added).  *O'Connor* also explains that the "broad sweep" of the UCL and FAL would probably render them "fatally defective" if applied to regulate fully protected speech, and that their lower statutory standards for liability (*i.e.*, "unfair" or "misleading"), are incompatible with First Amendment protections.  *Id.* at 1019.  This is why, for example, "[l]awsuits premised on section 17200 are subject to being stricken because they are barred by the First Amendment where the speech complained of is not commercial speech." *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1110 (C.D. Cal. 2004)).[8]

---

[8]     Confining California's consumer statutes to commercial speech is not only necessary to avoid colliding with the First Amendment, it is required by the express terms of each statutory scheme.  Each statute limits its own coverage to commercial activities.  *See* Cal. Civ. Code § 1770(a) (CLRA applies to a consumer transaction involving "the sale or lease of goods or services"); Cal. Bus. & Prof. Code § 17200 (the UCL proscribes "unfair competition," defined as an unfair, unlawful, or deceptive "business practice," or a violation of the FAL); Cal. Bus. &

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1    As shown next, the speech Plaintiffs have attributed to Armstrong is entirely

2    noncommercial, and thus, beyond the reach of the UCL, FAL, and CLRA.  These claims should

3    therefore be stricken.

4            **1.    The Ninth Circuit's commercial speech test.**

5    While California defines the scope of its own consumer protection statutes (limiting them

6    to commercial speech), federal law governs whether speech is commercial under the First

7    Amendment.  The Ninth Circuit has adopted a three-pronged analysis based on Supreme Court

8    precedent to determine whether speech is commercial.  *Dex Media West, Inc. v. City of Seattle*,

9    696 F.3d 952, 957 (9th Cir. 2012).  First, the court considers whether the publication fits within

10   the "core notion of commercial speech," *i.e.*, whether it does no more than propose a commercial

11   transaction.  *Id.* (quotations omitted); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)

12   (holding that commercial speech is, at its core, "speech proposing a commercial transaction")

13   (quotations omitted).

14   Second, if the speech does more than propose a transaction, but contains both commercial

15   and non-commercial elements, the Ninth Circuit applies the Supreme Court's *Bolger* test.  In

16   *Bolger*, the Supreme Court identified the following three factors that when combined provide

17   "strong support" for the conclusion that speech is commercial: (1) whether the speech is a

18   traditional "advertisement;" (2) whether the speech references a product; and (3) whether there

19   was economic motivation behind the speech.  *Bolger*, 463 U.S. at 66-67; *Dex Media*, 696 F.3d at

20   957.

21   Third, even if the speech meets the *Bolger* test, the Ninth Circuit then determines whether

22   the commercial aspects of the speech are "inextricably intertwined" with non-commercial aspects.

23   *Id.* at 958.  If so, all of the speech is deemed noncommercial.  *Id.*

24   Applying this test in *Dex Media*, the Ninth Circuit concluded that the Yellow Pages

25   directory was noncommercial speech.  The Yellow Pages met the first prong because it proposed

26   more than a commercial transaction by including, in addition to pure advertisements, "telephone

27

28   Prof. Code § 17500 (the FAL proscribes dissemination of statements intended to induce the
     public to enter an agreement for the disposition of property or performance of services).

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1   listings and community information" that did not speak to any particular transaction. 696 F.3d at

2   957. Thus, the court moved to the second prong and looked at the *Bolger* factors, holding that the

3   Yellow Pages do "not fulfill two of the three *Bolger* factors." *Id.* at 959. "Even the most cursory

4   examination of the [yellow pages directory] reveals that it is not 'concededly an advertisement'

5   and ... it does not refer to a specific product." *Id.* The only factor the Yellow Pages arguably met

6   was that "the publisher [may have] a commercial motive in publishing the directories," which is

7   "insufficient to characterize a publication as commercial." *Id.* at 960 (citing *Bolger*, 463 U.S. at

8   67 ("[A]n economic motivation . . . would clearly be insufficient by itself to turn the materials

9   [in question] into commercial speech.")). Having already concluded the publication was

10  noncommercial under the *Bolger* test, the court did not reach the third prong.

11      As discussed above, the FAC identifies the following three types of alleged false speech:

12  (1) statements Armstrong and others made regarding whether Armstrong used performance

13  enhancing drugs (FAC ¶ 45); (2) statements Armstrong wrote in IT'S NOT ABOUT THE BIKE and

14  EVERY SECOND COUNTS (FAC ¶¶ 41-44); and (3) statements all "Defendants" made, describing

15  IT'S NOT ABOUT THE BIKE and EVERY SECOND COUNTS as works of "truthful non-fiction

16  biography" by a "Tour de France Winner" (*e.g.*, FAC ¶ 122). Under the *Dex Media* analysis,

17  none of these categories is commercial speech. None proposes a commercial transaction, so none

18  meets even the first prong of the test. None survives the second prong either, because Plaintiffs

19  have plausibly alleged, at most, just one *Bolger* factor—an economic motivation.

