1  Zia F. Modabber (CA 137388)
   zia.modabber@kattenlaw.com
2  Gregory S. Korman (CA 216931)
   greg.korman@kattenlaw.com
3  Andrew J. Demko (CA 247320)
   andrew.demko@kattenlaw.com
4  KATTEN MUCHIN ROSENMAN LLP
5  2029 Century Park East
   Suite 2600
6  Los Angeles, CA 90067-3012
   Telephone:    310.788.4400
7  Facsimile:    310.788.4471

8
   Attorneys for Defendant LANCE ARMSTRONG
9

10              **UNITED STATES DISTRICT COURT**

11              **EASTERN DISTRICT OF CALIFORNIA**

12

13

| | |
|---|---|
| ROB STUTZMAN, JONATHAN WHEELER, GLORIA LAURIA, DAVID REIMERS and SCOTT ARMSTRONG, on behalf of themselves and all others similarly situated,, | ) Case No. 2-13-cv-00116 MCE-KJN )<br>) **DEFENDANT LANCE ARMSTRONG'S**<br>) **REPLY BRIEF IN SUPPORT OF HIS**<br>) **MOTION TO DISMISS** |
| Plaintiffs, | ) |
| v. | ) DATE:      August 8, 2013<br>) TIME:      2:00 P.M.<br>) PLACE:     Courtroom 7 |
| LANCE ARMSTRONG; PENGUIN GROUP (USA), INC.; G.P. PUTNAM'S SONS; THE BERKELEY PUBLISHING GROUP; RANDOM HOUSE, INC.; BROADWAY BOOKS; CROWN PUBLISHING GROUP; THOMAS WEISEL; WILLIAM J. STAPLETON; and DOES 1-50, inclusive,, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>)<br>) |

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

# TABLE OF CONTENTS

I.      Overview. ............................................................................................................... 1

II.     Armstrong's Statements Do Not Meet The Ninth Circuit's Test For
        Commercial Speech, So Plaintiffs Created Their Own Test. ................................ 1

        A.      The Court Should Ignore Plaintiffs' Test For Commercial Speech. ........................ 1

        B.      Under The Actual Test, Armstrong's Statements Are Not Commercial. ................ 2

III.    Plaintiffs Have Not Alleged Their Claims With The Requisite Particularity,
        Mainly Because They Have Failed To Identify One Specific Alleged
        Misrepresentation On Which Any Of The Plaintiffs Relied. .............................. 4

IV.     Plaintiffs Do Not Respond To Armstrong's Arguments That They Have Failed
        To Meet Rule 8's Plausibility Standard. ........................................................... 6

V.      Plaintiffs May Not Base Their Claims On Advertisements They Did Not
        Experience. ....................................................................................................... 7

VI.     Plaintiffs Lack Article III Standing For The Three Books They Did Not
        Purchase. .......................................................................................................... 8

VII.    Plaintiffs' Moral Outrage At Armstrong Personally Is Non-Compensable. ....................... 9

VIII.   Conclusion. .......................................................................................................... 10

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31748167v2_383429-00001

# TABLE OF AUTHORITIES

## Cases

*Aguilar v. Boulder Brands, Inc.*,
   No. 12-1862, 2013 U.S. Dist. LEXIS 81378 (N.D. Cal. June 10, 2013) ................................ 9

*Animal Legal Def. Fund v. Mendes*,
   160 Cal. App. 4th 136 (2008)................................................................................................. 10

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983) ............................................................................................................... 2, 4

*Cardenas v. NBTY, Inc.*,
   870 F. Supp. 2d 984 (E.D. Cal. 2012) ..................................................................................... 9

*Consol. Edison Co. v. Pub. Serv. Comm'n*,
   447 U.S. 530 (1980) .................................................................................................................. 3

*Dex Media West, Inc. v. City of Seattle*,
   696 F.3d 952 (9th Cir. 2012)............................................................................................. 2, 3, 4

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010)................................................................................................. 8

*Dvora v. Gen. Mills, Inc.*,
   No. 11-1074, 2011 WL 1897349 (C.D. Cal. May 16, 2011) ................................................... 8

