Zia F. Modabber (CA 137388)
zia.modabber@kattenlaw.com
Gregory S. Korman (CA 216931)
greg.korman@kattenlaw.com
Andrew J. Demko (CA 247320)
andrew.demko@kattenlaw.com
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East
Suite 2600
Los Angeles, CA 90067-3012
Telephone:   310.788.4400
Facsimile:   310.788.4471

Attorneys for Defendant LANCE ARMSTRONG

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROB STUTZMAN, JONATHAN WHEELER, GLORIA LAURIA, DAVID REIMERS and SCOTT ARMSTRONG, on behalf of themselves and all others similarly situated,,<br><br>Plaintiffs,<br><br>v.<br><br>LANCE ARMSTRONG; PENGUIN GROUP (USA), INC.; G.P. PUTNAM'S SONS; THE BERKELEY PUBLISHING GROUP; RANDOM HOUSE, INC.; BROADWAY BOOKS; CROWN PUBLISHING GROUP; THOMAS WEISEL; WILLIAM J. STAPLETON; and DOES 1-50, inclusive,,<br><br>Defendants. | Case No. 2-13-cv-00116 MCE-KJN<br><br>**DEFENDANT LANCE ARMSTRONG'S REPLY BRIEF IN SUPPORT OF HIS SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)**<br><br>DATE:   August 8, 2013<br>TIME:   2:00 p.m.<br>PLACE:   Courtroom 7 |

# TABLE OF CONTENTS

I. Introduction ........................................................................................................... 1

II. Step One: The Anti-SLAPP Statute Applies. ....................................................... 2

    A. The Criminal Exception Does Not Apply Because Speech Is Not A Crime. ........................................................................................................ 2

    B. The Statutory Exceptions Do Not Apply And Plaintiffs Waived The Argument. ................................................................................................. 3

    C. Plaintiffs' Claims Arise From Speech. ..................................................... 4

    D. Armstrong's Speech Meets The "Public Forum" Test. ............................ 4

    E. Armstrong's Speech Meets The "Public Interest" Test. .......................... 5

III. Step Two: Plaintiffs Did Not Meet Their Burden To Show Probable Validity. .................. 6

    A. Every Plaintiff Was Required To *Prove* Reliance On A False Statement By Armstrong; None Did, So They Fail Step Two. ................................. 6

    B. Armstrong's Speech Was Non-Commercial As A Matter Of Law, So Their Consumer Protection Claims Fail. .................................................. 7

    C. Plaintiff Did Not Prove Standing For Books They Did Not Purchase. ............. 9

IV. Plaintiffs Do Not Need Discovery And They Are Not Entitled To It. ................. 9

V. CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

## Cases

*All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.*,
    183 Cal. App. 4th 1186 (2010) .................................................................. 6

*Barrett v. Rosenthal*,
    40 Cal. 4th 33 (2006) ................................................................................ 4

*Chavez v. Mendoza*,
    94 Cal. App. 4th 1083 (2001) .................................................................... 6

*Cher v. Forum Int'l, Ltd.*,
    692 F.2d 634 (9th Cir. 1982) ..................................................................... 9

*City of Cotati v. Cashman*,
    29 Cal. 4th 69 (2002) ............................................................................ 2, 4

*Club Members for an Honest Election v. Sierra Club*,
    45 Cal. 4th 309 (2008) .............................................................................. 3

*Damon v. Ocean Hills Journalism Club*,
    85 Cal.App.4th 468 (2000) ........................................................................ 5

*Dex Media West, Inc. v. City of Seattle*,
    696 F.3d 952 (9th Cir. 2012) .................................................................. 7, 8

*Flatley v. Mauro*,
    39 Cal. 4th 299 (2006) .................................................................... 2, 3, 10

*Gerbosi v. Gaims, Weil, West & Epstein, LLP*,
    193 Cal. App. 4th 435 (2011) .................................................................... 2

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ..................................................................... 5

*Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*,
    129 Cal. App. 4th 1228 (2005) .................................................................. 6

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) .............................................................................. 8

*Keimer v. Buena Vista Books, Inc.*,
    75 Cal. App. 4th 1220 (1999) ................................................................ 8, 9

