Stephen G. Contopulos, SBN 50317
scontopulos@sidley.com
Bradley H. Ellis, SBN 110467
bellis@sidley.com
Alex Doherty, SBN 261552
adoherty@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

Attorneys for Defendant Random House, LLC,
successor-in-interest to Random House,
Inc., also erroneously sued as Broadway Books
and Crown Publishing Group

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROB STUTZMAN, JONATHAN WHEELER, GLORIA LAURIA, DAVID REIMERS and SCOTT ARMSTRONG, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LANCE ARMSTRONG; PENGUIN GROUP (USA), INC.; G.P. PUTNAM'S SONS; THE BERKLEY PUBLISHING GROUP; RANDOM HOUSE, INC.; BROADWAY BOOKS; CROWN PUBLISHING GROUP; THOMAS W. WEISEL; WILLIAM J. STAPLETON; and DOES 1-50, inclusive,<br><br>Defendants. | **CASE No. 2:13-cv-00116-MCE-KJN**<br><br>**DEFENDANTS RANDOM HOUSE, LLC, BROADWAY BOOKS, AND CROWN PUBLISHING GROUP'S REPLY MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE THE FIRST AMENDED COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**<br><br>Date:   August 8, 2013<br>Time:   2:00 p.m.<br>Location:  Courtroom 7, 14th Floor<br>Judge:   The Honorable Morrison C. England, Jr. |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.    NO EXEMPTIONS FROM THE ANTI-SLAPP STATUTE APPLY ..............................2

    A.    The "Public Interest" and "Commercial Speech" Exemptions
        Do Not Apply to Publishers like Random House ......................................................3

    B.    The "Public Interest" Exemption Does Not Apply ...................................................3

    C.    The "Commercial Speech" Exemption Does Not Apply ..........................................5

    D.    The Exception for Speech That Constitutes Criminal Conduct
        Does Not Apply ........................................................................................................7

II.    RANDOM HOUSE HAS MET ITS BURDEN OF DEMONSTRATING THAT
      PLAINTIFFS' CLAIMS ARE SUBJECT TO THE ANTI-SLAPP STATUTE ...............8

    A.    The First Step of the Anti-SLAPP Analysis Does Not Require
        Random House to Prove the Merits of Its First Amendment Defense .................10

    B.    Ads for a Commercial Product Are Not Categorically Excluded From
        the Anti-SLAPP Statute's Protection ....................................................................10

III.    PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN
       OF DEMONSTRATING A PROBABILITY OF PREVAILING ON
       THE MERITS ...............................................................................................................12

    A.    Plaintiffs' Theory of When Random House Purportedly Knew Armstrong
        Was Lying is Implausible .......................................................................................12

    B.    Plaintiffs' Claims Do Not Survive Random House's First Amendment
        Defense ...................................................................................................................14

    C.    Plaintiffs Fail to Explain, Much Less Substantiate, the Plausibility of Their
        Fundamental Theory of Why Random House's Statements Are False ................17

    D.    Plaintiffs Fail to Substantiate Reliance on Any Statements by Random House ...18

IV.    PLAINTIFFS DO NOT NEED DISCOVERY TO RESPOND
       TO RANDOM HOUSE'S MOTION ...........................................................................19

CONCLUSION ...................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.*,
   183 Cal. App. 4th 1186 (2010).................................................................................4, 7, 11

*Blanchard v. DIRECTV, Inc.*,
   123 Cal. App. 4th 903 (2004), *review denied* (Jan. 26, 2005)..............................................4, 5

*Briggs v. Eden Council for Hope & Opportunity*,
   19 Cal. 4th 1106 (1999)...........................................................................................9

*Bronco Wine Co. v. Jolly*,
   129 Cal. App. 4th 988 (2005)..................................................................................14

*Charles v. City of Los Angeles*,
   697 F.3d 1146 (9th Cir. 2012)..................................................................................16

*Club Members for an Honest Election v. Sierra Club*,
   45 Cal. 4th 309 (2008)..........................................................................................2, 4

*Consumer Justice Ctr. v. Trimedica Int'l, Inc.*,
   107 Cal. App. 4th 595 (2003)..................................................................................11

*Damon v. Ocean Hills Journalism Club*,
   85 Cal. App. 4th 468 (2000)......................................................................................9

*Duncan v. Cohen*,
   No. C 08-2243, 2008 U.S. Dist. LEXIS 109342 (N.D. Cal. July 22, 2008) ...........................3

*Dyer v. Childress*,
   147 Cal. App. 4th 1273 (2007)..................................................................................3

*Fabbrini v. City of Dunsmuir*,
   544 F. Supp. 2d 1044 (E.D. Cal. 2008) ......................................................................19

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ................................................................................9, 18

*Flatley v. Mauro*,
   39 Cal. 4th 299 (2006)........................................................................................2, 7, 8

*GA Telesis, LLC v. GKN Aerospace, Chem-Tronics, Inc.*,
   No. 12–CV–1331, 2013 WL 1147951 (S.D. Cal. Mar. 19, 2013) ..........................................6

i

*Greenspan v. Random House, Inc.*,
   859 F. Supp. 2d 206 (D. Mass. 2012), *aff'd*, 2012 WL 5188792 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1811 (2013) ........................................................................................ 17

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ............................................................................. 8, 11

*In re Countrywide Finan. Corp. Mortgage-backed Secs. Litig.*,
   Nos. 2:11–ML–02265, 2:11–CV–10549, 2013 WL 1881567 (C.D. Cal. May 6, 2013) .......... 6

*In re Grand Jury Matter*,
   764 F.2d 983 (3d Cir. 1985) ............................................................................ 16

*Ingels v. Westwood One Broadcasting Servs., Inc.*,
   129 Cal. App. 4th 1050 (2005) .......................................................................... 3

*Jewett v. Capital One Bank*,
   113 Cal. App. 4th 805 (2003) ........................................................................... 7

*K & N Eng'g, Inc. v. Spectre Performance*,
   No. EDCV 09–01900, 2011 WL 6133258 (C.D. Cal. Dec. 8, 2011) ...................................... 18

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) ......................................................................... 7, 10, 16

*Keimer v. Buena Vista Books, Inc.*
   75 Cal. App. 4th 1220 (1999) .......................................................................... 16

*Lacoff v. Buena Vista Publ'g, Inc.*,
   183 Misc. 2d 600, 705 N.Y.S. 2d 183 (N.Y. Sup. Ct. 2000) ........................................ 16

*Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*,
   37 Cal. App. 4th 855 (1995) ............................................................................ 9

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................ 19

*Moreau v. Daily Independent*,
   No. 1:12-cv-01862, 2013 WL 85362 (E.D. Cal. Jan. 8, 2013) ........................................ 9

*Nagel v. Twin Labs., Inc.*,
   109 Cal. App. 4th 39 (2003) ........................................................................... 14

*Navellier v. Sletten*
   29 Cal. 4th 82 (2002) ................................................................................. 10

*Neu v. Terminix Int'l, Inc.*,
   No. C 07-6472, 2008 WL 2951390 (N.D. Cal. July 24, 2008) ......................................... 12

*New York Times Co. v. Sullivan,*
  376 U.S. 254, 84 S. Ct. 710 (1964) ...................................................................... 14

*Nygard, Inc. v. Uusi-Kerttula,*
  159 Cal. App. 4th 1027 (2008) .......................................................................... 9

*Paiva v. Nichols,*
  168 Cal. App. 4th 1007 (2008) ........................................................................ 19

*People v. Custom Craft Carpets, Inc.,*
  159 Cal. App. 3d 676 (1984) ............................................................................ 16

