Stephen G. Contopulos, SBN 50317
scontopulos@sidley.com
Bradley H. Ellis, SBN 110467
bellis@sidley.com
Alex Doherty, SBN 261552
adoherty@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Defendant Random House, LLC, successor-in-interest to Random House, Inc., also erroneously sued as Broadway Books and Crown Publishing Group

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

ROB STUTZMAN, JONATHAN WHEELER, GLORIA LAURIA, DAVID REIMERS and SCOTT ARMSTRONG, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

LANCE ARMSTRONG; PENGUIN GROUP (USA), INC.; G.P. PUTNAM'S SONS; THE BERKLEY PUBLISHING GROUP; RANDOM HOUSE, INC.; BROADWAY BOOKS; CROWN PUBLISHING GROUP; THOMAS W. WEISEL; WILLIAM J. STAPLETON; and DOES 1-50, inclusive,

Defendants.

**CASE No. 2:13-cv-00116-MCE-KJN**

**DEFENDANTS RANDOM HOUSE, LLC, BROADWAY BOOKS, AND CROWN PUBLISHING GROUP'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Date: August 8, 2013
Time: 2:00 p.m.
Location: Courtroom 7, 14th Floor
Judge: The Honorable Morrison C. England, Jr.

# TABLE OF CONTENTS

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. PLAINTIFFS' "SUMMARY OF FACTUAL ALLEGATIONS" CANNOT REMEDY THE DEFECTS IN THE FIRST AMENDED COMPLAINT ..... 2

II. ALL CLAIMS AGAINST RANDOM HOUSE FAIL AS A MATTER OF LAW FOR FOUR INDEPENDENT REASONS ..... 3

A. The First Amendment Bars All Claims Against Random House ..... 3

1. *Keimer* and *Kasky* Provide Plaintiffs No Support ..... 5

2. Plaintiffs' Attempt to Obscure the First Amendment Analysis of Random House's Statements Fails ..... 7

B. Plaintiffs' Theory of Random House's False Advertising Liability is Facially Implausible ..... 8

C. Plaintiffs' Allegations of Random House's Scienter Fail as a Matter of Law ..... 10

D. Plaintiffs' Allegations of Random House's Reliance Fail as a Matter of Law ..... 10

III. PLAINTIFFS FAIL TO RESPOND TO RANDOM HOUSE'S ARGUMENTS DIRECTED TO SPECIFIC CAUSES OF ACTION ..... 13

IV. THE COMPLAINT'S ALLEGATIONS ARE NOT PLED WITH PARTICULARITY AS REQUIRED BY FED. R. CIV. P. 9 ..... 13

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) .......... 8

*Bronco Wine Co. v. Jolly*, 129 Cal. App. 4th 988 (2005) .......... 5

*Charles v. City of Los Angeles*, 697 F.3d 1146 (9th Cir. 2012) .......... 5, 6

*Daniel v. Ford Motor Co.*, No. CIV. 2:11–02890, 2013 WL 2474934 (E.D. Cal. June 7, 2013) .......... 11

*Geiger v. Dell Publ'g Co.*, 719 F.2d 515 (1st Cir. 1983) .......... 3

*Greenspan v. Random House, Inc.*, 859 F. Supp. 2d 206 (D. Mass. 2012), *aff'd*, 2012 WL 5188792 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1811 (2013) .......... 8

*Hinojos v. Kohl's Corp.*, No. 11-55793, 2013 U.S. App. LEXIS 10185 (9th Cir. May 21, 2013) .......... 9, 13

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942 (S.D. Cal. 2012) .......... 12

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) .......... 11, 12, 13

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) .......... 5, 6, 9, 12

*Keimer v. Buena Vista Books, Inc.*, 75 Cal. App. 4th 1220 (1999) .......... 5, 6, 9

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2010) .......... 9, 13

*Lacoff v. Buena Vista Publ'g, Inc.*, 183 Misc. 2d 600, 705 N.Y.S. 2d 183 (N.Y. Sup. Ct. 2000) .......... 6

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (2012) .......... 12

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) .......... 11

*Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) .......... 8

*Petrie v. Elec. Game Card Inc.*, No. SACV 10–00252, 2011 WL 165402 (C.D. Cal. Jan. 12, 2011) .......... 2

*Red v. Kraft Foods, Inc.*, No. CV 10–1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) .......... 8

*Rice v. Sunbeam Prods., Inc.*, No. CV 12–7923, 2013 WL 146270 (C.D. Cal. Jan. 7, 2013) .......... 8, 14

*Safaie v. Jacuzzi Whirlpool Bath, Inc.*, 192 Cal. App. 4th 1160 (2011) .......... 12

*Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194 (9th Cir. 1998) .......... 2

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) .......... 14

*Ventura Group Ventures, Inc. v. Ventura Port Dist.*, 24 Cal. 4th 1089 (2001) .......... 13

*Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9th Cir. 1991) .......... 3, 4

**STATUTES AND RULES**

Cal. Bus. & Prof. Code § 17204 .......... 9

Cal. Bus. & Prof. Code § 17535 .......... 9

Cal. Civ. Code § 1780(a) .......... 9

Fed. R. Civ. P. 9 .......... 13, 14

**INTRODUCTION**

In its Motion to Dismiss (Dkt. No. 37) ("Motion"), Random House set forth several independent grounds for dismissing with prejudice all claims against it contained in Plaintiffs' First Amended Class Action Complaint (Dkt. No. 22) ("FAC"). In their Opposition to Random House's Motion ("Opposition"), Plaintiffs do everything they can to dodge the merits of Random House's arguments. But their efforts at avoidance are as futile as permitting leave to amend would be.

Plaintiffs ignore Random House's argument that their false advertising theory is not plausible. Random House also demonstrated the irremediable defects in Plaintiffs' UCL, FAL, and CLRA claims – which fail the "reasonable consumer" standard – and in the remaining common law claims – which fail for lack of cognizable damages. Again, Plaintiffs do not bother to respond.

Plaintiffs do respond to Random House's arguments respecting the First Amendment, reliance, and scienter – albeit with only vague and conclusory generalities. To Random House's First Amendment argument, Plaintiffs proclaim – without actually demonstrating anything of the sort – that the descriptions of *Every Second Counts* as "biography" and of Defendant Lance Armstrong ("Armstrong") as a "Tour de France winner" are false and constitute commercial speech. Plaintiffs similarly conclude that they relied on Random House's statements and that Random House possessed the requisite scienter. But Plaintiffs' own allegations in the FAC prove otherwise.

Notwithstanding their failure to address Random House's principal arguments, Plaintiffs manage to fill their brief's twenty pages. Plaintiffs waste one-third of their brief providing a "summary" of the FAC's allegations, which remedies nothing.

Plaintiffs also spill considerable ink castigating Armstrong for his lies and then try to confuse and conflate *Armstrong*'s falsehoods and misconduct, on the one hand, with Plaintiffs' false advertising claims against *Random House*, on the other. But Plaintiffs' attempt to tether Armstrong's lies to the claims against Random House fails. For all of its legal defects, the FAC is clear in this respect: Plaintiffs' claims against Random House arise from the purchase of a single book (*Every Second Counts*) by three Named Plaintiffs (Gloria Lauria, Jonathan Wheeler, and Scott Armstrong) and are premised on the theory that a few specific descriptions of that book and its

author ("biography," "nonfiction," and "Tour de France winner") are false. Plaintiffs contend these descriptions are false because, a decade after the book was first published, Armstrong admitted to years of lying about his drug use, including in the book itself. In short, Armstrong's repeated lies explain, according to Plaintiffs' theory, *why* Random House's statements are false, but ultimately Plaintiffs' claims are premised only on *Random House*'s statements about the book, not Armstrong's lies.

The multiple independent grounds for dismissing Plaintiffs' claims set forth in Random House's Motion remain unscathed. Plaintiffs' claims should be dismissed with prejudice.

**ARGUMENT**

## I. PLAINTIFFS' "SUMMARY OF FACTUAL ALLEGATIONS" CANNOT REMEDY THE DEFECTS IN THE FIRST AMENDED COMPLAINT

Plaintiffs spend six pages of their Opposition providing a "Summary of Factual Allegations." *See* Opposition at 2-8. The Court should ignore Plaintiffs' "summary" both because the FAC cannot be saved by allegations in an Opposition brief and because the summary itself is inaccurate.

It is axiomatic that a plaintiff may not rely on allegations in an opposition to a motion to dismiss in an effort to defeat the motion. *See Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *see also Petrie v. Elec. Game Card Inc.*, No. SACV 10–00252, 2011 WL 165402, at *4 n.2 (C.D. Cal. Jan. 12, 2011) ("[I]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." (internal quotation marks omitted)). As the Ninth Circuit emphasized, "[t]he focus of any Rule 12(b)(6) dismissal . . . is the complaint." *Schneider* at 1197 n.1. Random House's Motion sets forth substantial legal defects in the FAC, and those defects cannot be cured by Plaintiffs' Opposition.

Further, Plaintiffs' "summary" inaccurately reflects the FAC's contents. For instance, Plaintiffs contend that this "case is not about a single fly-leaf or the single identification of a book as a 'biography,' or just the material lies within the Armstrong Books, or the identification and marketing of a book as 'nonfiction.'" *See* Opposition at 4. The FAC, however, alleges otherwise,

premising all five causes of action against Random House exclusively on its alleged description (1) of *Every Second Counts* as "a true and honest work of non-fiction biography" and (2) of Armstrong as "the five-time Tour de France winner." *See* FAC ¶¶ 115 (CLRA), 131 (UCL), 140 (FAL), 152 (negligent misrepresentation), 165 (fraud and deceit). The Court should reject Plaintiffs' attempt to expand the scope of the alleged misrepresentations encompassed by their claims against Random House.