20          **2.      Armstrong's public statements about using PEDs are not commercial
            speech because they do not propose a commercial transaction, are not
21          advertisements, and do not reference the products.**

22      Plaintiffs allege that Armstrong made false or misleading statements in newspapers, during

23  press conferences, during televised interviews, or in testimony, concerning his use of PEDs in

24  international competition, and the use of PEDs in sports generally. FAC ¶ 45. Applying the first

25  prong of the Ninth Circuit's commercial speech test, these statements not only "do more than

26  propose a commercial transaction," *Dex Media*, 696 F.3d at 959, *they do not propose any*

27  *transaction at all*. Accordingly, they fail the first prong of *Dex Media* and thus constitute

28  noncommercial speech beyond the reach of California's UCL, CLRA and FAL.

**Katten**
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

13

If the Court were to reach the second prong, it too is not satisfied. Like the Yellow Pages, Armstrong's alleged public statements are not advertisements, and nowhere reference the books at issue in this case. *See, e.g.*, FAC ¶ 45 (listing statements). These statements *at most* may satisfy one *Bolger* factor: that Armstrong had a commercial motive in speaking, but even that is a stretch because it suggests that whenever Armstrong denied PED use he did so for money. Either way, commercial motive by itself does not satisfy *Bolger*.

Even speech much closer to being commercial than Armstrong's is still deemed noncommercial if it concerns issues in the "arena of public discussion." *See Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 534 (1980) (holding that a utility company's bill containing factual statements on matters such as the use of nuclear power was fully protected under the First Amendment because it concerned the "arena of public discussion," even though the statements could influence consumer choices). As even Plaintiffs acknowledge, Armstrong's seven Tour de France wins, his successful Livestrong Foundation, and suspicions of drug use were the subjects of intense media coverage from 1996 through the present. FAC ¶¶ 58-60.

Thus, Armstrong's public statements about PEDs in the FAC are prototypical examples of noncommercial speech on a public issue beyond the reach of California's consumer laws.

### 3. Armstrong's statements on the pages *inside* the books are not commercial speech for the same reasons.

Plaintiffs challenge passages from inside the books. Isolated statements from literary works, however, have always been fully protected, noncommercial speech. *See generally Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-02 (1952) ("That books, newspapers and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment"); *see also Keimer*, 75 Cal. App. 4th at 1226-27 (statements *outside* the books are the only ones susceptible to being commercial speech); *Lacoff v. Buena Vista Publ'g, Inc.*, 705 N.Y.S.2d 183, 190 (N.Y. Sup. Ct. 2000) ("The Book here is noncommercial speech—it was clearly not designed to sell another product").[9]

---

[9] *Keimer* and *Lacoff* considered the same statement on the same jacket of the same book, but reached opposite conclusions about whether that statement was commercial speech. Despite disagreeing on that point, those courts agreed that the same statement made *inside* the pages of the book was unquestionably not commercial speech.

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31736581v2_383429-00001

The *Dex Media* analysis confirms this conclusion.  Statements inside the books do not propose any commercial transaction, which should end the analysis.  Should the Court consider prong two, however, the statements also fail the *Bolger* test because they are (1) not advertisements and (2) obviously not "about" the product (*i.e.*, the books).  To the contrary, "[they are] the product."  *Hilton*, 599 F.3d  at 905 n.7 (rejecting as false the premise that *the content* of a greeting card is commercial speech).  To the extent there is a profit motive for Armstrong to speak, that is wholly insufficient to transform *the content* of literary works into commercial speech.  *Id.*; *see also Kronemyer v. Internet Movie Database, Inc.*, 150 Cal. App. 4th 941, 948-49 (2007) ("If appellant's position that the prospect of some financial benefit from a publication places the material in the area of 'commercial speech,' it would include virtually all books, magazines, newspapers, and news broadcasts.  There is no authority for so sweeping a definition.").  The statements inside the book are not commercial speech, and therefore beyond the reach of California's consumer laws.

### 4. Categorizing the books as non-fiction biographies and describing the author as a Tour de France Winner is not commercial speech.

Plaintiffs next complain that the book was falsely described by "Defendants" as "non-fiction biographies" written by a Tour de France winner.  To begin, Plaintiffs allege only in the most conclusory manner that Armstrong (rather than the publishers) made these statements, *e.g.*, FAC ¶ 2, which not surprising given that an author is unlikely to categorize his own books.  But even if Plaintiffs could somehow tie these statements to Armstrong, they are noncommercial speech.