*Eugene N. Gordon, Inc. v. La Z-Boy, Inc.*,
   No. 06-2353, 2007 U.S. Dist. LEXIS 67753 (E.D. Cal. Sept. 13, 2007)................................. 5

*Forcellati v. Hyland's, Inc.*,
   876 F. Supp. 2d. 1155 (C.D. Cal. 2012).................................................................................... 9

*Greenspan v. Random House, Inc.*,
   859 F. Supp. 2d 206 (D. Mass. 2012) ...................................................................................... 7

*Hinojos v. Kohl's Corp.*,
   No. 11-55793, 2013 U.S. App. LEXIS 10185 (9th Cir. May 21, 2013) ................................. 10

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011) .................................................................................... 8

*In re Hydroxycut Mtkg. & Sales Practices Litig.*,
   801 F. Supp. 2d 993 (S.D. Cal. 2011)....................................................................................... 8

*In re Online DVD Rental Antitrust Litig.*,
   No. 09-2029 PJH, 2011 WL 5883772 (N.D. Cal. Nov. 23, 2011)................................... 4, 6, 7

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002).............................................................................................................. 2

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2007)................................................................................................... 6

*Keimer v. Buena Vista Books, Inc.*,
   75 Cal. App. 4th 1220 (1999).................................................................................................... 2

31748167v2_383429-00001

*Kronemyer v. Internet Movie Database, Inc.*,
   150 Cal. App. 4th 941 (2007)..................................................................................... 3

*Kwikset Corp. v. Sup. Ct.*,
   51 Cal. 4th 310 (2011)............................................................................. 3, 4, 10

*Lee v. City of Los Angeles*,
   250 F. 3d 668 (9th Cir. 2001)..................................................................................... 5

*Lewis v. Casey*,
   518 U.S. 343 (1996).............................................................................................. 8, 9

*Nike, Inc. v. Kasky*,
   539 U.S. 654 (2002)................................................................................................. 2

*Pfau v. Mortenson*,
   858 F. Supp. 2d 1150 (D. Mont. 2012) .................................................................. 6

*Quest Comm. v. Herakles, LLC*,
   No. 07-393, 2008 U.S. Dist. LEXIS 72660 (E.D. Cal. Aug. 19, 2008) .................. 5

*Rice v. Penguin Putnam, Inc.*,
   289 A.D.2d 318 (N.Y. App. Div. 2001)................................................................ 10

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010).................................................................................. 6

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997).................................................................................. 7

*U.S. ex rel Hoggett v. Univ. of Phoenix*,
   No. 10-2478, 2012 U.S. Dist. LEXIS 93812 (E.D. Cal. July 6, 2012) ..................... 5

*Wilder v. Turner*,
   490 F.3d 810 (10th Cir. 2007)................................................................................. 2

*Winter v. G.P. Putnam's Sons*,
   398 F.2d 1033 (9th Cir. 1992) ............................................................................... 10

*Zwart v. Hewlett-Packard Co.*,
   No. 10-3992, 2011 WL 767750 (N.D. Cal. Feb. 25, 2011) .................................... 9

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................... 6

Fed. R. Civ. P. 9(b).............................................................................................. 4, 5, 6, 8

Fed. R. Civ. P. 12(b)(6)................................................................................................ 5

**Other Authorities**

*Webster's New International (Third) Dictionary* (1966 ed.) ....................................... 7

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

LANCE ARMSTRONG'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS
CASE NO. 2:13-CV-00116-MCE-KJN