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) .............................................................................. 6

*Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*,
    37 Cal. App. 4th 855 (1995) ...................................................................... 5

*Lewis v. Casey*,
    518 U.S. 343 (1996) .................................................................................. 9

*Moreau v. Daily Indep.*,
    No. 1:12-CV-01862, 2013 U.S. Dist. LEXIS 3059 (E.D. Cal. Jan. 8,
    2013) .......................................................................................................... 4

*Nike, Inc. v. Kasky*,
  539 U.S. 654 (2002) .................................................................................................. 8

*People v. Custom Craft Carpets, Inc.*,
  159 Cal. App. 3d 676 (1984) .................................................................................... 8

*Rezec v. Sony Pictures Entm't, Inc.*,
  116 Cal. App. 4th 135 (2004) ................................................................................... 7

*Sanford v. MemberWorks, Inc.*,
  625 F.3d 550 (9th Cir. 2010) .................................................................................... 7

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  697 F.3d 777 (9th Cir. 2012) .................................................................................... 6

*Smith v. Payne*,
  No. 12-1732, 2012 U.S. Dist. LEXIS 182345 (N.D. Cal. Dec. 26, 2012) ................ 10

*Taus v. Loftus*,
  40 Cal. 4th 683 (2007) .............................................................................................. 6

*United States v. Alvarez*,
  132 S. Ct. 2357 (2012) .............................................................................................. 8

*Wilder v. Turner*,
  490 F.3d 810 (10th Cir. 2007) .................................................................................. 8

*Zwart v. Hewlett-Packard Co.*,
  No. 10-3992, 2011 WL 767750 (N.D. Cal. Feb. 25, 2011) ....................................... 9

**Statutes**

Cal. Civ. Proc. Code § 425.17 .............................................................................................. 4

Cal. Code of Civ. Proc. § 425.16 ..................................................................................... 1, 2

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

## I. Introduction

This motion gave Plaintiffs the opportunity—and the obligation—to prove their claims had merit, but they could not do it. Instead, they rest on incendiary rhetoric and a mountain of overwrought and immaterial pleadings, documents, and DVDs. They assail Armstrong as a smuggler, drug dealer, and criminal rather than submit a single competent declaration proving any element of their claims. Armstrong respectfully asks this Court to ignore the din. To rule on this motion, Armstrong directs the Court to the two pertinent issues:

*First*, Plaintiffs' claims arise from activity falling within California Code of Civil Procedure Sections 425.16(e)(3)-(4). Armstrong's statements are statements by a public figure, in public media interviews, given in relation to heavily publicized rides in the Tour de France, on an issue of public concern. The Tour de France has over *two billion* viewers in over 160 countries,[1] and discussion of performance enhancing drug (PED) use has followed the sport for most of its 100-year history.[2] Plaintiffs' vitriol aside, the conduct Plaintiffs complain about— Armstrong's repeated false denials of PED use—was undertaken in the course of his writing and alleged promotion of two autobiographies that tell the story of his life. Making these false statements, whether inside or outside the books, is not a crime. And no matter how hard Plaintiffs try to recast their claims, Armstrong is being sued here for his speech. The anti-SLAPP statute applies, shifting the burden to Plaintiffs to show the probable validity of their claims.

*Second*, Plaintiffs simply do not establish the probable validity of their claims. Each of Plaintiffs' claims is fraud-based, so each requires proof that Plaintiffs saw and relied upon an alleged false statement of fact. No Plaintiff submitted *evidence* making that showing, or even that they purchased a single book. And despite their protests, no discovery can help them obtain evidence of *what they saw or heard*. Further, the claims at issue survive only if based on commercial speech, and none of Armstrong's statements qualify as a matter of law. Because

---

[1]   http://www.unc.edu/depts/europe/francophone/Tour_de_france/tdf_eng/introduction.htm
[2]   *See, e.g.*, "Dopers On Wheels: The Tour's Sorry History," *available at* http://nbcsports.msnbc.com/id/19462071/ns/sports-tour_de_france// (observing that "[o]ver the past 50 years, a majority of Tour champions as well as second- and third-place finishers have been confirmed or accused dopers at some point in their careers").