*Rezec v. Sony Pictures Entm't, Inc.,*
  116 Cal. App. 4th 135 (2004) .......................................................................... 11

*Rivera v. First DataBank, Inc.,*
  187 Cal. App. 4th 709 (2010) ............................................................................ 7

*Rosemont Enters., Inc. v. Irving,*
  49 A.D. 2d 445, 375 N.Y.S. 2d 864 (App. Div. 1975) ........................................ 17

*Schneider v. Cal. Dept. of Corrections,*
  151 F.3d 1194 (9th Cir. 1998) ............................................................................ 5

*Scott v. Metabolife Int'l, Inc.,*
  115 Cal. App. 4th 404 (2004) .......................................................................... 11

*Simpson Strong-Tie Co., Inc. v. Gore,*
  49 Cal. 4th 12 (2010) .............................................................................. 3, 5, 6

*Stewart v. Rolling Stone LLC,*
  181 Cal. App. 4th 664 (2010) ..................................................................... 11, 20

*United States v. Alvarez,*
  132 S. Ct. 2537 (2012) ...................................................................................... 9

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) .......................................................................... 11

*Vogel v. Felice,*
  127 Cal. App. 4th 1006 (2005) ........................................................................ 12

*Weinberg v. Feisel,*
  110 Cal. App. 4th 1122 (2003) .......................................................................... 9

*Winter v. G.P. Putnam's Sons,*
  938 F.2d 1033 (9th Cir. 1991) .......................................................................... 15

1

**STATUTES**

2  Cal. Code Civ. Proc. § 425.16(b) ...............................................................3, 4, 8, 9, 11

3  Cal. Code Civ. Proc. § 425.16(e) ...............................................................................9

4  Cal. Code Civ. Proc. § 425.17(b) ...........................................................................3, 4

5  Cal. Code Civ. Proc. § 425.17(c) ...........................................................................3, 6

6  Cal. Code Civ. Proc. § 425.17(d) ..............................................................................3

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA1 2761764v.8

RANDOM HOUSE'S REPLY BRIEF IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE
CASE NO. 2:13-CV-00116-MCE-KJN

**INTRODUCTION**

In opposing Random House, LLC's ("Random House") anti-SLAPP motion, Plaintiffs submitted reams of material, including the U.S. Anti-Doping Agency's report concluding that Defendant Lance Armstrong ("Armstrong") used performance-enhancing drugs, transcripts of television interviews of Armstrong in which he lied about using those drugs, and a complaint in another action in which Armstrong's former U.S. government sponsor alleges he defrauded it.  But none of this matters to Random House's Motion.  The claims against Random House arise solely from **Random House's** alleged statements about the book *Every Second Counts* – not Armstrong's doping or Armstrong's lies about doping, whether stated in the book itself, on the Charlie Rose Show, or anywhere else.  The alleged illegality of Armstrong's conduct has no bearing on the only two issues presented by Random House's Motion, i.e., whether the anti-SLAPP statute applies to the claims against Random House and whether Plaintiffs are likely to prevail on those claims.

Plaintiffs' single-minded focus on castigating Armstrong – both in their First Amended Complaint (Dkt. No. 22) ("FAC") and their Opposition brief (Dkt. No. 65) ("Opp.") – should not obscure the nature of Plaintiffs' claims against Random House.  Plaintiffs' claims directly challenge a book publisher's truthful characterization of an autobiographical memoir as "biography" and/or "nonfiction," and of its author as a "five-time Tour de France winner," for the sole reason that, a decade after the book was first published, Armstrong admitted to decades of lying about his drug use, including in the book.  Even worse, Plaintiffs go so far as to challenge the very publication of *Every Second Counts*, citing Random House's publication of an "exposé" in 2007 and another cyclist's "confessional" in 2012 contradicting Armstrong's account.  In doing so, Plaintiffs' claims contravene basic First Amendment principles and attempt to obligate publishers to arbitrate between competing accounts of history, an obligation courts have steadfastly refused to impose.

But the First Amendment is only one of four independent reasons why all claims against Random House fail as a matter of law.  Plaintiffs do not even address Random House's challenge to the facial plausibility of their false advertising theory.  Plaintiffs also provide no explanation for the serious defects in their allegations of reliance, and, despite claiming the need for wide-ranging discovery to respond to Random House's motion (while simultaneously submitting hundreds of

1

pages of materials), Plaintiffs fail to submit even a single declaration from any Named Plaintiff to substantiate their alleged reliance on the statements at issue.  Finally, Plaintiffs' attempt to provide any plausible explanation for their theory of Random House's scienter affects only claims arising *after* May 2010, effectively conceding that Plaintiffs cannot state a plausible claim for relief for anyone in the putative class whose claim arose between January 2003 and May 2010.  And Plaintiffs' theory of Random House's scienter post-May 2010 is facially implausible because it relies on *publicized* accusations of misconduct in the national media equally accessible to Plaintiffs. It is also flatly inconsistent with Plaintiffs' allegations respecting when they themselves reasonably should have known Armstrong was lying.

Rather than engage Random House's arguments, Plaintiffs seek to avoid early scrutiny of their allegations, contending their claims are immune from Random House's motion by virtue of three narrowly drawn and narrowly construed exemptions – none of which apply.  The so-called "public interest" and "commercial speech" exemptions of Section 425.17 do not apply to book publishers like Random House as is clear from the statute itself.  Nor are the elements of the Section 425.17 exemptions satisfied here, because Plaintiffs' action is most certainly *not* selflessly brought in the interest of the general public and because "biography" and "Tour de France winner" do not constitute commercial speech within the meaning of the statute.  Further, since Random House's statements were not criminally illegal as a matter of law, Plaintiffs' reliance on the limited exemption provided by *Flatley v. Mauro*, 39 Cal. 4th 299 (2006), is unavailing.

The anti-SLAPP statute was designed to bring an expeditious end to meritless cases implicating First Amendment rights, and this is just such a case.  This Court should dismiss it.

## ARGUMENT

## I.    NO EXEMPTIONS FROM THE ANTI-SLAPP STATUTE APPLY

"The Legislature has . . . directed that section 425.16 'shall be construed broadly' given that the anti-SLAPP statute protects speech about important public issues."  *Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 318 (2008).  However, in a few limited, narrowly defined situations, a lawsuit may be immune from an anti-SLAPP motion.  These exemptions "should be narrowly construed."  *Id.* at 316 (citing *City & County of San Francisco v. Ballard*, 136 Cal. App.

4th 381, 400 (2006)).  Plaintiffs contend three such exemptions from the anti-SLAPP statute apply here, but Plaintiffs fail to satisfy their burden of proving so.  *See Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12, 26 (2010) (burden of proving applicability of exemption from anti-SLAPP statute "falls on the party seeking the benefit of it").

### A.   The "Public Interest" and "Commercial Speech" Exemptions Do Not Apply to Publishers like Random House

Plaintiffs argue exemptions to the application of the anti-SLAPP statute set forth in Sections 425.17(b) and (c) of the California Code of Civil Procedure, the so-called "public interest" exemption and "commercial speech" exemption, work to exempt Plaintiffs' claims from the anti-SLAPP statute.  But, in fact, they provide no bar to Random House's Special Motion to Strike (Dkt. No. 36) ("Mot.").  As detailed in Random House's moving papers, *see* Mot. at 5-6, Section 425.17(d) itself makes plain that they have no application to media defendants like Random House. *See Ingels v. Westwood One Broadcasting Servs., Inc.*, 129 Cal. App. 4th 1050, 1067-68 (2005).