Moreover, even if Plaintiffs could amend the FAC through their Opposition, it would not matter. Nothing asserted in Plaintiffs' "summary" cures any of the FAC's defects. Indeed, the "summary" repeats several times Plaintiffs' flawed central thesis: that the alleged description of *Every Second Counts* as a "truthful work[] of nonfiction biography" is false because Armstrong lied in the book. *See* Opposition at 3-6. For all the reasons detailed below, that thesis fails as a matter of law.

## II. ALL CLAIMS AGAINST RANDOM HOUSE FAIL AS A MATTER OF LAW FOR FOUR INDEPENDENT REASONS

### A. The First Amendment Bars All Claims Against Random House

Random House has demonstrated that the First Amendment bars Plaintiffs' claims for three independent reasons. *See* Motion at 6-8. First, a claim that would impose a duty on a book publisher to verify the factual contents of a book are precluded as a matter of law. *See* Motion at 7 (citing *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1036 (9th Cir. 1991)). *Winter* bars Plaintiffs' false advertising claims because Plaintiffs do *not* contend that Random House inaccurately described the *contents* of *Every Second Counts*, but rather misrepresented the truth of those contents, i.e., that Armstrong's statements about winning the Tour de France without doping were true.[1] Second, "biography" and "Tour de France winner" are entitled to full First Amendment protection because they do not merely propose a commercial transaction and therefore qualify as

---

[1] *See also Geiger v. Dell Publ'g Co.*, 719 F.2d 515, 518 (1st Cir. 1983) ("To require a book publisher to check, as a matter of course, every potentially defamatory reference might raise the price of non-fiction works beyond the resources of the average man. This result would, we think, produce just such a chilling effect on the free flow of ideas as First Amendment jurisprudence has sought to avoid.").

non-commercial speech or, at a minimum, "inextricably intertwined" speech. *See* Motion at 7-8. Third, these statements truthfully describe the text of *Every Second Counts*, which is itself fully protected by the First Amendment, and therefore fall within the "adjunct use" exception. *See* Motion at 8.

Plaintiffs have no response to these arguments. Indeed, Plaintiffs' only attempt to directly engage *any* of these arguments is tucked away in two cursory footnotes. First, Plaintiffs claim that, because Random House's statements are false, they are not protected by the First Amendment, either as commercial speech inextricably intertwined with non-commercial speech or as an adjunct to the First Amendment text of *Every Second Counts*. *See* Opposition at 3 n.3. But this argument fails because it begs the very question Plaintiffs have otherwise failed to demonstrate or plausibly explain, i.e., why Armstrong's lies render "biography" and "Tour de France winner" false.

Second, Plaintiffs promise that this action does not "seek to require publishers to verify every fact contained in a book." *See* Opposition at 12 n.5. At this, Plaintiffs cannot be taken at their word. Elsewhere, Plaintiffs criticize Random House for its failure "to investigate serious charges being leveled against Armstrong by credible sources," to "withdraw" *Every Second Counts* from bookshelves, and to "publish or disseminate corrective notices and advertisements." *See, e.g.,* FAC ¶ 68 and Opposition to Publisher Defendants' Motions to Strike Plaintiffs' First Amended Class Action Complaint ("Anti-SLAPP Opposition") (Dkt. No. 65) at 4. These allegations dispel any doubt regarding whether Plaintiffs seek to impose on Random House a duty to verify the truth of Armstrong's statements in *Every Second Counts*.[2] Plaintiffs also try to distinguish *Winter* on the ground that this action, unlike *Winter*, "does not seek to impose strict liability under products liability law." *See* Opposition at 12 n.5. But Plaintiffs mischaracterize *Winter*. *See Winter*, 938

[2] Random House also notes that Plaintiffs fail to cite a single authority imposing a duty on a book publisher to "withdraw" a book from sales channels if events subsequent to the publication of the book reveal the book contains falsehoods. As detailed in Defendant Penguin Group (USA), Inc.'s Reply Brief in support of its Motion to Dismiss, which Random House incorporates herein by reference, Plaintiffs' argument fails as a matter of law because of the single-publication rule, which limits tort claims premised on mass communications to a single cause of action that accrues upon the first publication of the communication. *See* Reply of Defendant Penguin Group (USA) Inc. in Further Support of Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (Dkt. No. 80) at 18-20 (citing Cal. Civ. Code § 3425.3).

F.2d at 1034 ("In their suit against the book publisher, plaintiffs allege liability based on products liability, *breach of warranty, negligence, negligent misrepresentation, and false representations*." (emphasis added)).