Categorizing books as nonfiction or biographies proposes no transaction.  Instead, it is "informational rather than directed at sales."  *Cf. Kronemyer*, 150 Cal. App. 4th at 948 (finding that a film's credits identifying those who made or participated in it were informational and not commercial speech).  The "nonfiction biography" label also fails prong two.  Under *Bolger*, categorizing a literary work as nonfiction or a biography is not in the form of a traditional advertisement, thus failing the first factor.  *Dex Media*, 696 F. 3d  at 961 (citing *SEC v. Wall St. Publ'g Inst.*, 851 F.2d 365, 372 (D.C. Cir. 1988)).  Arguably, these statements refer to a product

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

15

1  and are economically motivated (although it is hard to imagine how the labeling itself is

2  economically motivated), but barely meeting two *Bolger* factors should not be enough here.  The

3  informational purpose served by these descriptions overwhelms any commercial attributes.

4        At first blush, describing on the books' cover that they were written by a Tour de France

5  winner appears to be a closer question.  It does more than propose a commercial transaction, but

6  refers to a product and appears to have a commercial purpose (although not in the form of a

7  traditional advertisement).   Nonetheless, the Court should decline to find this statement is

8  commercial speech because the vast majority of the books is pure noncommercial expression.

9  Where a publication includes both commercial and noncommercial elements, courts evaluate the

10  publication as a whole.  *Dex Media*, 696 F. 3d  at 957 (considering publication as a whole to

11  determine if mixed-content speech meets *Bolger* test).  Here, the noncommercial aspects of the

12  books predominate over the arguably commercial element.   That is, the one-or-two-word

13  description of the author cannot trump the hundreds of pages of the books' absolutely protected

14  *content*.  Further, statements about the author of a biography are inextricably bound up with the

15  content of the books.  Under these circumstances, the totality of the speech is properly deemed

16  noncommercial.   *Cf. Riley v. Nat'l. Fed'n of the Blind*, 487 U.S. 795-96 (1988) (treating

17  commercial speech inextricably intertwined with noncommercial aspects as fully protected).  And

18  even if the statement amounted to commercial speech, it still would be protected by the First

19  Amendment—and therefore unreachable by California's consumer statutes—because it was true

20  at the time it was made.  *See Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 639 (1982); *see also*

21  *Charles v City of Los Angeles*, 697 F.3d 1146, 1155 (9th Cir. 2012).  Though Armstrong was

22  stripped of his titles in 2012, over nine years *after* the *second* book was published, that does not

23  make a statement that he won the Tour de France false; because it was unquestionably true *at the*

24  *time it was made.*  A statement, true when made, cannot support fraud-based liability.  *In re*

25  *GlenFed, Inc. Sec. Lit.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (requiring the pleader to explain "why

26  the disputed statement was untrue or misleading *when made*") (emphasis original).[10]  For these

27

28

---

[10]      In fact he did in fact win the races, but was but was disqualified as a Tour de France
champion years later.  FAC ¶ 71.

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1   reasons, the statements are noncommercial or otherwise fully protected speech to which the UCL,

2   FAL, and CLRA do not apply.

3        **5.    The "Armstrong Brand" allegations do not transform noncommercial**
         **speech into commercial speech; at best, they allege an economic**
4        **motivation.**

5        Finally, Plaintiffs allege a general "brand" theory.   Under this theory, everything

6   Armstrong said or did during his professional life was in an effort to build a "brand," and by

7   extension to sell books.  *See, e.g.*, FAC ¶ 45 ("[I]n order to deceive consumers and sell more

8   copies of his books . . . and in order to build, maintain and defend the highly lucrative Lance

9   Armstrong "brand," Armstrong repeatedly and vociferously made public statements in which he

10  denied engaging in doping and using performance enhancing drugs").

11       At best for Plaintiffs, the brand theory—if accepted—operates to generally overlay an

12  economic motivation for Armstrong's public speech.  But because economic motivation alone is

13  not enough—especially when evaluating speech on a matter of public concern—Plaintiffs' brand

14  allegations cannot transform Armstrong's public statements into commercial speech.  It also fails

15  the first *Dex Media* prong because—even with an economic motivation—denying the use of PEDs

16  by itself does not propose any commercial transaction.  And it fails the second prong, because to

17  deny using PEDs is not advertising, and it mentions no product, leaving two *Bolger* factors

18  unsatisfied.[11]

19       Because each category of Armstrong's speech Plaintiffs have alleged is noncommercial

20  speech under the First Amendment, none is actionable under any of California's consumer

21  protection laws, but is simply "beyond their reach."  *Rezec*, 116 Cal. App. 4th at 140; *see also*

22  *New.Net, Inc.*, 356 F. Supp. 2d at 1110.  The UCL, FAL, and CLRA claims thus fail as a matter of

23  law, and the Court should strike them.