31748167v2_383429-00001

## I.   Overview.

Plaintiffs' opposition substitutes hostility for reasoned legal analysis, and ignores the majority of Armstrong's arguments. As for the arguments they do address, Plaintiffs fail to plug the legal and logical holes that compel dismissal. As examples, Plaintiffs assert false advertising claims based on Armstrong's statements, but cannot identify *any statement by Armstrong about the books*. Plaintiffs contend they "relied" on Armstrong's statements to buy the books, but fail to identify even a single statement they saw or heard that caused their alleged reliance. Plaintiff argue it was false to label Armstrong's books as nonfiction and biography, but muster no response to the fact that, with the exception of denying PED use, the two books purchased are wholly truthful accounts covering 30-plus years of Armstrong's life. Also, while Plaintiffs argue that the words "nonfiction" and "biography," printed in tiny font, were advertising "labels," under the relevant authorities they are informational in nature and inextricable adjuncts to the books' content. As such, they are non-actionable noncommercial speech. Perhaps most importantly, none of what Armstrong said meets the proper *federal* legal definition of commercial speech. Armstrong was not proposing a commercial transaction or otherwise engaging in commercial speech every time he denied using PEDs. Plaintiffs' "brand" theory is just that.  There is no legal authority recognizing it, and it is not a substitute for meeting the *proper* federal standard. Finally, Plaintiffs seek refunds for books they presumably read and enjoyed at the time. Their injury is anger and disappointment suffered years later when they learned Armstrong had actually used PEDs. Under relevant authorities this is not legally compensable harm.  Plaintiffs' claims should be dismissed without leave to amend.

## II.   Armstrong's Statements Do Not Meet The Ninth Circuit's Test For Commercial Speech, So Plaintiffs Created Their Own Test.

### A.   The Court Should Ignore Plaintiffs' Test For Commercial Speech.

In their Opposition, Plaintiffs seemingly concede their allegations fall short of the Ninth Circuit's test for commercial speech, because they created their own. Plaintiffs argue that Armstrong's false public denials of PED use amounted to commercial speech "because it contained a proposal for a commercial transaction, it was intended to perpetuate and conceal

31748167v2_383429-00001

1  illegal conduct, and it generated profits." Dkt. 62 at 11. For this ersatz standard, Plaintiffs rely on

2  the *state* court decisions, *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950-51 (2002) and *Keimer v. Buena*

3  *Vista Books, Inc.*, 75 Cal. App. 4th 1220, 1230-32 (1999). This Court should not. Those cases are

4  non-binding state-court attempts to define commercial speech, and are due no weight on this issue

5  of federal law. *E.g.*, *Wilder v. Turner*, 490 F.3d 810, 814 (10th Cir. 2007) ("It is beyond cavil that

6  [federal courts] are not bound by a state court interpretation of federal law") (quotation omitted).

7  They are also distinguishable on their facts. *Keimer* involved statements having the *sole* purpose

8  of selling books, 75 Cal. App. 4th at 1230-31, whereas Armstrong's statements never mention the

9  books and concerned topics of public interest. In *Kasky*, Nike wrote letters to its direct customers

10  that were commercial because they referenced products and made factual representations about

11  them. 27 Cal. 4th at 963. Armstrong's speech, in contrast, referenced no products (*i.e.*, the books)

12  and made no representations about their attributes.[1] Plaintiffs' doctored commercial speech

13  standard markedly deviates from the proper test, and the Court should disregard it

14      **B.**    **Under The Actual Test, Armstrong's Statements Are Not Commercial.**

15      As detailed in the moving papers, the controlling test for commercial speech, drawn from

16  United States Supreme Court precedent, is set forth in *Dex Media West, Inc. v. City of Seattle*, 696

17  F.3d 952, 957 (9th Cir. 2012).[2] Plaintiffs characterize Armstrong's false public statements denying

---

[1]     *Kasky* is not only non-controlling, but the United States Supreme Court initially granted *certiorari* and at least Justices Breyer and O'Connor would have voted to reverse. *See Nike, Inc. v. Kasky,* 539 U.S. 654, 665 (2002) (Breyer, J. dissenting from dismissal of petition).

[2]     Under *Dex Media*, the Court first considers whether the publication fits within the "core notion of commercial speech," *i.e.*, whether it does no more than propose a commercial transaction. *Id.* (quotations omitted); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983). Second, if the speech does more than propose a transaction by containing both commercial and non-commercial elements, the Ninth Circuit applies the *Bolger* test. In *Bolger*, the Court identified three factors that when combined provide "strong support" for the conclusion that speech is commercial: (1) whether the speech is a traditional "advertisement;" (2) whether the speech references a product; and (3) whether there was economic motivation behind the speech. *Id.* at 66-67; *Dex Media*, 696 F.3d at 957. Third, even if the speech meets the *Bolger* test, the Ninth Circuit then determines whether the commercial aspects of the speech are "inextricably intertwined" with non-commercial aspects. *Id.* at 958. If so, all of the speech is deemed noncommercial. *Id.*