Plaintiffs did not meet their burden, the Court should strike Plaintiffs' consumer protection statute-based claims without leave to amend.

## II. Step One: The Anti-SLAPP Statute Applies.

Armstrong satisfied step one of the anti-SLAPP analysis by showing in his moving papers that "the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)." *See City of Cotati v. Cashman*, 29 Cal. 4th 69, 75-76, 78 (2002) (refusing to add actual speech-chilling requirement into the statute) (quotation omitted). That is, Plaintiffs' claims arise from Armstrong's speech: false and misleading statements that allegedly caused harm. Armstrong's speech occurred in a public forum: the media. And Armstrong's speech was about matters of public interest: himself as a public figure, the Tour de France, and PED use. That is all Armstrong needed to show under step one, and he did so. Cal. Civ. Proc. Code § 425.16(e)(3)-(4). Plaintiffs raise several arguments to the contrary, but none has merit.

### A. The Criminal Exception Does Not Apply Because Speech Is Not A Crime.

For their main argument, Plaintiffs invoke the narrow criminal exception to a step-one analysis, but do so in vain. Under the exception, the anti-SLAPP statute does not apply if the protected conduct at issue *is itself criminal* as a matter of law, and that illegality is conceded by the defendant or *conclusively* shown by the evidence. *Flatley v. Mauro*, 39 Cal. 4th 299, 317 (2006); *Gerbosi v. Gaims, Weil, West & Epstein, LLP*, 193 Cal. App. 4th 435, 446 (2011) ("We understand *Flatley* to stand for this proposition: when a defendant's assertedly protected activity *may or may not be* criminal activity, the defendant may invoke the anti-SLAPP statute unless the activity is criminal as a matter of law.").

This means that *the assertedly protected activity*—here, Armstrong's books and speech—must have been criminal as a matter of law. *See, e.g., Flatley*, 39 Cal. 4th at 317 (defendant was sued for sending a pre-litigation demand letter to plaintiff, and *that very letter* on its face constituted criminal extortion as a matter of law); *Paul for Council v. Hanyecz*, 85 Cal. App. 4th 1356, 1365-66 (2001) (defendant was sued for making illegal campaign contributions to plaintiff's opponents, and defendants conceded *those very campaign contributions* were made via illegally laundered money); *Gerbosi*, 193 Cal. App. 4th at 446 (defendant was sued for wiretapping, *and*

2

*that wiretapping* was illegal as a matter of law). Armstrong committed no crime in the writing of his books and related speech. Thus the criminal exception does not apply.

To shoehorn alleged criminal activity into the analysis, Plaintiffs focus on USADA's *ultra vires* legal conclusions that Armstrong smuggled or trafficked drugs.[3] But Plaintiffs' claims do not arise from drug smuggling, trafficking, or any other crime. They arise from Armstrong's books and his many public statements identified as supposedly inducing Plaintiffs' purchases. Nowhere in these statements does Armstrong even mention drug trafficking or smuggling, let alone engage in it. Armstrong meets step-one because *he is being sued for engaging in protected speech about his life*, not alleged drug crimes. Thus, *Flatley, Paul,* and the other cited authorities do not apply.

**B.     The Statutory Exceptions Do Not Apply And Plaintiffs Waived The Argument.**

To begin, Plaintiffs disregard the Court's page limitations by incorporating their *entire* opposition to the publishers' anti-SLAPP motion into this opposition. *See* Dkt. 64 at 1 n.1. They also specifically "incorporate" five additional pages of argument about the statutory exceptions to the anti-SLAPP statute. *Id.* at 12.[4] The Court should not consider these "incorporated" arguments. Yet, even if considered, the statutory exceptions do not apply.