Plaintiffs have no response to this argument, so they ignore it.  Instead, Plaintiffs mischaracterize Random House's argument and then respond to that straw man.  Citing *Dyer v. Childress*, 147 Cal. App. 4th 1273 (2007), and *Duncan v. Cohen*, No. C 08-2243, 2008 U.S. Dist. LEXIS 109342 (N.D. Cal. July 22, 2008), Plaintiffs argue that the exceptions for claims against media defendants provided in Section 425.17(d)(1)-(2) "merely retain the *status quo ante*" and thus "do not eliminate" the need for Random House to meet its threshold burden under Section 425.16(b)(1) of demonstrating that Plaintiffs' claims arise from conduct by Random House in furtherance of its right of free speech.  *See* Opp. at 10-11.  But Random House argued no such thing. Random House's position is that the exceptions in Section 425.17(d) render *the exemptions* from the anti-SLAPP procedure provided in Sections 425.17(b) and (c) – i.e., the public interest and commercial speech exemptions asserted by Plaintiffs – inapplicable to Random House's motion.

### B.   The "Public Interest" Exemption Does Not Apply

Even if Section 425.17(d) did not remove Random House's motion from the scope of the "public interest" and "commercial speech" exemptions, Plaintiffs have not met their burden of demonstrating that the elements of these exemptions are satisfied here.  Section 425.17(b) exempts

from the anti-SLAPP statute an action "brought solely in the public interest or on behalf of the general public," so long as the action meets three additional specified conditions. *See* Cal. Code Civ. Proc. § 425.17(b)(1)-(3). But Plaintiffs' lawsuit is not brought "solely in the public interest" and does not meet these additional prerequisites.

As detailed in Random House's moving papers, *see* Mot. at 5, this so-called "public interest" exemption applies only to class actions in the form of private attorney general lawsuits brought solely in the general public's interest. *See Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 916 (2004) (holding exemption inapplicable to putative UCL class action because lawsuit "not designed to confer a benefit upon anyone other than plaintiffs"), *review denied* (Jan. 26, 2005); *see also Club Members*, 45 Cal. 4th at 318 ("[T]he term 'public interest' is used to define suits brought for the public's good or on behalf of the public. To qualify under section 425.17(b)'s exception, suits must be brought *solely* to secure this public benefit."). Since Plaintiffs seek relief on behalf of only the putative class and not the general public, Plaintiffs cannot meet this threshold requirement for application of the exemption.

Rather than address these authorities, Plaintiffs recite the elements of the exemption and proclaim that the FAC "satisf[ies] each of these conditions," citing to 78 paragraphs of the FAC. They leave it to the Court to figure out how the referenced allegations satisfy these conditions. *See* Opp. at 7-8. But these conditions are not satisfied. For instance, this suit would not "enforce an important right affecting the public interest," as required by Section 425.17(b)(2). *See Blanchard*, 123 Cal. App. 4th at 915 (injunction sought on behalf of putative class did not seek "to assert some general right not to receive demand letters or notices" or otherwise to vindicate any "public interest principle"). Plaintiffs' suit also does not satisfy the "'necessity and financial burden'" element of Section 425.17(b)(3), because "the benefits that would be conferred on plaintiffs, if they were victorious in this lawsuit, far transcend any conceivable benefit to the general public." *Id.* at 916.

In a last-ditch attempt to salvage application of the "public interest" exemption, Plaintiffs claim, citing an unpublished California Court of Appeal decision, that Section 425.17 categorically immunizes *all* false advertising UCL claims from "anti-SLAPP scrutiny." *See* Opp. at 7 n.7, 8. On the contrary, Plaintiffs' suit is exactly the kind of lawsuit the California Legislature had in mind

4

when it narrowly defined the public interest exemption to apply only to those suits brought solely to secure a benefit on behalf of the general public. *See Blanchard*, 123 Cal. App. 4th at 916 ("Suits '*motivated by personal gain are not exempted from the anti-SLAPP motion*. This is necessary . . . because there are some abusive uses of the unfair competition law that should be subject to the SLAPP motion . . . .'" (quoting Assem. Com. on Judiciary, Rep. on Sen. Bill No. 515, as amended July 27, 2003, p. 12)).

### C. The "Commercial Speech" Exemption Does Not Apply

Plaintiffs also contend that the so-called "commercial speech" exemption precludes Random House's anti-SLAPP motion, because "Plaintiffs allege that misrepresentations about the Armstrong Books, including Armstrong's TV appearances, were made to California consumers to promote sales of those products." *See* Opp. at 9. Plaintiffs then cite to over 90 paragraphs of the FAC and 7 exhibits submitted in support of their Opposition, without providing, as they must, any analysis as to how the exemption's elements are satisfied. *See Simpson*, 49 Cal. 4th at 24 (party opposing anti-SLAPP motion bears burden of proving commercial speech exemption's elements are met).

As an initial matter, however, the only representations relevant to whether the exemption applies to *Random House's* motion are the representations *by Random House* on which the claims against the publisher are premised. *See id.* at 31 (rejecting application of commercial speech exemption based on representation on which false advertising and defamation claims were not premised). As demonstrated in Random House's moving papers, each and every claim against Random House arises from its alleged description (1) of *Every Second Counts* as "a true and honest work of non-fiction biography" and (2) of Armstrong as "the five-time Tour de France winner." *See* FAC ¶¶ 115 (CLRA), 131 (UCL), 140 (FAL), 152 (negligent misrepresentation), 165 (fraud and deceit).[1] The Court should not be fooled by Plaintiffs' attempt to blur the lines of their claims and

---

[1] Plaintiffs refer to a new statement not alleged in the FAC that appears on the book jacket of the hardcover edition of *Every Second Counts*: "Armstrong candidly discusses his prickly relationship with the French *and the ultimately disproved accusations* [of doping] *within his Tour de France team* . . . ." *See* Opp. at 5 n.5 (emphasis added by Plaintiffs). But this statement is not pled in the FAC, and Plaintiffs may not "amend" their FAC through their Opposition briefs. *See Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of

RANDOM HOUSE'S REPLY BRIEF IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE
CASE NO. 2:13-CV-00116-MCE-KJN

allegations against the various defendants by citing to 90 paragraphs in the FAC in the hope that something will "stick."  *See Simpson* at 31-32 ("We are reluctant to allow plaintiffs to evade the limitations of the statutory text by mere wordplay, especially given our obligation to construe the commercial speech exemption narrowly.").

The innocuous and truthful representations by Random House upon which the FAC is based – that the book is a "biography" and "nonfiction" and that Armstrong won the Tour de France – do not satisfy required elements of the commercial speech exemption.[2]  "Biography" is not asserted "for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in," *Every Second Counts*.  Its purpose is instead to indicate how the book is classified under the Library of Congress's classification regime.  *See* Random House's Notice of Lodging (Dkt. No. 39) (copyright page of paperback edition) ("Library of Congress has cataloged the hardcover edition as: . . . 2. Cyclists–United States–Biography"); *GA Telesis, LLC v. GKN Aerospace, Chem-Tronics, Inc.*, No. 12–CV–1331, 2013 WL 1147951, at *7 (S.D. Cal. Mar. 19, 2013) ("California courts consider the purpose motivating the communication when evaluating this factor.").  In addition, the description of Armstrong as a Tour de France "winner" is not a

---

a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *In re Countrywide Finan. Corp. Mortgage-backed Secs. Litig.*, Nos. 2:11–ML–02265, 2:11–CV–10549, 2013 WL 1881567, at *20 n.16 (C.D. Cal. May 6, 2013) ("a complaint may not be amended by a party's brief").  Moreover, even if Plaintiffs had properly pled claims arising from this statement, it would not save them.  The statement merely describes what Armstrong says in the book and is, therefore, inextricably intertwined with and an adjunct to that content, fully protected by the First Amendment.  *See* Mot. at 8-10.