**1. *Keimer* and *Kasky* Provide Plaintiffs No Support**

Plaintiffs cite *Keimer v. Buena Vista Books, Inc.*, 75 Cal. App. 4th 1220 (1999), and *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002), in the hope these cases will save Plaintiffs' claims from Random House's First Amendment defense. *See* Opposition at 9. They do not.[3]

Plaintiffs cite *Keimer* for the proposition that "the sale of all products, including books, can only be based on promotion and advertising that is truthful." *See* Opposition at 9. For several reasons, *Keimer* provides no basis for concluding Plaintiffs' claims are legally sufficient, as Random House has already shown. *See* Random House's Special Motion to Strike the First Amended Complaint Pursuant to Cal. Code of Civ. Proc. § 425.16 ("Anti-SLAPP Motion") (Dkt. No. 36) at 10 n.7. In particular, the *Keimer* court's determination that the statements at issue constituted commercial speech was predicated on the book publisher's *concession* that the statements on the book covers were advertisements. *See Keimer* at 1229. Random House has not conceded any such thing here, and has also demonstrated that "biography" and Tour de France "winner" are not ads. *See* Motion at Section IV.B. In addition, the *Keimer* court's conclusion that the First Amendment did not protect the ads was compelled by the court's application of the state court demurrer standard, under which the allegation of falsity was accepted as true. *Keimer* at 1230. *Keimer*'s narrow holding thus provides no refuge for Plaintiffs, who have utterly failed to plausibly allege, under the federal pleading standard applicable here, the falsity of Random House's statements.[4] *See* Motion at

---

[3] Plaintiffs also cite *Bronco Wine Co. v. Jolly*, 129 Cal. App. 4th 988 (2005), which has absolutely no relevance. *See* Opposition at 10. That case involved a facial attack, on First Amendment grounds, on a statute prohibiting the use of "Napa" in the brand name of a wine unless the grapes used to make the wine actually came from Napa County. *Bronco Wine* at 1006. The defendant conceded that wine brand names are commercial speech, whereas Random House concedes no such thing here. *Id.* at 1005. Further, since the case involved a facial attack on a statute, the court's analysis focused on whether the Legislature's enactment of the statute was "supported by an adequate factual basis," which is not an issue in this action. *Id.* at 1007.

[4] In addition, as noted in Random House's Reply brief in support of its Anti-SLAPP Motion, the Ninth Circuit's decision in *Charles v. City of Los Angeles*, 697 F.3d 1146 (9th Cir. 2012), strongly suggests that *Keimer*'s First Amendment analysis is not valid. *See* Random House's Reply

Section I.

Plaintiffs' reliance on *Kasky* for the similar proposition that the state "has an interest in regulating and prohibiting commercial speech that is deceptive" is unavailing for the same reasons. *See* Opposition at 9-10. Plaintiffs cannot avail themselves of general rules, whether cited in *Keimer*, *Kasky*, or elsewhere, when they have failed to rebut Random House's demonstration that "biography" and "Tour de France winner" are neither commercial speech nor false. *See* Motion at Sections I, IV.B.

In fact, the *Kasky* court's analysis supports Random House, not Plaintiffs, because it highlights additional nuances of the commercial speech doctrine that reinforce the conclusion that Random House's statements are not commercial speech. The court noted that providing commercial speech less First Amendment protection than non-commercial speech was justified because (1) the commercial speaker typically knows more about its own product and thus is uniquely positioned to control falsehoods about the product, and (2) "commercial speech is *hardier* than noncommercial speech in the sense that commercial speakers, because they act from a profit motive, are less likely to experience a chilling effect from speech regulation." *Id.* at 955 (citing *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 771-72 n. 24 (1976)). Neither rationale applies here. First, as a publisher, Random House has no special access to the truth of the words of the ***authors*** contained in the books it publishes in the way that a manufacturer has special access to the truth respecting its ***own*** products. The relationship between Random House and the content of the books it publishes is not analogous to the relationship between, for instance, a car manufacturer and its own cars. Second, words like "biography" are not hardy forms of speech as is actual commercial speech. The chilling effect in this case would likely be significant if the Court were to impose liability on Random House pursuant to Plaintiffs' theory. Publishers like Random House would

---

Memorandum in Support of Special Motion to Strike the First Amended Complaint Pursuant to Cal. Code of Civ. Proc. § 425.16 ("Anti-SLAPP Reply") at 16 n.16. In *Charles*, the court affirmed the First Amendment analysis in *Lacoff v. Buena Vista Publ'g, Inc.*, 183 Misc. 2d 600, 705 N.Y.S. 2d 183 (N.Y. Sup. Ct. 2000). In *Lacoff*, the court rejected the *Keimer* court's analysis regarding the exact same ads, concluding the ads were protected by the First Amendment. *Id.* at 610.

likely refrain from classifying any book as "nonfiction" or "biography" if doing so risked class action liability in the event anything stated in the book turned out to be false.