24

25  _____

    [11]    Adopting Plaintiffs' brand theory as a cognizable basis for liability is loaded with negative
26  consequences.  It threatens free speech in a radical and unprecedented manner, effectively turning
    anything said by anyone with fame or notoriety into automatic commercial speech—less-
27  protected, more easily regulated speech—simply by alleging an economic motivation for
    speaking.  Again, mere economic motivation is not enough to turn speech "commercial."  *Dex*
28  *Media*, 696 F.3d at 957.

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

**B.      Plaintiffs Did Not See, Hear, Or Read Any Of The Alleged False Statements Before Buying The Books, So Their Claims Should Be Stricken.**

No one can be deceived by a statement he or she did not see, hear or read.  *See Johns v. Bayer Corp.*, No. 09-1935, 2010 U.S. Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010) (plaintiff may not pursue claims based on statements on which he did not rely); *Dvora v. Gen. Mills, Inc.*, No. 11-1074, 2011 WL 1897349, at *8 (C.D. Cal. May 16, 2011) (no cause of action over website statements that a plaintiff never read); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1112 (S.D. Cal. 2011) (same); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363-64 (2010) (no cause of action where plaintiff did not visit the defendant's website that contained the purported misrepresentations).

Of the three groupings of statements attributed to Armstrong, *no Plaintiff claims to ever have seen, read, or heard a single one*.  FAC ¶ 45.  While this is an issue of pleading under Rule 12(b)(6), it is also an issue of *proof* here.  Plaintiffs bear the burden to prove the elements of their claim, including that they actually saw, or read, or heard the statements that supposedly influenced their conduct.  And although Plaintiffs will need evidence to meet their burden, they do not need discovery to obtain it.  Rather, what Plaintiffs did or did not see is exclusively within their own personal knowledge.  *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) ("it is not unreasonable to expect [plaintiffs] to have personal knowledge of the relevant facts" about the allegedly false statements on which they purportedly relied).  Unless Plaintiffs can prove that which they were unable to plead, the UCL, FAL, and CLRA claims should be stricken.

**C.      Plaintiffs' Claims Based On The Three Books They Never Purchased Should Be Stricken.**

The Court should strike any claim based on the three books that no Plaintiff purchased: (1) THE LANCE ARMSTRONG PERFORMANCE PROGRAM; (2) LANCE ARMSTRONG: IMAGES OF A CHAMPION; and (3) COMEBACK 2.0: UP CLOSE AND PERSONAL.  *Compare* FAC ¶ 2 *with* FAC ¶¶ 8-12.  No valid claim could ever be based on books Plaintiffs never bought.  *See Johns v. Bayer Corp.*, No. 09-1935, 2010 U.S. Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010) (plaintiff "cannot expand the scope of his claims to include a product he did not purchase"); *see*

18

31736581v2_383429-00001

1  *also Zwart v. Hewlett-Packard Co.*, No. 10-3992, 2011 WL 767750, at *8-11 (N.D. Cal. Feb. 25,

2  2011) (dismissing claims based on products plaintiff never bought because there could be no

3  injury, reliance, or causation); *accord Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009)

4  (no Article III standing where plaintiffs failed to allege injury that was "concrete and

5  particularized *as to themselves*").  Because no Plaintiff can be injured by a book he or she never

6  bought, Plaintiffs' can never meet their burden under step two of the anti-SLAPP test.

7  **VI.    CONCLUSION.**

8      Armstrong has met his burden to show the anti-SLAPP statute applies because Plaintiffs'

9  claims arise from his protected activities.  The burden then shifts to Plaintiffs to show the

10  probable validity of their claims.  But Plaintiffs can never meet their burden because their UCL,

11  FAL, CLRA claims do not reach the noncommercial speech at issue in this case, because

12  Plaintiffs did not perceive any of the allegedly fraudulent statements before buying the books,

13  and because they did not buy three of the five books upon which they sue.  Respectfully, the

14  motion should be granted.

15

16                          Respectfully submitted,

17  Dated:    April 26, 2013        KATTEN MUCHIN ROSENMAN LLP
                                     Zia F. Modabber (CA 137388)
18                                   Gregory S. Korman (CA 216931)
                                     Andrew J. Demko (CA 247320)
19

20

21                          By:    /s/  Zia F. Modabber
                            Attorneys for Defendant LANCE ARMSTRONG
22

23

24

25

26

27

28