2

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

31748167v2_383429-00001

1    PED use as "commercial speech," but those statements do not meet the *Dex Media* test.[3] To begin,

2    Armstrong's statements never mention his books, much less propose a transaction for them. Next,

3    there is no traditional advertisement,[4] no product reference, and at best only an indirect economic

4    motivation. Also, as Armstrong explained in his motion, speech much closer to proposing a trans-

5    action is deemed noncommercial if it concerns issues, like here, in the "arena of public discus-

6    sion." Dkt. 46 at 10 (citing *Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 534 (1980)).

7    Even the excerpts of Armstrong's comments to the press, cherry-picked by Plaintiffs for this law-

8    suit, all are "in the arena of" the widely followed "public discussion" about Armstrong's own PED

9    use, and the prevalence of PEDs throughout cycling and sports in general. When viewed through

10   the lens of the proper legal standard, his speech is noncommercial as a matter of law. *Dex Media*,

11   696 F.3d at 957.

12       Plaintiffs make various other arguments, all of which ignore the *Dex Media* standard, and

13   all of which are wrong. Plaintiffs argue the words "fiction" and "biography"— references to gen-

14   res of literature—were used to "deceive consumers to induce purchases." Dkt. 62 at 13. Even as-

15   suming Armstrong published the books and directed printing those words somewhere in or on

16   them, which is not plausible, those words are informational literary classifications; they are not

17   marketing, advertising, or any other attempt to *sell* books. *See* Dkt. 46 at 11 (citing *Kronemyer v.*

18   *Internet Movie Database, Inc.*, 150 Cal. App. 4th 941, 948-49 (2007) (film's credits on a website

19   were "informational" and not commercial speech, even though publisher profited from the web-

20   site)).

21       Further relying on the words "nonfiction" and "biography," Plaintiffs call them labels and

22   argue that "labels matter," citing *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310 (2011). While "labels

23   matter" is perhaps a useful proposition in another context, it is wholly irrelevant to deciding the

24   question before the Court: whether the designations "biography" and "nonfiction" are commercial

25

26   ---

     [3]    Plaintiffs also allege the books were represented as "truthful and honest works of nonfic-

27   tion biography (or autobiography)," but they do not allege a single example of this.

     [4] For example, Plaintiffs rely on Charlie Rose interviews. These are one-hour television interviews

28   broadcast on PBS. They cannot credibly be characterized as "traditional advertisement."

Katten
Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

3

31748167v2_383429-00001

1  speech, or merely informational. Dkt. 62 at 14. Whether a label is commercial speech is an issue

2  *Kwikset* never addressed. *Dex Media* answers that question.[5]

3        Finally, Plaintiffs offer their brand theory. Plaintiffs posit that virtually every word Arm-

4  strong uttered since 1998, no matter its context or content, was commercial speech because it

5  helped build and defend the Armstrong "brand." Dkt. 62 at 12. There is no authority for such a

6  proposition, and at best the only element the "brand theory" touches in a proper commercial

7  speech analysis is an indirect economic motivation, which the Ninth Circuit has held is insufficient

8  by itself to turn non-commercial speech into commercial speech. The brand theory fails the other

9  two prongs of the *Bolger* test because denying using PEDs is not traditional advertising and it

10  mentions no product.

11        To summarize, commercial speech is identified by applying the *Dex Media* test, and under

12  *Dex Media*, Armstrong's public statements—in or out of the books—are noncommercial.