Plaintiffs rely on Sections 425.17(b)-(c), which, as statutory exceptions to the anti-SLAPP statute, must be narrowly construed. *Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 316 (2008). Subsection (b) does not apply because Plaintiffs seek "personal relief," *i.e.*, they want money. *Id.* at 317. Subsection (c) does not apply because none of the statements attributed to Armstrong were representations of fact *about* the books. Cal. Civ. Proc. Code

---

[3]     USADA is a non-governmental, non-profit organization that investigates doping violations in amateur sports and other sanctioned athletic contests. *See* http://www.usada.org/about. It can decide whether an athlete used a banned substance and suspend or ban an athlete from competition. But it has no power to opine about whether a crime was committed, and has no business doing so. The Court should also be mindful that what USADA calls a "Reasoned Decision" is, on its face, an advocacy piece built in key respects on declarations, from still-competing professional athletes, obtained in exchange for reduced suspensions. By contrast, the U.S. Attorney's Office convened a criminal grand jury to investigate Armstrong's use of PEDs, and saw fit to return no indictments.

[4]     Plaintiffs also use the Roddy Declaration (Dkt. 66) to add nine more pages of briefing on their request for discovery. The Court should not consider that portion of the declaration.

§ 425.17(c)(1). Moreover, neither exception applies because Plaintiffs' suit is based on the "creation, dissemination, exhibition, advertisement, or other similar promotion of a[] . . . literary . . . or artistic work." *Id.* § 425.17(d)(2).

### C. Plaintiffs' Claims Arise From Speech.

Plaintiffs argue their claims do not target protected activity. But they quite obviously do; they target speech by a public figure in public forums about matters of public interest. That speech, which is alleged to be false and misleading, is the gravamen of every claim. Plaintiffs attack the falsity of that speech, but that is a step-two concern; the only question at step-one is whether "the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)." *Cashman*, 29 Cal. 4th 69 at 78.

### D. Armstrong's Speech Meets The "Public Forum" Test.

Plaintiffs allege that Armstrong's "public" and "well-publicized" statements to the media, in print, on the Internet, and on television induced them to buy his books. *See* FAC ¶¶ 45, 56, 94. Plaintiffs incorporate these allegations into every cause of action. *See* FAC ¶¶ 107, 113, 119, 127, 135, 139. Their opposition adds more of the same.[5] If Plaintiffs' assertions are to be credited, these statements were publicly and widely disseminated. Therefore, they occurred in a public forum under California law.

Despite their own allegations, Plaintiffs erroneously assert these various media outlets were not public forums. Dkt. 64 at 16. The California Supreme Court has already decided the issue for the Internet, stating that "[w]eb sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute." *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006). For newspapers and other media, the great weight of authority reaches the same result. *See Moreau v. Daily Indep.*, No. 1:12-CV-01862, 2013 U.S. Dist. LEXIS 3059, at *9-10 (E.D. Cal. Jan. 8, 2013)

---

[5] *See, e.g.*, Roddy Decl., Ex. I (discussing Armstrong's Tour victories, his marriage, surviving cancer, etc.); Ex. M (interview with Charlie Rose discussing his third Tour victory, surviving cancer, training, technology, race strategy, body composition, other athletes, his legacy, PEDs, allegations of PED use, team tactics, his personal life after cancer, his children, his future, *and one line* from Charlie Rose about his second book); Ex. O (second Charlie Rose interview with the same basic content); Ex. P (third Charlie Rose interview, no books mentioned); Ex. Q (hearsay from tv.com, listing Armstrong guest spots on various television shows).

(considering the authorities and concluding a newspaper is a public forum). As explained in the moving papers, California courts have held a wide range of media to be public forums, including homeowners association newsletters, magazines, social networking websites, and radio talk shows. Dkt. 47 at 8 (citing cases).

Ignoring these cases, Plaintiffs rely solely on *Lafayette Morehouse, Inc. v. Chronicle Publ'g. Co.*, 37 Cal. App. 4th 855, 863 n.5 (1995), and a district court case that cites it. This is the weakest possible authority. *Lafayette Morehouse* expressly did *not* decide whether a newspaper was a public forum; it merely questioned it in footnoted dictum. 37 Cal. App. 4th at 863 n.5. Also, the case was decided before the anti-SLAPP statute was amended in 1997 to mandate that courts construe it broadly. *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 478 (2000) (rejecting *Lafayette Morehouse* and noting it "predate[s] the 1997 amendment requiring a broad interpretation of section 425.16"). The *Damon* court also found *Lafayette Morehouse*'s analysis—and Plaintiffs' here—to be "at odds" with the plain meaning of "public forum" in the statute. *Id.* In other words, it was wrong.