[2] As the California Supreme Court explained, Section 425.17(c) exempts

> from the anti-SLAPP law a cause of action arising from commercial speech when (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct meets the definition set forth in section 425.17(c)(2).

*Simpson*, 49 Cal. 4th at 30.

"representation of fact" about Random House's "business operations, goods, or services." Rather, it is a statement about the *author* of *Every Second Counts*, not the book itself. *See Rivera v. First DataBank, Inc.*, 187 Cal. App. 4th 709, 718 (2010) (statements in book about the drug Paxil were not representations about the book itself).

Plaintiffs' contention that "causes of action arising from 'commercial speech'" are categorically exempted from the anti-SLAPP statute and reference to *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002), *see* Opp. at 9, are unavailing. *See All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.*, 183 Cal. App. 4th 1186, 1215 (2010) ("We also reject Dr. Bronner's argument that the legislative history makes clear that the Legislature intended to exclude from the anti-SLAPP procedure *all* causes of action targeting commercial speech, as defined by *Kasky*…."). Plaintiffs' assertion that permitting Random House the protection of the anti-SLAPP procedure "'would eviscerate the unfair business practices laws,'" *see* Opp. at 10 (quoting *Jewett v. Capital One Bank*, 113 Cal. App. 4th 805, 815 (2003)), is a similarly erroneous overstatement. The *Jewett* court made this statement in rejecting the proposition that credit card solicitations are matters of "public interest" merely because they remotely relate to the broader issue of "consumer credit." *Jewett* at 815. Here, however, as detailed *infra* Section II.B, the connection between Random House's statements and an issue of public interest – Armstrong, his life, and his memoir – is direct.

### D.   The Exception for Speech That Constitutes Criminal Conduct Does Not Apply

Plaintiffs also claim immunity from Random House's motion because "the anti-SLAPP statute cannot protect false and misleading statements made by Armstrong in furtherance of his underlying illegal activity, including drug trafficking and criminal conspiracy." *See* Opp. at 6. A very limited exception from the anti-SLAPP statute exists for certain forms of speech or petitioning activity that are criminally illegal as a matter of law and thus could not possibly constitute conduct "in furtherance of the person's right of petition or free speech" within the meaning of the statute. *See Flatley*, 39 Cal. 4th at 332 n.16 ("We emphasize that our conclusion that Mauro's communications constituted criminal extortion as a matter of law are based on the specific and extreme circumstances of this case."). This exception does not apply for two reasons.

1        First, this exception does not apply to Random House's motion, which seeks to protect

2   *Random House's* statements and not *Armstrong's* alleged crimes.  The exception applies only if the

3   very speech or petitioning activity a party seeks to protect through the anti-SLAPP procedure is a

4   crime.  *See id.* at 320 ("the defendant is precluded from using the anti-SLAPP statute" if the

5   "*assertedly protected speech or petition activity* was illegal as a matter of law" (emphasis added)).

6   Random House's motion seeks to protect only its own representations, not Armstrong's allegedly

7   criminal conduct.  Therefore, the *Flatley* exception does not apply to Random House's motion.

8        Second, the exception applies only if "either the defendant concedes, or the evidence

9   conclusively establishes, that the assertedly protected speech or petition activity was illegal as a

10  matter of law."  *See id.*  Random House most certainly does not concede its conduct was criminal,

11  and Plaintiffs provide no explanation whatsoever regarding how Random House's representations

12  could possibly constitute crimes as a matter of law.

13       Section 425.17 and *Flatley* provide three narrowly defined exemptions from the anti-SLAPP

14  statute, and Plaintiffs have failed to demonstrate that any of them applies.  Accordingly, Plaintiffs

15  cannot avoid the two-pronged anti-SLAPP analysis provided by Section 425.16(b)(1).  Pursuant to

16  that analysis, as detailed below, Random House prevails.

17  **II.    RANDOM HOUSE HAS MET ITS BURDEN OF DEMONSTRATING THAT
         PLAINTIFFS' CLAIMS ARE SUBJECT TO THE ANTI-SLAPP STATUTE**

18       As detailed in its moving papers, Random House's burden at the first step of the anti-SLAPP

19  analysis is to demonstrate that its statements were "in furtherance" of its right of free speech "in

20  connection with a public issue."  *See* Mot. at 3; Cal. Code Civ. Proc. § 425.16(b)(1).  Random

21  House's descriptions of *Every Second Counts* as a "biography" and of Armstrong as the Tour de

22  France "winner" satisfy this statutory requirement in two ways.  First, the statements qualify as

23  "communicative" conduct connected to a topic of public interest, i.e., Armstrong's life and cycling

24  career and his autobiographical memoir.  *See* Mot. at 4; Cal. Code Civ. Proc. § 425.16(e)(4).[3]

25

26  [3] *See also Hilton v. Hallmark Cards*, 599 F.3d 894, 904 (9th Cir. 2010) ("It seems to suffice . . . that
    the defendant's activity is communicative, and some courts do not discuss this part of the inquiry at
27  all.  Thus, the courts of California have interpreted this piece of the defendant's threshold showing
    rather loosely." (citations omitted)).

28

1   Second, the statements were made in and on a bestselling book, *see* Random House's Notice of

2   Lodging (Dkt. No. 39), and on Random House's website, *see* Declaration of Kevin P. Roddy in

3   Support of Opposition to Motion to Strike, Ex. K (Dkt. No. 66-4).[4]   Accordingly, the statements

4   qualify as "any written or oral statement or writing made in a place open to the public or a public

5   forum in connection with an issue of public interest."   *See* Mot. at 4; Cal. Code Civ. Proc. §

6   425.16(e)(3).[5]   Simply stated, Plaintiffs' claims challenge acts that are quintessentially "in

7   furtherance of" freedom of speech: the publication of a book and a description of it by the publisher.

8   There can be no doubt that the anti-SLAPP statute applies.

9        In their Opposition, Plaintiffs argue that Random House has not met its threshold burden

10  under Section 425.16(b)(1) because "false and misleading statements" are not protected by the First

11  Amendment.   *See* Opp. at 12-13 (citing *United States v. Alvarez*, 132 S. Ct. 2537, 2545 (2012)).[6]

12

13  [4] For the purposes of this motion, Random House does not dispute the accuracy or authenticity of
    Plaintiffs' print-out from Random House's website, which shows *Every Second Counts* described as
14  "Biography & Autobiography – Sports."   Random House notes, however, that this print-out is
    irrelevant, since it is dated May 1, 2013, which is after Plaintiffs filed this action.   *See Fink v. Time*
15  *Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) ("Plaintiffs' submission is perplexing.   The
    advertisement that they offer is dated August 7, 2009 – nine months *after* Plaintiffs filed suit.").