**2. Plaintiffs' Attempt to Obscure the First Amendment Analysis of Random House's Statements Fails**

Without an answer to Random House's arguments, Plaintiffs instead attempt a diversion. Although the issue is the First Amendment status of *Random House*'s speech, Plaintiffs do not discuss Random House's speech standing alone. Instead, Plaintiffs try to muddy the First Amendment analysis altogether by conflating the several defendants, the various books, and the statements made about the various books, as if all the claims against all the Defendants rise or fall together. *See, e.g.,* Opposition at 8-9 ("The Armstrong Books are intimately bound . . . to the overall commercial activity of the Lance Armstrong Brand."); *id.* at 10 (vaguely referring to Random House's purported liability for "the multi-faceted scheme engaged in by all of the Defendants"). Plaintiffs' conflation of the parties, books, and statements is a smokescreen intended to obscure the vulnerability of Plaintiffs' claims to Random House's First Amendment defense. The only issue is whether Random House's descriptions of *Every Second Counts* as "biography" and Armstrong as a "winner" of the Tour de France are protected by the First Amendment, an issue Plaintiffs do not address.

In a similar way, Plaintiffs try to tie their legal conclusion that the First Amendment does not protect *false* commercial speech to their factual allegation – which is undisputed here – that Armstrong made false statements. *See* Opposition at 13-14 (contending the FAC adequately pleads *false* advertising, in light of the USADA's evidence and Armstrong's televised confession). The argument fails, however, because Plaintiffs cannot save claims arising from *Random House*'s statements by trying to tether them to *Armstrong*'s false statements. As Random House has demonstrated, and Plaintiffs have failed to rebut, Armstrong's lies do not establish that Random House's speech was false. *See* Motion at Section I.

In sum, the First Amendment provides a complete defense to all claims, and Plaintiffs have provided the Court with no reason for concluding otherwise. All claims should be dismissed.

### B. Plaintiffs' Theory of Random House's False Advertising Liability is Facially Implausible

Plaintiffs' claims against Random House should be dismissed for the independent reason that Plaintiffs have failed to plead a facially plausible theory of *false* advertising. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("for a complaint to survive a motion to dismiss, the non-conclusory 'factual content' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief"). Having pled false advertising claims, Plaintiffs should be able to provide some explanation of why the presence of lies within Armstrong's autobiographical memoir contradicts the description of the book as "biography," "autobiography," and/or "nonfiction." In their Opposition, Plaintiffs do not even attempt to do so. For Plaintiffs, it is apparently self-evident. Not so.

As Random House has demonstrated, *see* Motion at Section I, the fact that Armstrong lied about using performance-enhancing drugs in *Every Second Counts* does not plausibly contradict the book's classification as a "biography" or "nonfiction" and convert it to "fiction." *See Greenspan v. Random House, Inc.*, 859 F. Supp. 2d 206, 220 (D. Mass. 2012) ("[t]he term nonfiction only means that the literature is based on true stories or events, not that every statement is in fact demonstrably true"), *aff'd*, 2012 WL 5188792 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1811 (2013). Likewise, "Tour de France winner" neither states nor implies that the winner did not use performance-enhancing drugs. *See Rice v. Sunbeam Prods., Inc.*, No. CV 12–7923, 2013 WL 146270, at *6 (C.D. Cal. Jan. 7, 2013) ("This alleged representation is untethered from the defect that plaintiff complains of, as plaintiff fails to explain, and the Court fails to see, how a reasonable consumer would understand a statement regarding 'all day cooking' to be a representation regarding the temperature of the exterior of the Crock–Pot."). Plaintiffs' contrary interpretation strains credulity and is simply not consistent with the plain meaning of these words. *See Red v. Kraft Foods, Inc.*, No. CV 10–1028, 2012 WL 5504011, at *4 (C.D. Cal. Oct. 25, 2012) ("it strains credulity to imagine that a reasonable consumer will be deceived into thinking a box of crackers is healthful or contains huge amounts of vegetables simply because there are pictures of vegetables and the true phrase 'Made with Real Vegetables' on the box").

Without a response to Random House's plausibility argument, Plaintiffs rely instead on vague generalities, arguing, in essence, that "labels matter" and that false statements on labels are actionable pursuant to the UCL and FAL. *See* Opposition at 14-16. Plaintiffs cite to four principal cases to support their argument, mixing and matching, without rhyme or reason, two cases relating to statutory standing under the UCL and FAL (*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2010), and *Hinojos v. Kohl's Corp.*, No. 11-55793, 2013 U.S. App. LEXIS 10185 (9th Cir. May 21, 2013)) and two cases relating to the First Amendment commercial speech doctrine (*Kasky* and *Keimer*). As detailed *supra* Section II.A.1, *Kasky* and *Keimer* provide Plaintiffs no support.