13  **III.    Plaintiffs Have Not Alleged Their Claims With The Requisite Particularity, Mainly**
14  **Because They Have Failed To Identify One Specific Alleged Misrepresentation On Which Any Of The Plaintiffs Relied.**

15        The core of Rule 9(b) requires Plaintiffs to plead their fraud-based claims with particulari-

16  ty: the "who, what, where, when, why and how." Armstrong's moving papers show that Plaintiffs

17  did not meet this standard, and their own allegations confirm it. They allege only the vaguest gen-

18  eralities. *See, e.g.*, FAC ¶ 8 (Stutzman "learned about the book" but does not specify how and ad-

19  mits he read the second book because he so enjoyed the first one); ¶ 9 (Wheeler claims to have

20  learned about the book "through the media" but does not explain how; he bought the second book

21  because he "was so impressed" with the first one); ¶ 10 (Lauria bought the book because she was

22  "inspired" by Armstrong's "battle against cancer"); ¶ 11 (Reimers saw "advertisements" concern-

23  ing Armstrong's comeback to win after testicular cancer but does not allege what the advertise-

24  ───────────────

25  [5]    Plaintiffs should be found to have conceded that categorizing the books as "nonfiction"
and "biography" is not false or misleading as a matter of law as they did not even respond to this

26  argument in their Opposition. Dkt. 46 at 18 (explaining how calling the books "fiction" would be
far more misleading than calling them nonfiction); *see In re Online DVD Rental Antitrust Litig.*,

27  No. 09-2029, 2011 WL 5883772, at *12 (N.D. Cal. Nov. 23, 2011) (absent unusual circumstances,
failure to respond to argument on the merits is "viewed as grounds for waiver or concession of the

28  argument").

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

**Katten**
Katten Muchin Rosenman LLP

4

1   ments said, when he heard them, in what medium he heard them, etc.); ¶ 12 (S. Armstrong bought

2   the book because of non-specific claims that Armstrong raced drug-free). And as for alleging

3   "when" with particularity, Plaintiffs point to a *twelve-year* long window. *E.g.*, FAC ¶¶ 17-19 (not-

4   ing a period of 1997-2012), ¶¶ 24, 25 ("Since the date(s) of publication, throughout the Class Peri-

5   od, and continuing to the present date. . . .").[6] By failing to offer a single specific example of a

6   misrepresentation on which they relied before buying even one of the books, the FAC fails to al-

7   lege fraud with the requisite particularity.

8         Plaintiffs counter that Armstrong's "conduct in advertising and in his TV talk show ap-

9   pearances, in the many ways of promoting his books, was patently false and, therefore, actionable

10  under these California statutes." Dkt. 62 at 16. This conclusory assertion misses the point, which is

11  whether the allegations were pleaded with the particularity Rule 9(b) demands, and they were not.[7]

12        Plaintiffs also imply that a different standard applies, one that does not require particulari-

13  ty. Plaintiffs quote this Court's decision in *Quest Comm. v. Herakles, LLC*, No. 07-393, 2008 U.S.

14  Dist. LEXIS 72660 (E.D. Cal. Aug. 19, 2008), but cite only half of the legal test, omitting the por-

15  tion recognizing that "[t]he complaint must specify such facts as the times, dates, places, benefits

16  received, and other details of the alleged fraudulent activity." *Id.* at *9. The other cases Plaintiffs

17  cite all had underlying complaints that "detail[ed] how the fraud was carried out." *U.S. ex rel*

18  *Hoggett v. Univ. of Phoenix*, No. 10-2478, 2012 U.S. Dist. LEXIS 93812, at *15 (E.D. Cal. July 6,

19  2012); *see also Eugene N. Gordon, Inc. v. La Z-Boy, Inc.*, No. 06-2353, 2007 U.S. Dist. LEXIS

20  67753, at *11 (E.D. Cal. Sept. 13, 2007) ("The FAC details the time, place, and content of numer-

21

---

22  [6]      Cutting-and-pasting three pages of their FAC into their Opposition does not cure these de-
23  fects. Dkt. 62 at 6-9. Plaintiffs are just doubling down on the same vague allegations. The new in-
     formation added in their Opposition is just as non-specific: "book tours, press releases, print ad-
24  vertisements, media kits . . . and other promotional means." Dkt. 62 at 16.

25  [7]      Plaintiffs attempt to amend their FAC without seeking leave to do so by citing three inter-
     views Armstrong had with Charlie Rose on his PBS show. *See* Dkt. 62 at 15-16; *Lee v. City of Los*
26  *Angeles*, 250 F. 3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allega-
     tions is tested by a motion under Rule 12(b)(6), review is limited to the complaint.") While Plain-
27  tiffs do seek judicial notice of three documents, they do not seek judicial notice of the Charlie
     Rose interviews, nor would it matter because Plaintiffs have not alleged that they even saw the
28  Charlie Rose interviews prior to purchasing Armstrong books.