The Court should follow the better-reasoned majority view and find that Armstrong's widely publicized statements, broadcast in various media, were made in a public forum.

E. **Armstrong's Speech Meets The "Public Interest" Test.**

Plaintiffs also dispute whether Armstrong's statements meet the "public interest" test. As Armstrong's motion pointed out, the test is met automatically when a celebrity discusses the source of his or her notoriety. *See* Dkt. 47 at 9 (citing *Hilton v. Hallmark Cards*, 599 F.3d 894, 906-08 (9th Cir. 2010)). That is what happened here: Plaintiffs allege Armstrong spoke about himself and his cycling career, the things that make him famous. This alone satisfies the public interest test to invoke the anti-SLAPP statute. Plaintiffs ignore this point, but it is dispositive of the public interest element.

Instead, they argue Armstrong's statements were not of public interest because they were "advertising statements about a commercial product." Dkt. 64 at 14-15. For this erroneous position, Plaintiffs cite cases that found no public interest in pure advertising statements promoting the "specific properties and efficacy of a particular product." *All One God Faith, Inc. v.*

*Organic & Sustainable Indus. Standards, Inc.*, 183 Cal. App. 4th 1186, 1207 (2010). In doing so, Plaintiffs suggest there is no difference between Armstrong's statements about himself, his cancer, his cycling career, and the Tour de France, on the one hand, and the infomercial-style advertisement in the example they cite: an herbal breast-enlargement supplement, "Grobust," which was promoted as the "All-Natural Way To A Fuller, More Beautiful Bust." Dkt. 64 at 15-16. The comparison is hollow. None of Armstrong's statements was advertising; none mentioned any books; and none mentioned any "specific properties" or "efficacy" of any books. Instead, Armstrong's "statement[s] or activity precipitating the claim involved a topic of widespread public interest, and the statement[s] in some manner [] contribute[] to the public debate." *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1246 (2005) (quotation omitted). The public interest test is met, and the Court should turn to step two.

### III. Step Two: Plaintiffs Did Not Meet Their Burden To Show Probable Validity.

#### A. Every Plaintiff Was Required To *Prove* Reliance On A False Statement By Armstrong; None Did, So They Fail Step Two.

An essential element of all Plaintiffs' claims is actual reliance. *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012) (UCL and CLRA); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326-27 (2011) (FAL). Reliance in this context means that Plaintiffs must have seen or heard an advertisement and, because of what the advertisement said, bought a book. Because this is an anti-SLAPP motion, Plaintiffs had to prove this element with evidence. *Chavez v. Mendoza*, 94 Cal. App. 4th 1083, 1087 (2001) (plaintiff's burden is to produce evidence that would be admissible at trial to support a prima facie case); *see also Taus v. Loftus*, 40 Cal. 4th 683, 714 (2007) (anti-SLAPP motion involves a summary-judgment like procedure).[6]

For any meritorious claim, this should be easy: submit a declaration identifying the particular advertisement you saw, why it motivated you to buy the book, and that you bought the book. Yet in this case, not one Plaintiff could manage it. *No Plaintiff* submitted any evidence that

---

[6] That is why Plaintiffs cannot just point to their FAC for reliance. Even if they could, as shown in Armstrong's motion to dismiss, Dkt. 46, Plaintiffs' allegations are insufficient. They all fail to specify a particular statement by Armstrong about the books that caused them to buy. *See* FAC ¶¶ 2, 8, 9-12, 90-93.

they saw or heard any Armstrong statements. *No Plaintiff* submitted any evidence that they were motivated to buy a book after seeing or hearing any particular Armstrong statements. *No Plaintiff* submitted any evidence that they even bought a book at all. And although counsel deluged the Court with hundreds of pages of "evidence," including three PBS interviews with Charlie Rose, Dkt. 66, Exs. L, N, *no Plaintiff* says they saw *these* materials either.[7]

All told, *no Plaintiff* established a *prima facie* claim under the UCL, FAL, or CLRA. Because they failed to meet their burden, this motion should be granted.