16  [5] Plaintiffs' Opposition to Armstrong's anti-SLAPP motion, *see* Dkt. No. 64 at 16, cites *Lafayette*
    *Morehouse, Inc. v. Chronicle Publ'g Co.*, 37 Cal. App. 4th 855 (1995), and *Weinberg v. Feisel*, 110
17  Cal. App. 4th 1122 (2003), for the proposition that newspapers do not constitute a "public forum"
    within the meaning of this statute, because the public cannot freely publish its opinions in them.
18  However, in 1997, the California Legislature amended Section 425.16 to state that this section "shall
    be construed broadly."   That amendment was intended specifically to overrule the restrictive
19  interpretation of Section 425.16 represented by cases like *Lafayette Morehouse* and those that
    followed it.   *See Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1114, 1120
20  (1999) ("the Legislature expressly has rejected *Zhao v. Wong*'s [48 Cal. App. 4th 1114 (1996)]
    analysis and narrowing approach"); *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468,
21  478 (2000) ("Both *Zhao* and *Lafayette Morehouse* predate the 1997 amendment requiring a broad
    interpretation of section 425.16.").   Since that time, courts have repeatedly rejected restrictive
22  interpretations of the anti-SLAPP statute, instead construing "public forum" broadly to include any
    "communication vehicle that is widely distributed to the public and contains topics of public
23  interest."   *See Damon* at 478; *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1038 (2008)
    (rejecting *Lafayette Morehouse* and *Weinberg*); *Moreau v. Daily Independent*, No. 1:12-cv-01862,
24  2013 WL 85362, at *4 (E.D. Cal. Jan. 8, 2013) (same).   *Every Second Counts* easily satisfies this
    standard.
25
    [6] Plaintiffs piece together excerpts from *Alvarez* in a way that mischaracterizes that case.   Instead,
26  the Court affirmed that it "has never endorsed the categorical rule the Government advances: that
    false statements receive no First Amendment protection."   *See Alvarez* at 2545.
27

28

Plaintiffs also contend that "[a]dvertisements concerning a commercial product" are categorically excluded from the anti-SLAPP statute's protections because they "'do not involve a matter of public interest.'"  *See* Opp. at 15.  Neither argument has any merit.

### A.   The First Step of the Anti-SLAPP Analysis Does Not Require Random House to Prove the Merits of Its First Amendment Defense

According to Plaintiffs, Random House has not met its threshold burden because the FAC "targets false and misleading statements" about *Every Second Counts*.  *See* Opp. at 12-13.  Since false advertising is not "protected" by the First Amendment, so Plaintiffs explain, Random House's statements are not "protected" by the anti-SLAPP statute.

Plaintiffs misconstrue the nature of the anti-SLAPP movant's threshold burden.  Random House need not prove the *merits* of its First Amendment defense to establish that its conduct is subject to the anti-SLAPP statute's protections.  In *Navellier v. Sletten*, the California Supreme Court rejected this exact argument: "'The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish her actions are constitutionally protected under the First Amendment as a matter of law.  If this were the case then the [secondary] inquiry as to whether the plaintiff has established a probability of success would be superfluous.'"  29 Cal. 4th 82, 94-95 (2002) (quoting *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 305 (2001)).  Plaintiffs confuse and conflate Random House's burden in the first prong of the anti-SLAPP analysis with their own burden, under the second prong, of demonstrating a probability of prevailing on the merits.  Plaintiffs remark that "the proverbial cart cannot be put before the horse," *see* Opp. at 12, but that is exactly what they have done here.

### B.   Ads for a Commercial Product Are Not Categorically Excluded From the Anti-SLAPP Statute's Protection

Plaintiffs also claim that Random House has not met its threshold burden because its statements constitute "'commercial speech,'" citing *Kasky*, 27 Cal. 4th at 969, and that "[a]dvertisements concerning a commercial product" are categorically excluded from the anti-SLAPP statute's protections because they "'do not involve a matter of public interest.'"  *See* Opp. at 15.  Both premises are incorrect.  The first premise in Plaintiffs' argument fails because, as detailed

RANDOM HOUSE'S REPLY BRIEF IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE
CASE NO. 2:13-CV-00116-MCE-KJN

LA1 2761764v.8

1   *infra* Section III.B, Plaintiffs have not demonstrated that Random House's statements are

2   "commercial speech" under applicable First Amendment jurisprudence.

3         Plaintiffs' second premise also fails, because ads for commercial products are *not*

4   categorically excluded from the anti-SLAPP statute's protection.  *See Vess v. Ciba-Geigy Corp.*

5   *USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) ("Nothing in the statute itself categorically excludes any

6   particular type of action from its operation . . . ." (quoting *Navellier*, 29 Cal. 4th at 92)); *Stewart v.*

7   *Rolling Stone LLC*, 181 Cal. App. 4th 664, 678 (2010) ("Plaintiffs have not provided us with any

8   authority for the proposition that commercial speech is categorically disentitled to protection under

9   the anti-SLAPP statute.").  Plaintiffs' cases do not support any such rule and stand instead for the

10   limited proposition that an advertisement does not satisfy the "public interest" requirement merely

11   by virtue of the fact that it is disseminated widely and may affect a large number of people.[7]

12   Random House makes no such argument here.

13         Instead, Random House has argued that its descriptions of Armstrong as a Tour de France

14   "winner" and of Armstrong's book as a "biography" are "in connection with a public issue," *see* Cal.

15   Code Civ. Proc. § 425.16(b)(1), because they pertain to a world famous athlete, the very public

16   controversy over his use of performance-enhancing drugs, his struggle to overcome cancer, and his

17   denials of drug use in his autobiography.  *See* Mot. at 4-5.  Random House's statements are directly

18   connected to these topics of public interest and therefore easily satisfy this element.  *See Hilton*, 599

19   F.3d at 907 ("The connection 'between the challenged statements' - the birthday card – 'and the

20   asserted public interest' – [Paris] Hilton's life, image, and catchphrase - is direct.").  Plaintiffs offer

21   no response to this argument.

22

---

23   [7] *See All One God Faith, Inc.*, 183 Cal. App. 4th at 1209 ("the mere fact that a large number of
people may be affected by advertising does not, standing alone, satisfy the public interest
24   requirement"); *Scott v. Metabolife Int'l, Inc.*, 115 Cal. App. 4th 404, 423 (2004) (rejecting the notion
that "simply because a lawsuit affects a large number of consumers and involves a life-threatening
25   illness, it will satisfy the public interest requirement of the statute"); *Consumer Justice Ctr. v.*
*Trimedica Int'l, Inc.*, 107 Cal. App. 4th 595, 602 (2003) ("[the product] does not qualify as a matter
26   of public interest by examining either 'the number of persons allegedly affected' or 'the seriousness
of the conditions treated'").  Plaintiffs' attempted analogy to *Rezec v. Sony Pictures Entm't, Inc.*, 116
27   Cal. App. 4th 135, 143 (2004) (rejecting argument that wide dissemination of ads *ipso facto* satisfies
"public interest" requirement), fails for the same reason.  *See* Opp. at 14 n.10.

28

RANDOM HOUSE'S REPLY BRIEF IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE
CASE NO. 2:13-CV-00116-MCE-KJN

### III. PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF DEMONSTRATING A PROBABILITY OF PREVAILING ON THE MERITS

The anti-SLAPP statute "is intended to bring about an early test of the merits," and Plaintiffs have flunked that test. *See Vogel v. Felice*, 127 Cal. App. 4th 1006, 1014 (2005). Random House has demonstrated that all claims fail for at least four independent reasons: Random House's lack of scienter, the First Amendment, the facial implausibility of Plaintiffs' false advertising theory, and Plaintiffs' lack of reliance. *See* Mot. at 6-16. Plaintiffs' Opposition does nothing to overcome this showing, much less prove that Plaintiffs have a probability of prevailing on any of these grounds.[8]

#### A. Plaintiffs' Theory of When Random House Purportedly Knew Armstrong Was Lying is Implausible

Random House has demonstrated that, as a matter of law, scienter – specifically, that Random House either knew or should have known that its statements were false – is a required element of all of Plaintiffs' claims, since the First Amendment does not countenance strict liability. *See* Mot. at 11. Plaintiffs' Opposition concedes this point. Instead, Plaintiffs argue their claims survive because Random House supposedly possessed the requisite scienter at some point between "approximately May 2010" and "January 2013." *See* Opp. at 17-18, 19 n.14. Random House purportedly knew Armstrong was lying "[a]s a result of public revelations published or broadcast by *The New York Times* (May 2010), *Sports Illustrated* (January 2011) and CBS News *60 Minutes* (May 2011)." *Id.* at 16. Plaintiffs' argument fails.