*Kwikset* and *Hinojos* are also inapposite. It is well-settled that statutory standing to bring a UCL or FAL claim is limited to "a person who has suffered injury in fact and has lost money or property as a result of" the unfair competition or false advertising. *See* Cal. Bus. & Prof. Code § 17204 (UCL); *see also id.* § 17535 (FAL). In both *Kwikset* and *Hinojos*, the courts' holdings only addressed what a plaintiff must plead to satisfy the "injury in fact" and "lost money or property" elements of UCL and FAL standing and the similar damages requirement in the CLRA. But this is not what Random House argued. Instead, Random House challenged the sufficiency of Plaintiffs' allegations respecting the *reliance* element of these statutes, which is embodied in the statutory language "as a result of . . . ."[5] *See* Cal. Bus. & Prof. Code §§ 17204 (UCL), 17535 (FAL); Cal. Civ. Code § 1780(a) (CLRA). Accordingly, *Kwikset* and *Hinojos* have absolutely no bearing on the merits of Random House's Motion.

In sum, Plaintiffs' theory of Random House's liability depends upon the plausibility of their interpretation of "biography" and "nonfiction" as constituting a verification that everything stated in the book is true. Plaintiffs have no explanation for their theory. Accordingly, all claims fail.

---

[5] Although the reliance element of standing was not the focus of the courts' analyses in either case, Random House notes that the plaintiffs in both cases, unlike Plaintiffs here, adequately pled reliance on specific advertisements alleged to be false. *See Kwikset*, 51 Cal. 4th at 327 (noting the plaintiffs alleged they saw and relied on "'Made in U.S.A.'" designation in purchasing locksets); *Hinojos*, 2013 U.S. App. LEXIS 10185, at *2-3 (noting the plaintiff alleged he would not have bought the items in the absence of the specific misrepresentations regarding what the "original" prices were for items that were on sale).

**C. Plaintiffs' Allegations of Random House's Scienter Fail as a Matter of Law**

Plaintiffs also provide no answer to Random House's challenge to the legal sufficiency of the allegations of Random House's scienter, i.e., that the publisher knew or reasonably should have known that the purported false advertising was false. *See* Motion at Section II. Plaintiffs assert that Random House had the requisite culpable state of mind and say nothing more. *See* Opposition at 6 ("The Publisher Defendants continued their promotional and marketing efforts even after January 2011, by which time they knew or should have known that the Armstrong Books were not truthful works of nonfiction biography written by the 'winner' of the Tour." (citing 33 paragraphs in the FAC)).

Plaintiffs' theory of Random House's scienter – as gleaned from their Opposition to Random House's Anti-SLAPP Motion – is that Random House purportedly knew Armstrong was lying "[a]s a result of public revelations published or broadcast by *The New York Times* (May 2010), *Sports Illustrated* (January 2011) and CBS News *60 Minutes* (May 2011)." *See* Anti-SLAPP Opposition (Dkt. No. 65) at 16. But this theory fails as a matter of law for all the reasons detailed in Random House's Anti-SLAPP Reply. *See* Random House's Anti-SLAPP Reply at Section III.A.

Since Plaintiffs have not plausibly alleged, and cannot plausibly allege, that Random House knew or reasonably should have known that its statements were false, all claims fail.

**D. Plaintiffs' Allegations of Random House's Reliance Fail as a Matter of Law**

Plaintiffs offer two responses to Random House's demonstration, *see* Motion at Section III, that the FAC's allegations of reliance are legally insufficient. First, Plaintiffs declare, in conclusory fashion, that they "justifiably relied on the false representations made by the Publisher Defendants that the Armstrong Books were truthful works of nonfiction and that, riding drug-free, Armstrong had legitimately 'won' the Tour, indeed, seven Tours." *See* Opposition at 7 (citing 28 paragraphs of the FAC). Second, Plaintiffs contend that, as a matter of law, they need not prove individual reliance anyway and that reliance can be presumed by virtue of the "false and misleading marketing of products through advertising campaigns, directed at a class of consumers." *See* Opposition at 17. Both contentions fail.

Plaintiffs' conclusion that they have adequately alleged reliance on Random House's

descriptions of *Every Second Counts* as "biography" and Armstrong as a "Tour de France winner" are belied by the allegations of the FAC itself. *See* Motion at Section III. The FAC fails to allege that the Plaintiffs even *saw* Random House's descriptions of the book, much less that Plaintiffs relied on them. Moreover, Plaintiffs cannot plausibly allege reliance on Random House's statements because the FAC pleads detailed allegations of reliance that are inconsistent with the notion that Random House's descriptions induced any of the Plaintiffs to buy the book. *See id.*

Plaintiffs' Opposition only highlights these pleading defects. According to Plaintiffs' own "summary" of the FAC's allegations, Plaintiff Lauria was purportedly induced to buy *Every Second Counts* not by Random House's statements but rather by unidentified "advertising" relating to Armstrong's battle against cancer. *See* Opposition at 7. Plaintiff Wheeler likewise was purportedly induced to buy the book by unidentified reports in "the media." *Id.* Plaintiff Scott Armstrong bought the book "due to his belief in Armstrong's false and misleading representations," *see id.*, but the FAC fails to plead that any statement by Random House caused him to have that belief.