31748167v2_383429-00001

**Katten**
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1   ous statements."). Most important, the Ninth Circuit requires the particularity that Plaintiffs seem

2   to assert is unnecessary. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126-27 (9th Cir. 2007).

3         Plaintiffs utterly fail to meet Rule 9(b); therefore, the Court should grant Armstrong's Mo-

4   tion without leave to amend. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010)

5   ("[I]t is not unreasonable to expect [plaintiffs] to have personal knowledge of the relevant facts"

6   about the allegedly false statements upon which they claim to have relied.).

7   **IV.   Plaintiffs Do Not Respond To Armstrong's Arguments That They Have Failed To
        Meet Rule 8's Plausibility Standard.**

8

9         Though the heightened standard of Rule 9(b) applies to all Plaintiffs' claims, large swaths

10  of the FAC do not even meet Rule 8 plausibility. Plaintiffs ignore these arguments, and by doing

11  so concede them. *See In re Online DVD Rental Antitrust Litig.*, No. 09-2029, 2011 WL 5883772,

12  at *12 (N.D. Cal. Nov. 23, 2011) (absent unusual circumstances, failure to respond to argument on

13  the merits is "viewed as grounds for waiver or concession of the argument").

14        For instance, Armstrong argued his public statements about PEDs could not be predicates

15  for fraud-based claims because the statements are not linked to a specific transaction. *See* Dkt. 46

16  at 16 (citing cases). Indeed, every statement Plaintiffs allege Armstrong made outside the content

17  of the books had nothing to do with his books, but instead concerned responses to accusations that

18  he used PEDs. *See, e.g.*, FAC ¶ 45. Accordingly, these cannot be the basis of their fraud-based

19  claims. Plaintiffs failed to respond.

20        Similarly, Armstrong argued that Plaintiffs could not use his statements from inside the

21  books because no plaintiff alleged to have read portions of the books prior to buying them and,

22  therefore, could not as a matter of law have relied on them. *See* Dkt. at 17 (citing *Pfau v. Morten-*

23  *son*, 858 F. Supp. 2d 1150, 1158 (D. Mont. 2012) ("At a minimum, Plaintiffs must show that they

24  relied on some particular statement by the Defendants made outside the text of the Books.")).

25  Plaintiffs failed to respond.

26        Likewise, as discussed briefly above, Armstrong argued that the categorization of the

27  books as "nonfiction" and "biography" fails as a matter of law because (1) by definition, the books

28

**Katten**
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

6

31748167v2_383429-00001

1  *are* nonfiction and *are* biographies;[8] and (2) the statements are not "specific and measurable"

2  statements on which fraud or fraud-based claims may be premised. Dkt. 46 at 18 (quoting *South-*

3  *land Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)). The two books discuss

4  Armstrong's life, battle with cancer, and the Tour. Out of over 600 pages in two books, roughly

5  four pages discuss PED use; but for one false statement of fact, the books are an otherwise unchal-

6  lenged and truthful narrative account of Armstrong's life. A single false fact is surely not enough

7  to transform nonfiction into fiction, or biography into novel. Further, these terms are matters of

8  opinion that are not specific and measurable, *i.e.*, one cannot *objectively* decide how many false

9  facts it takes to convert nonfiction into fiction. Dkt. 46 at 19. Again, Plaintiffs failed to respond.

10  Finally, Armstrong noted the illogic of Plaintiffs' contention that calling Armstrong a

11  "Tour de France winner" on the book covers was fraudulent because, when the statement was

12  made, he *was* a Tour de France winner. *See* Dkt. 46 at 19. Until late 2012, Armstrong undisputed-

13  ly held those titles. Not only do Plaintiffs fail to respond to this, their opposition no longer even

14  mentions this representation as one on which their claims are based.