### B. Armstrong's Speech Was Non-Commercial As A Matter Of Law, So Their Consumer Protection Claims Fail.

Plaintiffs do not dispute that California's UCL, FAL and CLRA apply only to "commercial speech" under the United States Constitution. *See Rezec v. Sony Pictures Entm't, Inc.*, 116 Cal. App. 4th 135, 140 (2004). They argue, however, that, Armstrong's statements were "commercial." In doing so, they rely on the wrong legal standard. Ignoring the Ninth Circuit's commercial speech test, they cobble together their own patchwork standard from state court decisions.

As Armstrong's moving papers explain, the governing test for commercial speech is set forth in *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 957 (9th Cir. 2012). Under *Dex Media*, Armstrong's speech is not commercial. All his statements are public speech about his Tour de France rides, his family, and his denials of PED use: in other words, his life. FAC ¶ 45, Roddy Decl., Exs. I, M, O, P, Q. None proposes a commercial transaction; there is no traditional advertisement; there is no product reference; and there is not even a clear, let alone direct, economic motivation. *Dex Media*, 696 F.3d at 957. While Plaintiffs seem to argue that every word from Armstrong's mouth was economically motivated to promote his "brand," economic motive alone is insufficient to make ordinary speech commercial. *Id.*

---

[7]   This also rebuts Plaintiffs' disingenuous argument that they need discovery. What these Plaintiffs saw, read, or experienced prior to purchasing the Armstrong books is not something that can be divined from serving document requests, requests for admissions, interrogatories, or by deposing Armstrong. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (in a fraud case, "it is not unreasonable to expect [the plaintiff] to have personal knowledge of the relevant facts"). Only *they* know what they saw, and they failed to prove to the Court that they saw anything at all.

Plaintiffs flout *Dex Media* and make up their own standard based on their readings of *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950-51 (2002), *Keimer v. Buena Vista Books, Inc.*, 75 Cal. App. 4th 1220, 1230-32 (1999), and *People v. Custom Craft Carpets, Inc.*, 159 Cal. App. 3d 676, 683 (1984)). Those cases are non-binding state-court attempts to define commercial speech, and are due no weight on this federal-law issue. *E.g., Wilder v. Turner*, 490 F.3d 810, 814 (10th Cir. 2007) ("It is beyond cavil that [federal courts] are not bound by a state court interpretation of federal law") (quotation omitted). They are also distinguishable. *Keimer* involved statements having the sole goal of selling books, 75 Cal. App. 4th at 1230-31, while Armstrong's statements did not mention the books and concerned topics of public interest. In *Custom Craft*, the court never decided the commercial speech question at all because the defendant did not contest it. 159 Cal. App. 3d at 683. Armstrong does. And in *Kasky*, Nike's letters to its direct customers were commercial because they referenced products and made factual representations about them. 27 Cal. 4th at 963.[8] Armstrong's speech referenced no products (*i.e.*, the books) or their attributes.

Plaintiffs also cite *United States v. Alvarez*, 132 S. Ct. 2357 (2012), which is not a commercial speech case, for the misstatement that false statements categorically are not protected by the First Amendment. Dkt. 64 at 13 n.5. But the case holds exactly the opposite, stating the Constitution *does* protect falsehoods. *Alvarez*, 132 S. Ct. at 2545 (Kennedy, J.) ("The Court has never endorsed the categorical rule the Government advances: that false statements receive no First Amendment protection."); *Id.* at 2553 (Breyer, J, concurring.) ("False factual statements can serve useful human objectives. . . .").

Armstrong spoke publicly on sometimes controversial public issues. Despite Plaintiffs' conclusory labels, none of his statements mentioned the books, let alone "hawked" them. The speech is thus not "commercial." Even the Charlie Rose interviews broadcast on PBS—when actually viewed and not mischaracterized by Plaintiffs—cover the same matters of public interest: cancer, the Tour de France, and Armstrong's life. The context of a book tour did not automatically

---

[8] *Kasky* is not only non-controlling on what is commercial speech, it is wrong; the United States Supreme Court initially granted *certiorari* and at least Justices Breyer and O'Connor would have voted to reverse. *See Nike, Inc. v. Kasky*, 539 U.S. 654, 665 (2002) (Breyer, J. dissenting from dismissal of petition).

make Armstrong's speech commercial—mere economic motivation is not enough. In addition, even *genuine* advertising is fully protected by the First Amendment, and therefore beyond the reach of California's consumer protection statutes, when that advertising is an "adjunct" to a protected work. *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982); *Keimer*, 75 Cal. App. 4th at 1231. Because none of Armstrong's statements is commercial speech as a matter of law, Plaintiffs' cannot establish the probable validity of their claims.