As an initial matter, Plaintiffs' attempt to substantiate Random House's scienter in this way – i.e., through public revelations beginning in May 2010 – concedes the absence of any plausible claim that Random House knew or reasonably should have known Armstrong was lying *before* May 2010.[9] *See Neu v. Terminix Int'l, Inc.*, No. C 07-6472, 2008 WL 2951390, at *4 (N.D. Cal. July 24, 2008)

---

[8] In addition, Plaintiffs do not even respond to the other arguments made by Random House that were directed to specific causes of action. *See* Mot. at 16-20.

[9] Indeed, Plaintiffs' submissions – which demonstrate that Armstrong fooled both his U.S. government sponsor and the U.S. Anti-Doping Agency – only provide further support for Random House's *lack* of scienter. *See* Plaintiffs' Request for Judicial Notice, Ex. A (Dkt. No. 67-1) ¶ 65 ("As to each such false representation, the United States was ignorant of its falsity and believed it to be true."); *id.*, Ex. C (Dkt. No. 67-3) at 155 (Armstrong's lies "precluded the earlier discovery of his doping by the USADA.").

RANDOM HOUSE'S REPLY BRIEF IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE
CASE NO. 2:13-CV-00116-MCE-KJN

LA1 2761764v.8

("Even where Plaintiff has alleged false or misleading statements that could support a fraud claim, she has not alleged facts to support a finding that Defendants knew that those statements were false when made.  Plaintiff's [UCL, FAL, and CLRA] claims are dismissed without leave to amend.").  Plaintiffs thus concede that they cannot prevail on the merits with respect to anyone in the putative class who bought *Every Second Counts* between January 2003 and May 2010.  *See* FAC ¶ 98.

Plaintiffs' attempt to substantiate claims arising *after* May 2010 also fails.  Random House does not dispute that Armstrong's alleged use of performance-enhancing drugs was a hotly debated topic in the world media for many years.  The material point, however, is that there was nothing special regarding Random House in this respect.  If Random House knew or reasonably should have known Armstrong was lying because of a *Sports Illustrated* or *New York Times* article, then so should Plaintiffs themselves, which undermines any contention that Plaintiffs could plausibly have been deceived by Random House.  The implausibility of Plaintiffs' theory in this respect is starkly illustrated by Plaintiffs' own inconsistent allegations.  According to Plaintiffs, Random House "knew or should have known" Armstrong was lying by virtue of a May 2010 report in *The New York Times* stating that another cyclist, Floyd Landis, had accused Armstrong of doping.  *See* Opp. at 17-18; FAC ¶ 63.  Yet Plaintiffs purportedly neither knew nor reasonably should have known Armstrong was lying until August 2012 "and/or" October 2012, when the U.S. Anti-Doping Agency took action against Armstrong.  *See* Opp. at 19-20; FAC ¶¶ 105-06.  Plaintiffs provide no explanation for this inconsistency in their allegations, because there is none.

Moreover, the relevant issue is not whether Random House knew or reasonably should have known Armstrong was lying, but rather whether Random House knew or reasonably should have known that its descriptions of the book as "biography" and of Armstrong as the Tour de France "winner" were false.  Thus, even if Plaintiffs had substantiated their theory of Random House's scienter, it would not overcome the fundamental defect in their false advertising theory that Armstrong's lies do not render Random House's statements false.[10]  *See infra* Section III.C.

---

[10] Plaintiffs question why Random House, "despite a steady stream of revelations concerning Armstrong's pattern of wrongdoing," did not take "any steps to correct" its ads and continued to sell *Every Second Counts* as "nonfiction biograph[y]."  *See* Opp. at 18.  Plaintiffs fail to supply any legal

LA1 2761764v.8

Even more importantly, Plaintiffs' theory of when Random House knew or reasonably should have known Armstrong was lying is implausible because it reflects a fundamental misunderstanding of Random House's relationship to the books it publishes.  Random House publishes books by thousands of authors with many opposing points of view; it does not arbitrate between competing narratives and publish only those deemed to be the "true" account.  Indeed, the role Random House plays in facilitating public discussion of disputed issues is aptly demonstrated by Plaintiffs themselves, who point out that, in 2007, Random House published a book by another author claiming Armstrong *did* use performance-enhancing drugs.  *See* Opp. at 4.  Plaintiffs' contention that Random House must monitor the progress of public debate on issues implicated in the thousands of books it publishes every year and adjust its publishing conduct accordingly has no basis in the law.  Random House provides a voice for the expression of different sides of a debate; it does not pick sides.  And that is exactly how it should be.  *See New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710 (1964) ("The First Amendment, said Judge Learned Hand, 'presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection.  To many this is, and always will be, folly; but we have staked upon it our all.'" (quoting *United States v. Associated Press*, 52 F. Supp. 362, 372 (S.D.N.Y. 1943))).

## B.  Plaintiffs' Claims Do Not Survive Random House's First Amendment Defense

This false advertising lawsuit differs from many false advertising suits in that Plaintiffs' claims challenge a book publisher's attempt to publicize an unequivocally protected First Amendment text.  Plaintiffs' claims thus directly implicate serious First Amendment considerations.[11]  As demonstrated in Random House's moving papers, *see* Mot. 7-10, Plaintiffs'

---

authority imposing such an obligation on Random House, much less explain why Random House had any obligation to "correct" its statements, when the "revelations" regarding Armstrong's wrongdoing did not contradict those statements.  Moreover, as detailed in Defendant Penguin Group (USA), Inc.'s Reply Brief in support of its Motion to Dismiss, which Random House incorporates herein by reference, Plaintiffs' argument fails as a matter of law because of the single-publication rule, which limits tort claims premised on mass communications to a single cause of action that accrues upon the first publication of the communication.  *See* Penguin Reply Brief at 18-20 (citing Cal. Civ. Code § 3425.3).

[11] The absence of similar First Amendment considerations in cases cited by Plaintiffs that involved labeling for products like dietary supplements, *see Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39 (2003), or bottles of wine, *see Bronco Wine Co. v. Jolly*, 129 Cal. App. 4th 988 (2005), undermines

1    claims violate various First Amendment principles, which provide a complete defense.

2         First, Plaintiffs seek to hold Random House liable *not* because Random House

3    misrepresented what Armstrong says in *Every Second Counts* but rather because Random House

4    allegedly misrepresented the ultimate truth of those statements.  Plaintiffs' claims accordingly

5    contravene the Ninth Circuit's mandate that book publishers are not the "guarantor" of the author's

6    factual statements.  *See* Mot. at 7-8 (citing *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9th Cir.

7    1991)).[12]  Second, by classifying the book's contents within the Library of Congress classification

8    system ("biography") and providing background respecting one of the author's accomplishments

9    ("Tour de France winner"), Random House's statements do more than "propose a commercial

10   transaction" and therefore constitute non-commercial speech or, at the very least, "inextricably

11   intertwined" speech – both of which are entitled to full First Amendment protection.  *See* Mot. at 8-

12   9.  Third, irrespective of whether these statements constitute commercial speech, Random House's

13   statements are truthful descriptions of a text that is itself fully protected by the First Amendment.