Plaintiffs try to avoid the problem by claiming they do not need to plead or prove reliance at all. Citing *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009), Plaintiffs contend that "individual 'reliance' by Plaintiffs" is unnecessary to state a claim under the UCL, which instead requires only that they show that "'members of the public are likely to be deceived'" by the ads at issue. *See* Opposition at 16-17. Again citing *In re Tobacco II Cases* as support, Plaintiffs also argue that they are entitled to "a presumption (or inference) of reliance" because material misrepresentations were made to the entire putative class. *See* Opposition at 17. These arguments have no merit.

Plaintiffs misconstrue *In re Tobacco II Cases*, which unambiguously held that, while *unnamed* class members need not plead reliance, the named plaintiff(s) and putative class representative(s) "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *In re Tobacco II Cases*, 46 Cal. 4th at 306; *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595-96 (9th Cir. 2012) ("Proposition 64 imposes its reliance requirements only on the named plaintiff, not unnamed class members"); *accord Daniel v. Ford Motor Co.*, No. CIV. 2:11–02890, 2013 WL

2474934, at *4 (E.D. Cal. June 7, 2013); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 969 (S.D. Cal. 2012) ("For fraud-based claims under all three consumer statutes the named Class members must allege actual reliance to have standing.").

Further, *In re Tobacco II Cases* did not hold that demonstrating that "members of the public are likely to be deceived" is all that is required of a well-pled UCL claim. This quote comes from *Kasky*, where the court's only point was that an ad that is literally true is nevertheless actionable under the UCL or FAL if it is misleading in a way that is likely to deceive the public:

> We have also recognized that these laws prohibit not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public. Thus, to state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived.

*See Kasky*, 27 Cal. 4th at 951 (internal quotation marks and citations omitted). Plaintiffs read too much into this excerpt. The court was only expanding on what constitutes "false" advertising within the meaning of the UCL and FAL, not setting forth the minimum pleading requirements sufficient to defeat a motion to dismiss. Nothing in these cases eliminates the need to plead and prove the Named Plaintiffs' reliance (or injury in fact or any other required element of a UCL claim). *See Safaie v. Jacuzzi Whirlpool Bath, Inc.*, 192 Cal. App. 4th 1160, 1166 (2011) ("a named class representative alleging fraudulent misrepresentation under the UCL must establish reliance, causation, and injury").

Plaintiffs' contention that they are entitled to a "presumption" of reliance is equally mistaken. *See* Opposition at 17. In *In re Tobacco II Cases*, the court affirmed that "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *See* 46 Cal. 4th at 327. However, a presumption of reliance is inappropriate because Plaintiffs have not even alleged they *saw* Random House's statements. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1027 (2012) (refusing to presume reliance because, "although the Amended Complaint describes the terms of Defendant's privacy policy in detail, Plaintiffs never allege that they were aware of the privacy policy, let alone saw or read it"). Nor have Plaintiffs provided any plausible explanation for how descriptions of the book as a "biography" and Armstrong as a "Tour de France winner" could have been material, i.e., "an immediate cause" of their purchasing decisions. *See In*

*re Tobacco II Cases* at 328. Plaintiffs proclaim that *all* of the misrepresentations identified in the 85-page FAC are material. *See* Opposition at 15 (claiming all "the misrepresentations in the marketing of the books" are material, because Plaintiffs would not have bought the book if they had known "that falsely labeled books were an important and significant cog in an economic machine designed to enhance the Armstrong Brand, to generate massive profit for the Defendants and, most importantly, to conceal and perpetuate illegal activity"). Plaintiffs' absurd explanation proves too much – and thus proves nothing. If every representation was material, then nothing was material. *See Ventura Group Ventures, Inc. v. Ventura Port Dist.*, 24 Cal. 4th 1089, 1107 (2001) ("VGV's argument proves too much. If everything is special, then nothing is special.").

## III. PLAINTIFFS FAIL TO RESPOND TO RANDOM HOUSE'S ARGUMENTS DIRECTED TO SPECIFIC CAUSES OF ACTION

As detailed in Random House's moving papers, Plaintiffs' claims against Random House also fail for independent reasons specific to each cause of action. First, Plaintiffs' UCL, FAL, and CLRA claims fail because Random House's statements would not deceive a reasonable consumer. *See* Motion at Section V. Plaintiffs' Opposition does not even mention this argument.