15  Each of these arguments went unanswered, and the Court should deem them conceded by

16  Plaintiffs. *In re Online DVD Rental*, 2011 WL 5883772, at *12.

17  **V.      Plaintiffs May Not Base Their Claims On Advertisements They Did Not Experience.**

18  Armstrong moved to dismiss because Plaintiffs may only bring individual claims for

19  statements they heard or saw; those are the only statements on which they could have "relied" in

20  purchasing the books. Dkt. 46 at 14. Plaintiffs completely miscomprehend this argument in their

21  opposition, asserting that Armstrong attacks "Plaintiffs' ability to represent a Class of consumers."

22  Dkt. 62 at 18. Armstrong's argument has nothing to do with class representation; rather, it con-

23  cerns Plaintiffs' inability to base their *own* claims on statements Armstrong made to the press, in

24  interviews, or in the books themselves, which no Plaintiff alleged to have heard or read prior to

25

26  [8]      Nonfiction is defined as "literary works other than novels or stories." *Webster's New In-*
27  *ternational (Third) Dictionary* (1966 ed.). A biography is defined as "a written history of a per-
son's life." *Id.*; *see also Greenspan v. Random House, Inc.*, 859 F. Supp. 2d 206, 220 (D. Mass.
28  2012) ("The term nonfiction only means that the literature is based on true stories or events, not
that every statement is in fact demonstrably true.").

7

31748167v2_383429-00001

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

1    making their purchases. *See, e.g.,* *Dvora v. Gen. Mills, Inc.*, No. 11-1074, 2011 WL 1897349, at

2    *8 (C.D. Cal. May 16, 2011) (no cause of action over website statements that a plaintiff never

3    read); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1112 (S.D. Cal. 2011) (same); *Durell v. Sharp*

4    *Healthcare*, 183 Cal. App. 4th 1350, 1363-64 (2010) (no cause of action where plaintiff did not

5    visit the defendant's website that contained the purported misrepresentations). Plaintiffs had to

6    allege "which of the [statements] each Plaintiff saw or read." *In re Hydroxycut Mtkg. & Sales*

7    *Practices Litig.*, 801 F. Supp. 2d 993, 1006 (S.D. Cal. 2011). Because they have not identified an-

8    ything they saw or heard, let alone with the particularity required by Rule 9(b), dismissal is re-

9    quired.

10   **VI.    Plaintiffs Lack Article III Standing For The Three Books They Did Not Purchase.**

11         Of the five Armstrong books identified in the FAC, Plaintiffs allege buying only two; no

12   Plaintiff bought the other three. They do not have Article III standing to sue over the three books

13   they did not buy. Plaintiffs once again misunderstand Armstrong's argument, mistaking it for an

14   issue of class certification. *See* Dkt. 62 at 18. To the contrary, Armstrong's argument is based on

15   fundamental principles of Article III standing. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996)

16   ("That a suit may be a class action adds nothing to the question of standing, for even named plain-

17   tiffs who represent a class must allege and show that they personally have been injured, not that

18   injury has been suffered by other, unidentified members of the class to which they belong and

19   which they purport to represent.") (quotations omitted).

20         In *Lewis*, the Supreme Court considered whether the named plaintiffs had standing to seek

21   remedies for wrongful acts committed against the prison population at large (the class), but not

22   suffered by the named plaintiffs. *Id.* The Court held a plaintiff—even one purporting to represent a

23   class—has standing *only* to remedy wrongs he or she *personally* experienced. *Id.* at 358. As in

24   *Lewis*, Plaintiffs purport to represent a class of individuals to remedy injuries these Plaintiffs did

25   not suffer (*i.e.*, being fraudulently induced to buy books they never bought). Even if inadequacies

26   in selling these other books exist, they have not harmed these Plaintiffs, and hence are not proper

27   objects of this lawsuit.

28

31748167v2_383429-00001

1    Plaintiffs cite some of the divided district court cases holding that a named plaintiff may

2    have standing to sue for products she did not purchase. Dkt. 62 at 18-19. To the extent these cases

3    contradict controlling Supreme Court precedent in *Lewis*, they are wrongly decided. Moreover,

4    these cases only apply when the products that the named plaintiffs bought are *nearly identical in*

5    *composition and in the advertising* to the ones they did not. *See Aguilar v. Boulder Brands, Inc.*,

6    No. 12-1862, 2013 U.S. Dist. LEXIS 81378, at *7 (N.D. Cal. June 10, 2013) ("Defendants' prod-

7    ucts advertise the same health benefits arising from the same additional ingredients. . . ."); *Car-*

8    *denas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012) (same); *Forcellati v. Hyland's,*

9    *Inc.*, 876 F. Supp. 2d. 1155, 1162 (C.D. Cal. 2012) (same).