C.   **Plaintiff Did Not Prove Standing For Books They Did Not Purchase.**

In discussing Article III, Plaintiffs accuse Armstrong of "ignor[ing]" divided district court cases holding that a named plaintiff has standing to sue for products she did not purchase. Dkt. 64 at 19. But these cases contradict controlling Supreme Court precedent and are wrongly decided. *See Lewis v. Casey*, 518 U.S. 343, 357-58 (1996). Calling a case a class action "adds nothing to the question of standing," for even named plaintiffs must allege and show that they personally have been injured, "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id.* (quotation omitted). Plaintiffs have standing to sue about books they purchased, *not* books someone else purchased. *See, e.g., Zwart v. Hewlett-Packard Co.*, No. 10-3992, 2011 WL 767750, at *8-11 (N.D. Cal. Feb. 25, 2011) (dismissing claims based on products plaintiff never bought for lack of injury, reliance or causation).

IV.   **Plaintiffs Do Not Need Discovery And They Are Not Entitled To It.**

In another bid to avoid the Court striking the claims at issue here, Plaintiffs ask for discovery, 90% of which is devoted to the details of Armstrong's undisputed PED use. The Court should deny this request for the following reasons:

• The discovery Plaintiffs seek is wholly unrelated to the grounds for this motion. Armstrong's anti-SLAPP challenge is based on two things only: (1) the fact that none of Armstrong's alleged speech was commercial as a matter of law, a pure legal question; and

(2) Plaintiffs' failure to prove reliance, which information sits in *Plaintiffs'* exclusive control and requires no discovery from Armstrong. Discovery bears on neither issue.[9]

- Armstrong admits falsely denying PED use, the focus of Plaintiffs' discovery. Because that issue is uncontested, Plaintiffs do not need discovery to prove it.

- Plaintiffs say they need evidence of PED use to establish the criminal exception to the anti-SLAPP statute. Such discovery is, however, a sideshow because the criminal exception to the anti-SLAPP is inapplicable. As discussed above, Plaintiffs' claims arise from Armstrong's books and related *speech*, not alleged criminal drug trafficking. As a result, Plaintiffs may not assert the exception. Also, criminal illegality is a "step-one" issue on which Armstrong bears the burden. Plaintiffs are not entitled to discovery on supposed criminality—even assuming criminal conduct was the protected activity at issue. *See Smith v. Payne*, No. 12-1732, 2012 U.S. Dist. LEXIS 182345, at *16-17 (N.D. Cal. Dec. 26, 2012) (denying discovery allegedly needed to show illegality); *see also Flatley*, 39 Cal. 4th at 320 (criminality is a step-one issue).

## V. CONCLUSION

For these reasons and the reasons explained in his Motion to Strike, Armstrong respectfully requests the Court strike Plaintiffs' claims based on consumer protection statutes.

Respectfully submitted,

Dated: July 12, 2013

KATTEN MUCHIN ROSENMAN LLP
Zia F. Modabber (CA 137388)
Gregory S. Korman (CA 216931)
Andrew J. Demko (CA 247320)

By:  /s/ Zia F. Modabber
Attorneys for Defendant LANCE ARMSTRONG

---

[9] For the same reasons, Plaintiffs' purported "procedural conundrum" is inapplicable. Dkt. 64 at 11. First, Plaintiffs are wrong when they say the Court must accept their characterization of Armstrong's conduct as illegal. "Conduct that would otherwise come within the scope of the anti-SLAPP statute does not lose its coverage simply because it is *alleged* to have been unlawful or unethical." *Birkner v. Lam*, 156 Cal. App. 4th 275, 285 (2007) (quotation omitted). More to the point, illegality is a nonissue because Armstrong's protected activity is speech, not drug use; and the only evidence Plaintiffs actually needed was their own declarations, which they could have provided, but did not.