14   Random House's statements therefore fall within the "adjunct use" exception.  *See* Mot. at 9-10.

15        The Opposition provides this Court with no basis for concluding that Plaintiffs have a

16   probability of prevailing on any of these issues.  Plaintiffs have no response to Random House's

17   demonstration that liability under Plaintiffs' theory would impose a fact-checking duty on Random

18   House that cannot be imposed as a matter of law – other than to simply assert without analysis or

19   explanation that "this case will not impose a duty to verify."  *See* Opp. at 18 n.13.[13]  In addition,

20   Plaintiffs ignore entirely the "adjunct use" exception.

21

22   Plaintiffs' attempt to analogize this action to such cases.  *See* Opp. at 18.

23   [12] Plaintiffs try to distinguish *Winter*, *see* Opp. at 18 n.13, on the ground that *Winter*, unlike this
     action, "involved a products liability claim" and the potential imposition of "strict liability," which is
24   neither true nor material.  *See Winter*, 938 F.2d at 1034 ("In their suit against the book publisher,
     plaintiffs allege liability based on products liability, *breach of warranty, negligence, negligent*
25   *misrepresentation, and false representations*." (emphasis added)).

26   [13] In fact, earlier in the Opposition, Plaintiffs impugn Random House for failing to verify, citing
     Random House's failure to take "constructive steps to investigate serious charges being leveled
27   against Armstrong by credible sources" and subsequent alleged failure to "withdraw" the book from
     sales channels.  *See* Opp. at 4.  Plaintiffs cannot have it both ways.

28

With respect to whether Random House's statements constitute commercial speech, Plaintiffs simply proclaim that they do and argue that their claims "fit squarely within *Keimer* [*v. Buena Vista Books, Inc.*], 75 Cal. App. 4th 1220," *see* Opp. at 17.[14]  However, *Keimer* provides Plaintiffs no support for multiple reasons, as Random House has already pointed out.  *See* Mot. at 10 n.7.  In particular, *Keimer* did *not* hold that the false ads "violat[ed] the UCL and FAL."  *See* Opp. at 17.  The court held that, if ads constitute commercial speech and the plaintiffs have alleged them to be false in the complaint, the claims survive the lenient state court demurrer standard.  *See Keimer* at 1230 ("Appellant's complaint alleges that the investment return claims made on the book and videotape covers, which we have held to be commercial speech, were false.  Accepting these allegations as true, we must conclude that the complained of statements are entitled to no First Amendment free speech protections.").  Here, however, Plaintiffs have demonstrated neither that the statements are commercial speech nor that they are false.[15]

_____

[14] *Keimer* is the principal case relied on by Plaintiffs in support of their First Amendment argument. Elsewhere in the Opposition, Plaintiffs cite several other cases to support their assertion that the First Amendment does not protect "culpable falsehoods" or "[f]alse and misleading advertising."  *See* Opp. at 13.  These sweeping statements are unavailing because, as detailed throughout Random House's briefs, Plaintiffs have failed to show that (1) Random House's statements were commercial speech, (2) the statements were false, or (3) Random House was culpable, i.e., possessed the requisite scienter.  Moreover, Plaintiffs provide no analysis of the cases cited, and for good reason: they are factually and legally inapposite.  *See In re Grand Jury Matter*, 764 F.2d 983, 985 (3d Cir. 1985) (affirming validity of grand jury subpoena for documents relating to criminal mail and wire fraud investigation); *Kasky*, 27 Cal. 4th at 946 (accepting as true plaintiffs' allegation that ads were false for purposes of demurrer); *People v. Custom Craft Carpets, Inc.*, 159 Cal. App. 3d 676, 683 (1984) (affirming constitutionality of injunction requiring "an advertiser, found to have previously misled the public, to substantiate its advertising claims").

[15] Plaintiffs miss the point when they assert that "[n]othing in *Charles v. City of Los Angeles*, 697 F.[3d] 1146, 1155 (9th Cir. 2012), suggests that *Keimer* is not good law."  *See* Opp. at 17 n.12.  In *Charles* – which, unlike *Keimer*, is binding precedent here – the Ninth Circuit did not *explicitly* disapprove of *Keimer*, but it did affirm that the court's analysis of the "incidental use" exception to commercial speech principles in *Lacoff v. Buena Vista Publ'g, Inc.*, 183 Misc. 2d 600, 705 N.Y.S. 2d 183 (N.Y. Sup. Ct. 2000), was consistent with what, in the Ninth Circuit, is called the "adjunct use" exception.  *See Charles* at 1154-55.  Because *Keimer*'s First Amendment analysis directly contradicts *Lacoff*'s analysis regarding the exact same ads, *Charles* strongly suggests that *Keimer*'s First Amendment analysis should not be followed here.

1

**C.    Plaintiffs Fail to Explain, Much Less Substantiate, the Plausibility of Their Fundamental Theory of Why Random House's Statements Are False**

2

3    Plaintiffs have also failed to provide any explanation or substantiation for their basic theory

4    of Random House's false advertising liability, i.e., the fact that Armstrong lied in *Every Second*

5    *Counts* renders Random House's description of the book as "biography" and Armstrong himself as

6    the "winner" of the Tour de France false, and thus actionable pursuant to California law.  Indeed,

7    Plaintiffs' Opposition completely ignores Random House's contention that the FAC fails to

8    plausibly allege any *false* ads or representations by Random House.  *See* Mot. at 13-15.  Like the

9    FAC itself, the Opposition simply recites Plaintiffs' theory – that the book was sold as "nonfiction"

10   and "biograph[y]" even though it was a "work[] of fiction" – but utterly fails to explain why that

     theory is plausible.  *See* Opp. at 18.

11

12   As Random House has shown, *see* Mot. at 13-15, the words "biography" and "nonfiction" do

13   not plausibly imply that every statement within *Every Second Counts* is verifiably true.  *See*

14   *Greenspan v. Random House, Inc.*, 859 F. Supp. 2d 206, 220 (D. Mass. 2012) ("[t]he term nonfiction

15   only means that the literature is based on true stories or events, not that every statement is in fact

     demonstrably true"), *aff'd*, 2012 WL 5188792 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1811 (2013).

16

17   Plaintiffs chide Random House for not labeling the book as "fiction" instead.  *See* Opp. at 19 (citing

18   *Rosemont Enters., Inc. v. Irving*, 49 A.D. 2d 445, 375 N.Y.S. 2d 864 (App. Div. 1975).[16]  This

19   suggestion is absurd and only underscores Plaintiffs' unreasonable and implausible interpretation of

20   "nonfiction" and "biography."[17]

21   [16] *Rosemont Enterprises* is factually and legally inapposite.  *See id.* at 449 (publication of a fictionalized autobiography of Howard Hughes labeled as "fiction" did not fall within the scope of a prior injunction, which only "restrained defendants from representing that they were entitled to

22   publish the manuscript as an authorized biography or autobiography of Howard Hughes").