Second, Plaintiffs' negligent misrepresentation and fraud claims fail for lack of a cognizable injury. *See* Motion at Section VI. Plaintiffs contend, citing *Kwikset* and *Hinojos*, that they have adequately pled economic injury. *See* Opposition at 18-19. As noted *supra* Section II.B, however, *Kwikset* and *Hinojos* addressed the injury and damages requirements of only the UCL, FAL, and CLRA. These cases have no bearing on what constitutes legally cognizable damages for the purposes of a negligent misrepresentation or fraud claim.

For these independent reasons too, then, all five causes of action against Random House fail.

## IV. THE COMPLAINT'S ALLEGATIONS ARE NOT PLED WITH PARTICULARITY AS REQUIRED BY FED. R. CIV. P. 9

Plaintiffs assert that the FAC satisfies the heightened pleading standard provided by Rule 9(b) of the Federal Rules of Civil Procedure by alleging the "'who, what, when, where, and how of the misconduct charged.'" *See* Opposition at 19-20. Plaintiffs' 85-page FAC – which purports to incorporate by reference over 200 pages of additional materials, *see* Plaintiffs' Request for Judicial

Notice in Support of Oppositions to Defendants' Motions to Dismiss and Motions to Strike (Dkt. No. 67) – is indeed voluminous. But the volume of Plaintiffs' submissions does not mean that Rule 9's requirements have been met.

Plaintiffs' claims against Random House arise from the purchase of a single book by three Named Plaintiffs and are premised on the theory that a few very specific descriptions of that book ("biography," "nonfiction," and "Tour de France winner") are false. In light of these claims, Plaintiffs must allege the "'time, place, and specific content of the false representations.'" *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). They do not. None of the Plaintiffs alleges (i) that they saw these descriptions, (ii) that they were induced to buy the book by these descriptions, (iii) where they bought the book or saw these descriptions, or (iv) when they bought the book or saw these descriptions. *See Rice*, 2013 WL 146270, at *6 ("At a minimum, plaintiff must allege what representation(s) she relied on, including where she encountered these representations in order to plead that the representations would deceive a reasonable consumer, and that she herself relied on them in purchasing and using the Crock–Pot.").

Instead, Plaintiffs' Opposition refers generically to Plaintiffs' allegations regarding "Defendants' scheme to defraud consumers," citing to a few dozen paragraphs in the FAC. *See* Opposition at 20. But these generic references to allegations spanning the entirety of the marketing of *Every Second Counts* from 2003 to the present do not satisfy Rule 9 because they do not even set forth the basic factual circumstances of the purchase of the book by the only three people who have alleged claims against Random House. Accordingly, the FAC should be dismissed.

**CONCLUSION**

Plaintiffs' fundamental theory is that Random House falsely advertised *Every Second Counts* by describing the book as "biography" and "nonfiction" and Armstrong himself as a Tour de France "winner." These descriptions are false, so Plaintiffs explain, because Armstrong lied in the book about using performance-enhancing drugs. Accordingly, to use Plaintiffs' own words, Armstrong's biography "should have been 'labeled as fiction'" instead. *See* Anti-SLAPP Opposition (Dkt. No. 65) at 19.

Plaintiffs have now had 40 pages of briefing – in opposing both this Motion and Random

House's Anti-SLAPP Motion – to explain why their claims against Random House are legally sufficient. They have failed. Plaintiffs offer no explanation at all – much less one that is facially plausible – for why the presence of lies in Armstrong's book converts the work to something other than a biography or nonfiction. Plaintiffs also have no explanation for why their claims escape the First Amendment, especially given that Random House's descriptions do little more than innocuously classify the book ("biography") and provide basic background information about the author ("Tour de France winner"). Plaintiffs also fail to remedy the defects inherent in their allegations of the Named Plaintiffs' reliance and Random House's scienter.

Moreover, these defects cannot be cured. No new allegation can change the fact that *Every Second Counts* truly is a "biography," whether Armstrong lied in it or not. Likewise, there is nothing Plaintiffs could allege that they have not already alleged that would change the First Amendment status of Random House's descriptions. And Plaintiffs have already alleged that things other than Random House's statements induced them to buy the book, and they cannot change their story now.

Accordingly, Random House respectfully requests that the Court grant its Motion and dismiss all claims against Random House, Broadway Books, and Crown Publishing Group. Since amendment would be futile, Random House respectfully requests that the Court dismiss all claims with prejudice.

Dated: July 12, 2013

Respectfully submitted,

SIDLEY AUSTIN LLP

By: /s/ Stephen G. Contopulos
Stephen G. Contopulos
Attorneys for Defendant Random House, LLC, successor-in-interest to Random House, Inc., also erroneously sued as Broadway Books and Crown Publishing Group