10    Here, on the face of the FAC, the three books Plaintiffs did not purchase are all fundamen-

11    tally different, and Plaintiffs *allege no advertising* related to them, "nearly identical" or otherwise.

12    The Lance Armstrong Performance Program was published in September 2000 and "sets

13    forth a training program" for competitive cycling. FAC ¶ 30. Lance Armstrong: Images of a

14    Champion "chronicled"— through pictures—his seventh Tour de France victory. *Id.* ¶ 32. Come-

15    back 2.0 is about Armstrong's return to the Tour de France in 2009 and "features several 'candid'

16    photos of Armstrong." *Id.* ¶ 32. Two of these books are picture books and one is a cycling training

17    manual; they are materially different in kind from the biographies Plaintiffs allege to have pur-

18    chased. Also, as far as can be determined in the FAC, they share none of the alleged advertise-

19    ments on which the FAC is based. Under the Supreme Court's instruction in *Lewis,* and even

20    based on the reasoning of the cases Plaintiffs cite, the Court should follow the myriad cases hold-

21    ing that plaintiffs lack standing to seek remedies for products they did not purchase. *See, e.g.,*

22    *Zwart v. Hewlett-Packard Co.*, No. 10-3992, 2011 WL 767750, at *8-11 (N.D. Cal. Feb. 25, 2011)

23    (dismissing claims based on products plaintiff never bought because there could be no injury, reli-

24    ance or causation). Plaintiffs simply lack standing to sue for the three books they did not purchase.

25    Those claims should be dismissed.

26    **VII.    Plaintiffs' Moral Outrage At Armstrong Personally Is Non-Compensable.**

27    Plaintiffs allege to be "bitterly angry" that Armstrong took PEDs and lied to the press

28    about it. *See, e.g.,* FAC ¶ 10. Indeed they are not alone, but anger at Armstrong does not meet the

LANCE ARMSTRONG'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS
CASE NO. 2:13-CV-00116-MCE-KJN

31748167v2_383429-00001

*Katten*
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

1   *legal* injury requirements to maintain their claims. Unlike in the cases Plaintiffs cite, such as

2   *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310 (2011) and *Hinojos v. Kohl's Corp.*, No. 11-55793,

3   2013 U.S. App. LEXIS 10185 (9th Cir. May 21, 2013), Plaintiffs here have not linked Arm-

4   strong's denials of PED use to any *advertisement* made about the books. And as detailed above,

5   their effort to bridge the gap by complaining that the books are not "biographies" or "nonfiction"

6   fails. What is left is a "moral injury," suffered when their faith that Armstrong did not use PEDs

7   during his races was taken from them. *Animal Legal Def. Fund v. Mendes*, 160 Cal. App. 4th 136,

8   147 (2008). Armstrong let them down, but their disappointment does not entitle them to compen-

9   sation because these types of injuries are non-compensable. *Id.*; *Rice v. Penguin Putnam, Inc.*, 289

10  A.D.2d 318, 318-19 (N.Y. App. Div. 2001); *Winter v. G.P. Putnam's Sons*, 398 F.2d 1033, 1036

11  (9th Cir. 1992).

12  **VIII.   Conclusion**

13         For all the foregoing reasons, Armstrong respectfully requests the Court dismiss the FAC

14  without leave to amend.

15                                        Respectfully submitted,

16  Dated:   July 12, 2013               KATTEN MUCHIN ROSENMAN LLP
                                         Zia F. Modabber (CA 137388)
17                                       Gregory S. Korman (CA 216931)
                                         Andrew J. Demko (CA 247320)
18

19                                       By:    /s/ Zia F. Modabber
20                                       Attorneys for Defendant LANCE ARMSTRONG

21

22

23

24

25

26

27

28

10

31748167v2_383429-00001