23   [17] The Opposition barely mentions, much less substantiates, Plaintiffs' theory that Random House falsely described Armstrong as a Tour de France "winner."  *See* FAC ¶ 96 ("From January 2003 to

24   the present," Random House "fraudulently and/or negligently" promoted *Every Second Counts*, including by "representing Armstrong as 'The five-time Tour de France winner.'").  As detailed in

25   Random House's Motion, *see* Mot. at 14-15, "winner" neither states nor implies that Armstrong won *without doping*.  Plaintiffs' Opposition to Armstrong's anti-SLAPP motion, *see* Dkt. No. 64 at 2,

26   notes that, in October 2012, Armstrong was officially stripped of his titles.  But that Armstrong was *later* stripped of his titles does not contradict that Armstrong "won" the Tour de France to begin

27   with.  *See* Mot. at 15.  Moreover, even if Armstrong's October 2012 disqualification could support a plausible claim for relief, it would do so only for those consumers who were induced to buy the book

28

17

1    Though Random House's use of "nonfiction" provides no basis for Plaintiffs' claims in any

2    event, Random House notes that Plaintiffs have failed to provide any evidence of Random House's

3    alleged use of this term in connection with *Every Second Counts*.  Plaintiffs repeatedly contend that

4    their claims are premised on some variation of the description of *Every Second Counts* as a "true and

5    honest work of non-fiction biography."  *See, e.g.,* Opp. at 16 (claiming *Every Second Counts* was

6    "advertised and sold as [a] truthful work[] of nonfiction biography"); FAC ¶ 115 (Random House

7    allegedly misrepresented *Every Second Counts* as "a true and honest work of non-fiction

8    biography").  At the very least, Plaintiffs could have submitted a declaration attesting to the

9    language they saw and relied on.  They did not.[18]  Instead, Plaintiffs assert that "nonfiction" was

10    used to describe *Every Second Counts* in *The New York Times*'s book review and bestseller list, *see*

11    Opp. at 4 n.4, but Random House cannot be held accountable for these representations.[19]  Plaintiffs

12    have failed to explain or substantiate the plausibility of their theory and therefore have failed to

13    demonstrate a probability of prevailing on the merits of that theory for the purposes of this Motion.

14        **D.    Plaintiffs Fail to Substantiate Reliance on Any Statements by Random House**

15        Plaintiffs also have no explanation or substantiation for their allegation that they relied on

16    Random House's description of *Every Second Counts* as "biography" and of Armstrong as a Tour de

17    France "winner" in purchasing the book.  The FAC pleads very specific facts regarding what

18    induced Plaintiffs to buy *Every Second Counts*, and these allegations are inconsistent with any

19    plausible contention that Plaintiffs relied instead on Random House's statements.  *See* Mot. at 15-16

20    & Random House's Motion to Dismiss (Dkt. No. 37) at 5-6.

21        In response to Random House's argument, Plaintiffs can muster only the most conclusory of

---

22    after October 2012.  That would exclude the Named Plaintiffs themselves, who invoke the
      "discovery rule" to toll the accrual of their claims until August 2012, which entails they must have
23    bought the book before then.  *See* Opp. at 19-20.

24    [18] As detailed *infra* Section IV, Plaintiffs have demanded discovery relating to Random House's
      representations regarding *Every Second Counts*.  However, as the Second Circuit recently declared
25    in dismissing false advertising claims for lack of facial plausibility, "Plaintiffs brought this lawsuit,
      and purported to do so based upon the *specific* text of a *specific* advertisement.  They should not
26    need discovery to tell them exactly what that advertisement said."  *See Fink*, 714 F.3d at 742.

      [19] *See K & N Eng'g, Inc. v. Spectre Performance*, No. EDCV 09–01900, 2011 WL 6133258, at *10
27    (C.D. Cal. Dec. 8, 2011) ("[The UCL and FAL] do not authorize claims for vicarious liability based
      upon the failure to control another party's advertisements.").

28

allegations of reliance – and one that is not supported by Plaintiffs' FAC or any evidence.  *See* Opp. at 16-17 ("Plaintiffs allege that they saw and relied upon advertisements for the Armstrong Books and the media campaign carried out by the Publisher Defendants.  They were misled by Defendants' statements and purchased the Armstrong Books based on the false belief that they were truthful and honest works of nonfiction biography.").  Glaringly absent from the hundreds of pages of material submitted by Plaintiffs in support of their Opposition is even a single declaration from any of the Named Plaintiffs to substantiate the most basic circumstances of their purchase of *Every Second Counts*, including that Plaintiffs saw and relied on the statements at issue.  *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1027 (N.D. Cal. 2012) (dismissing FAL claim for failure to plead reliance because plaintiffs referred generically to "advertisements" and "promotional materials" but "never alleged reliance on any specific representation or advertising").  Plaintiffs may not simply rely on their allegations in the FAC.  Without any admissible evidence to substantiate their allegations of reliance, Plaintiffs have not demonstrated a probability of prevailing on the merits. *See Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1051 (E.D. Cal. 2008) ("In opposing the Anti-SLAPP motion, Plaintiff cannot simply rely on [his] pleadings, even if verified, but must adduce competent, admissible evidence to establish a probability of prevailing on the merits." (internal quotation marks omitted)); *Paiva v. Nichols*, 168 Cal. App. 4th 1007, 1017 (2008) (same).

## IV.   PLAINTIFFS DO NOT NEED DISCOVERY TO RESPOND TO RANDOM HOUSE'S MOTION

Finally, Plaintiffs contend that they need wide-ranging discovery relating to a host of issues raised in their 85-page complaint in order to properly respond to Random House's motion.  *See* Opp. at 5.  This is nonsense, for all of the reasons specified by the Defendants in the Corrected Joint Statement Re Discovery Disagreement (Dkt. No. 70 at 35-55) ("Joint Statement"), which Random House incorporates here.

Plaintiffs' first two categories pertain to discovery showing that Armstrong lied about using performance-enhancing drugs and that his use of those drugs was illegal.  *See* Joint Statement at 22-28.  But further proof that Armstrong lied – a point that neither Random House nor even Armstrong disputes – is not needed to determine whether Random House's statements are protected by the anti-

19

1  SLAPP statute.  Similarly, proof of the allegedly criminal illegality of Armstrong's underlying

2  conduct does not preclude Random House's Motion.  *See supra* Section I.D.

3       Plaintiffs also claim the need for discovery to demonstrate that Random House's statements

4  constituted "commercial speech" as a matter of First Amendment law.  *See* Joint Statement at 28.

5  But Plaintiffs do not explain how any of the requested discovery will tend to show Random House's

6  statements are commercial or not.  On the contrary, this determination can readily be made as a

7  matter of law.  *See Stewart*, 181 Cal. App. 4th at 683 ("We disagree with the [trial] court's decision

8  to defer the issue to a trier of fact, and conclude the [speech at issue in the anti-SLAPP motion] is

9  noncommercial speech as a matter of law.").

10      Finally, Plaintiffs claim the need for discovery to show Random House's scienter, *see* Joint

11 Statement at 31-32, but none of the requested discovery would remedy the legal defects in Plaintiffs'

12 allegations of scienter.  *See supra* Section III.A.  Discovery relating to the representations regarding

13 *Every Second Counts* on which Plaintiffs premise their claims is likewise not necessary.  Proving the

14 book was in fact labeled "biography" and/or "nonfiction" would not remedy the defects in Plaintiffs'

15 theory, which fails regardless of whether these representations were made.  *See supra* Section III.C.

16 **CONCLUSION**

17      For these and all other reasons detailed above, and since amended pleading is precluded by

18 the anti-SLAPP statute's purpose of providing a quick, inexpensive method of dismissing SLAPP

19 suits, Random House respectfully requests that the Court grant its motion and dismiss all claims

20 against Random House, Broadway Books, and Crown Publishing Group with prejudice.

21 Dated:  July 12, 2013             Respectfully submitted,

22

23                               SIDLEY AUSTIN LLP

24                               By: /s/ Stephen G. Contopulos

25                               Stephen G. Contopulos
                                 Attorneys for Defendant Random House, LLC,

26                               successor-in-interest to Random House, Inc.,
                                 also erroneously sued as Broadway Books and

27                               Crown Publishing Group

28

RANDOM HOUSE'S REPLY BRIEF IN SUPPORT OF ANTI-SLAPP MOTION TO STRIKE
CASE NO. 2:13-CV-00116-MCE-KJN