UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROB STUTZMAN, et al., | No. 2:13-cv-0116-MCE-KJN |
| Plaintiffs, | |
| v. | ORDER |
| LANCE ARMSTRONG, et al., | |
| Defendants. | |

INTRODUCTION

Presently pending before the court is plaintiffs Rob Stutzman, Jonathan Wheeler, Gloria Lauria, David Reimers, and Scott Armstrong's motion to compel discovery from defendants Lance Armstrong ("Armstrong"); Penguin Group (USA) Inc., G.P. Putnam's Sons, and The Berkley Publishing Group (collectively "Penguin Group"); and Random House, Inc., Broadway Books, and Crown Publishing Group (collectively "Random House").[1] (ECF Nos. 61, 69.) A hearing on plaintiffs' motion was conducted on August 1, 2013. (ECF No. 97.) Kevin Roddy, Henry Rossbacher, and Tracey Buck-Walsh appeared on behalf of plaintiffs; Zia Modabber

---

[1] Although counsel for remaining defendants Thomas Weisel and William Stapleton also signed the joint statement regarding the parties' discovery disagreement and appeared at the hearing, the present motion does not directly involve those defendants.

1

appeared on behalf of defendant Lance Armstrong; Jonathan Herman appeared on behalf of the Penguin Group defendants; Bradley Ellis appeared on behalf of the Random House defendants; Marc Harris appeared on behalf of defendant William Stapleton; and Kevin Hefner appeared on behalf of defendant Weisel.

After considering the parties' joint statement, the oral argument at the hearing, and the applicable law, the court denies plaintiffs' motion to compel without prejudice.

BACKGROUND

The background facts are taken from the parties' joint statement regarding their discovery disagreement, unless otherwise noted. (See ECF No. 70.) On January 22, 2013, plaintiffs, residents of California, commenced this proposed statewide class action, invoking the court's subject matter jurisdiction pursuant to the Class Action Fairness Act. (ECF No. 1.) Plaintiffs' First Amended Class Action Complaint for Damages and Injunctive, Equitable, and Declaratory Relief against defendants Armstrong; William J. Stapleton ("Stapleton"), Armstrong's alleged long-time agent and manager; Thomas W. Weisel ("Weisel"), Armstrong's alleged financier; Penguin Group; and Random House, filed on March 7, 2013, asserts claims for violations of: (1) the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"); (2) the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"); (3) the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"); (4) negligent misrepresentation; and (5) fraud and deceit. (ECF No. 22.)

Plaintiffs summarize their claims as follows:

> Plaintiffs' claims against Defendants arise from misrepresentations contained in and disseminated about Defendant Armstrong's books, including IT'S NOT ABOUT THE BIKE: MY JOURNEY BACK TO LIFE, published by Penguin Group in hardcover beginning in May 2000 and in paperback beginning in September 2001, and EVERY SECOND COUNTS, published by Random House in hardcover beginning in January 2003 and in paperback beginning in June 2004.
>
> Plaintiffs allege that during the Class Period,[2] Armstrong's and the Publisher Defendants' advertising, marketing, publicity and other

---

[2] The Class Period is generally alleged to be the period running from the initial publication date of the particular book purchased by a California consumer to the present. (ECF No. 22, ¶¶ 98.)

> promotional efforts for the Armstrong books, represented, labeled and sold them as truthful and honest works of nonfiction biography when, in fact, Defendants knew or should have known that these books were works of fiction containing false and misleading statements. Plaintiffs allege that during the Class Period, these Defendants engaged in a sophisticated promotional campaign, including print and electronic media advertisements, media appearances – including Armstrong's appearances on television interview shows – and book signings. Plaintiffs allege that they and the members of the Class were misled by these Defendants' statements and purchased the Armstrong Books based upon the false belief that they were truthful and honest works of nonfiction biography, and that they would not have purchased the books and/or they would not have paid as much money for the books had they known the true facts concerning Armstrong's years of lies and misconduct and his admitted involvement in a sports doping conspiracy that has led to his recent and ignominious public exposure and fall from glory.
>
> Plaintiffs allege that the Publisher Defendants ignored the truth and/or avoided conducting a careful investigation into the merits of the doping charges that were repeatedly leveled against Armstrong during 2010-2012, if not earlier, so that they could continue advertising, marketing, selling and profiting from IT'S NOT ABOUT THE BIKE and EVERY SECOND COUNTS. They took no steps to publish or disseminate corrective notices and/or advertisements, withdraw the Armstrong Books for which they were responsible from sales channels, or offer consumers refunds of money they had paid to purchase hardcover, paperback, electronic, or audiobook editions of the books. Even after this class action was commenced on January 22, 2013, the Publisher Defendants continued to sell the books using the same advertising and promotional materials, including book covers, fly-leafs and Internet website postings, that they had used for years.

(ECF No. 70 at 6-7) (internal citations omitted). Plaintiffs additionally allege that Stapleton and Weisel "aided and abetted Armstrong and/or conspired with him and are, thus, subject to secondary liability for Armstrong's violations of the CLRA, UCL and FAL, as well as negligent misrepresentation and fraud." (Id. at 7 n.2.)

Thereafter, all defendants filed motions to dismiss plaintiffs' first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and motions to strike plaintiffs' claims under California's anti-SLAPP statute, Cal. Civ. Proc. Code §§ 425.16 et seq. (ECF Nos. 36-37, 41-42, 46-47, 53, 55-57.) These motions are set for hearing before the assigned district judge, Judge England, on August 8, 2013. (ECF No. 58.)

////

1   With respect to the parties' present discovery dispute, on March 26, 2013, plaintiffs
2   served their initial disclosures, and on March 27, 2013, plaintiffs and defendants Armstrong,
3   Penguin Group, and Random House held their Rule 26(f) conference.  A Rule 26(f) conference
4   between plaintiffs, Weisel, and Stapleton was later held on May 9, 2013.  (ECF No. 70 at 10.)  At
5   the Rule 26(f) conferences, and in their joint status reports, defendants objected to providing
6   initial disclosures and conducting discovery prior to resolution of their motions to dismiss and
7   motions to strike.  (ECF Nos. 33, 52.)  Accordingly, defendants have not provided initial
8   disclosures to date.[3]

9   Additionally, on March 27, 2013 (the day of the Rule 26(f) conference), plaintiffs served
10  112 requests for admission on Armstrong, and on April 9, 2013, plaintiffs served 26 requests for
11  production of documents on each of the Publisher Defendants.  No discovery requests have yet
12  been served on defendants Stapleton and Weisel.  Defendants Armstrong, Random House, and
13  Penguin Group do not contend that plaintiff's discovery was necessarily prematurely served—
14  instead, they all objected to the propounded discovery on the grounds that discovery should be
15  stayed in light of defendants' anti-SLAPP motions to strike and motions to dismiss.  (ECF No. 70
16  at 10-11, Exs. A-C.)

17  In particular, defendants contend that all discovery, including the provision of initial
18  disclosures and responses to propounded discovery requests, are automatically stayed by the
19  filing of defendants' anti-SLAPP motions to strike pursuant to California Civil Procedure Code
20  section 425.16(g).  Furthermore, defendants argue that a stay of discovery is independently
21  appropriate under Federal Rule of Civil Procedure 26(c).  In turn, plaintiffs contend that a stay of
22  discovery is inappropriate because section 425.16(g) impermissibly collides with the Federal
23  Rules of Civil Procedure and therefore does not apply, and that even if section 425.16(g) were
24  applicable, plaintiffs have shown good cause to conduct fact discovery so as to enable them to

---

[3] Generally, a party "must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or *unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan*.  In ruling on the objection, the court must determine what disclosures, if any, are to be made and must set the time for disclosure."  Fed. R. Civ. P. 26(a)(1)(C) (emphasis added).

4

adequately respond to defendants' motions to strike.  (ECF No. 70 at 11, 49-50.)

Although the parties have engaged in at least two substantive telephonic meet-and-confer sessions regarding their discovery dispute, they have been unable to informally resolve the matter. (ECF No. 70 at 13-14.)  As such, the instant motion to compel by plaintiffs ensued.

DISCUSSION

Known as the "anti-SLAPP" statute, California Civil Procedure Code section 425.16 "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839 (9th Cir. 2001).  In particular, the California Legislature found that:

> there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.  The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process.  To this end, this section shall be construed broadly.

Cal. Civ. Proc. Code § 425.16(a).  The anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. Id. § 425.16(b)(1).[4]

In deciding an anti-SLAPP motion, a court follows a two-step process.  "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." Equilon Enterprises v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002); see also Rogers v. Home Shopping Network, 57 F. Supp. 2d 973, 976 (C.D. Cal. 1999) ("On a special motion to strike, the moving party bears the initial burden of establishing a

---

[4] An "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:…(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e).

prima facie showing that the plaintiff's cause of action arises from the defendant's free speech or petition activity."). Second, "if the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." Equilon Enterprises, 29 Cal. 4th at 67; Rogers, 57 F. Supp. 2d at 976 ("Once the party moving to strike the complaint makes that threshold showing, the burden shifts to the responding plaintiff to establish a probability of prevailing at trial."). "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." Navellier v. Sletten, 29 Cal. 4th 82, 89 (2002).

California Civil Procedure Code section 425.16 also provides that a special motion to strike "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper. The motion shall be scheduled by the clerk of the court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing." Cal. Civ. Proc. Code § 425.16(f). Section 425.16 further provides that "[a]ll discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision." Cal. Civ. Proc. Code § 425.16(g). Thus, "[i]n state court, discovery is automatically stayed upon the filing of an anti-SLAPP motion and the opposing party must demonstrate good cause to justify specified discovery as an exception to the stay." Smith v. Payne, 2012 WL 6712041, at *4 n.7 (N.D. Cal. Dec. 26, 2012).

Although a creature of the California Civil Procedure Code, anti-SLAPP motions have been held to be available to litigants proceeding in federal court. Thomas v. Fry's Elecs., Inc., 400 F.3d 1206, 1206-07 (9th Cir. 2005).[5] Nevertheless, the Ninth Circuit has observed that the

---

[5] To be sure, as plaintiffs point out, some jurists have been very critical of the use of an essentially California state law procedural device in federal court, and federal courts have struggled with the scope of the anti-SLAPP statute's application, as discussed below. See Makaeff v. Trump University, LLC, 715 F.3d 254, 272-75 (9th Cir. 2013) (Kozinski, Ch. J.,

"discovery-limiting aspects of section 425.16(f) and (g) collide with Federal Rule of Civil Procedure 56," which requires discovery "where the nonmoving party has not had the opportunity to discover information that is essential to its opposition." Metabolife Int'l, Inc., 264 F.3d at 846; see also Rogers, 57 F. Supp. 2d at 980 ("Thus, subdivisions (f) and (g) create a default rule that allows the defendant served with a complaint to immediately put the plaintiff to his or her proof before the plaintiff can conduct discovery…If this expedited procedure were used in federal court to test the plaintiff's evidence before the plaintiff has completed discovery, it would collide with Federal Rule of Civil Procedure 56.").

"However, since *Metabolife* and *Rogers* were decided, courts have recognized the distinction between an anti-SLAPP motion that is in the nature of a Rule 12(b)(6) motion to dismiss and one that presents issues of fact, akin to a Rule 56 summary judgment motion, for purposes of determining whether the discovery stay applies." Smith, 2012 WL 6712041, at *4 n.7. This distinction was recognized in Rogers itself:

> In sum, § 425.16 applies in federal court. However, it cannot be used in a manner that conflicts with the Federal Rules. This results in the following outcome: If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies. If a defendant makes a special motion to strike based on the plaintiff's alleged failure of proof, the motion must be treated in the same manner as a motion under Rule 56 except that again the attorney's fees provision of § 425.16(c) applies.

Rogers, 57 F. Supp. 2d at 983. Stated differently, the discovery stay provisions of section 425.16 apply in federal court only if: "(1) the factual basis of the case has been developed through discovery or similar prior proceedings to the extent a motion for summary judgment would be appropriate; or (2) the parties agree that further discovery is not necessary; or (3) the only issue presented by the motion is an issue of law and the motion is suitable for decision as a motion to dismiss pursuant to Rule 12(b)(6)." Aeroplate Corp. v. Arch Ins. Co., 2006 WL 3257487, at * 9 (E.D. Cal. Nov. 9, 2006) (unpublished) (internal citations omitted); see also Moser v. Triarc

---

concurring). However, under the present law of the Ninth Circuit, parties may utilize anti-SLAPP motions in federal court.

7

1  Companies, Inc., 2007 WL 3026425, at *3 (S.D. Cal. Oct. 16, 2007).

2  With these general principles in mind, the court turns to the parties' particular discovery
3  dispute. In essence, the parties disagree as to whether defendants' anti-SLAPP motions to strike
4  raise any issues of fact or evidence, similar to a summary judgment motion, which would
5  preclude a stay of discovery in federal court under the principles outlined above.

6  Defendants contend that their anti-SLAPP motions turn on purely legal deficiencies of the
7  first amended complaint and do not involve consideration of extrinsic evidence. Defendants
8  argue that plaintiffs fail to plead adequate facts in support of vital elements of their claims, such
9  as the existence of justifiable reliance on a false statement and cognizable damages. For example,
10  defendants state that the first amended complaint fails to allege that plaintiffs saw or heard any of
11  the allegedly false statements in the first amended complaint before buying the books.
12  Defendants further argue that their allegedly false statements were protected by the First
13  Amendment. (ECF No. 70 at 50-56.)

14  On the other hand, plaintiffs claim that defendants' anti-SLAPP motions raise factual
15  disputes and that discovery is essential to opposing these motions. Plaintiffs seek discovery
16  regarding, *inter alia*, the following topics:

- Armstrong's use, possession of and/or trafficking in illegal performance enhancing drugs ("PEDs") and his participation in running the U.S. Postal Service cycling team as a doping conspiracy, *see* Requests for Admissions Nos. 1-85, 103-104 & 110-111.

- Allegedly false and misleading statements written by Armstrong and published by the Publisher Defendants in the Armstrong Books and/or on their covers, and in other promotional materials, print advertisements and fly-leafs, *see* Requests for Admissions Nos. 86-94, 105-106 & 112.

- Public denials of doping and use of PEDs issued by Armstrong and/or persons acting on his behalf, *see* Requests for Admissions Nos. 95-102.

- Armstrong's and the Publisher Defendants' failures to correct the jackets of the Armstrong Books, *see* Requests for Admissions Nos. 107-109.

- Contractual agreements between Armstrong and the Publisher Defendants, *see* Requests for Production of Documents No. 1.

8

- Documents and other information concerning advertising and marketing of the Armstrong Books, *see* Requests for Production of Documents Nos. 2-5, 13 & 15.

- Documents and other information concerning identification and labeling the Armstrong Books as "nonfiction" and "biography," *see* Requests for Production of Documents Nos. 9-12, 17-18.

- Documents and other information showing that the Publisher Defendants knew or should have known that the Armstrong Books were not works of nonfiction biography, *see* Requests for Production of Documents Nos. 6-8, 14 & 16.

(ECF No. 70 at 11-13.)  Plaintiffs also raised the issue of a need for discovery in their oppositions to the anti-SLAPP motions to strike pending before the district judge.

As an initial matter, the undersigned has significant concerns regarding whether defendants' anti-SLAPP motions to strike truly raise any factual issues requiring discovery.  A mere peek at defendants' anti-SLAPP motions to strike, which accompany their Rule 12(b)(6) motions to dismiss, suggests that these motions only challenge the adequacy of plaintiffs' *factual allegations and legal theories*, and do not turn on any extrinsic evidence or proof.  If that is the case, the motions are more akin to Rule 12(b)(6) motions to dismiss, and the discovery stay provisions of California Civil Procedure Code section 425.16 would conceivably apply, because they would not impermissibly collide with Federal Rule of Civil Procedure 56.[6]

---

[6] At the hearing, plaintiffs suggested for the first time that application of the discovery stay provisions of California Civil Procedure Code section 425.16 may conflict with Federal Rule of Civil Procedure 26(c), because Rule 26(c) would ordinarily have put the burden on defendants to show good cause for staying discovery.  As an initial matter, plaintiffs did not provide any authority in support of that proposition as part of its briefing – the cases cited by plaintiffs, such as Metabolife, Rogers, and Aeroplate Corp., all concerned a potential collision between section 425.16 and Rule 56.

Nevertheless, it does not appear that a section 425.16 discovery stay corresponding to an anti-SLAPP motion which only challenges the *legal sufficiency* of a plaintiff's claim would necessarily collide with Rule 26(c).  "In determining whether good cause exists for the protective order, the court must balance the interests in allowing discovery against the relative burdens to the parties."  Arredondo v. Delano Farms Co., 2012 WL 787552, at *2 (E.D. Cal. Mar. 9, 2012) (unpublished).  Responding to voluminous discovery requests for a period of time extending back over several years can be very costly, burdensome, and therefore prejudicial, especially in the event that it is ultimately determined that a plaintiff's claims cannot survive the pleadings stage.

1    Additionally, assuming that defendants' anti-SLAPP motions to strike only challenge the
2    legal sufficiency of plaintiffs' claims, the discovery requested would not be essential to opposing
3    defendants' motions, because plaintiffs would not be required to submit proof or evidence in
4    support of their claims to survive defendants' motions – only sufficient, non-conclusory factual
5    allegations are necessary.  By way of example, plaintiffs would not need to conduct discovery to
6    uncover evidence of allegedly false and misleading statements made by Armstrong or the
7    Publisher Defendants in the course of authoring, publishing, or promoting the Armstrong Books
8    in order to oppose defendants' motions.  Plaintiffs presumably already know which allegedly
9    false statements they relied on to buy the Armstrong Books and can include such facts in their
10   complaint.  The district judge would then have to decide the legal question of whether or not such
11   alleged false statements constitute protected speech under the First Amendment.
12   While at least some of plaintiffs' above-mentioned topics or issues may certainly be
13   pertinent to explore from an evidentiary perspective if plaintiffs' claims survive the pleadings
14   stage, they do not preclude resolution of motions merely challenging the legal sufficiency of
15   plaintiffs' claims.  To the extent that plaintiffs seek discovery to uncover potential factual
16   allegations that they cannot presently make, that position, as the Ninth Circuit observed, is
17   "unsupported and defies common sense.  The purpose of F.R.Civ.P. 12(b)(6) is to enable
18   defendants to challenge the legal sufficiency of complaints without subjecting themselves to
19   discovery."  Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987); see
20   also APL Co. Pte. Ltd. v. UK Aerosols Ltd, Inc., 452 F. Supp. 2d 939, 945 (N.D. Cal. 2006)
21   (noting that a "plaintiff is required to state a viable claim at the outset, not allege deficient claims
22   and then seek discovery to cure the deficiencies.").
23   Of course, the above discussion necessarily assumes that defendants' motions do not
24   present any evidentiary issues, issues of proof, or issues of disputed fact.  Although a "peak" at

---

As such, good cause may not be difficult to show, and the interests of section 425.16(g) and Rule 26(c) appear to align under the circumstances of such a case. Furthermore, even though defendants in this case did not formally file a motion for a protective order pursuant to Rule 26(c), they raised their objections to conducting discovery prior to resolution of their anti-SLAPP motions to strike and motions to dismiss at the discovery conferences and in the joint status reports submitted to the court.

the motions suggests as much, the court has not been called upon to scrutinize the motions in depth and rule on their merits.  As the court observed at the hearing, the district judge, who will be resolving defendants' motions, is ultimately in the best position to determine whether defendants' motions raise any factual issues and whether discovery, limited or otherwise, is necessary to oppose those motions.  Given that the dispositive motions are set for hearing before the district judge on August 8, 2013, the court finds that the most prudent course of action would be to defer to the district judge's judgment in the matter.  After his analysis of the dispositive motions, he may determine that no discovery is necessary, that discovery can proceed without any limitations, or that some narrow, limited discovery is warranted.[7]  While plaintiffs are understandably impatient to start discovery, they have not made any showing of significant prejudice that would result from a temporary stay of discovery.  By contrast, defendants risk incurring substantial cost, expense, and burden in engaging in the proposed discovery, which may be futile if the district judge finds that plaintiffs fail to state viable claims.

Accordingly, the court denies plaintiffs' motion to compel without prejudice at this juncture.

CONCLUSION

For the reasons discussed above, IT IS HEREBY ORDERED that plaintiffs' motion to compel (ECF Nos. 61, 69) is DENIED WITHOUT PREJUDICE.

Dated:  August 2, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[7] Indeed, the parties may wish to consider seeking clarification from the district judge regarding the propriety of discovery in the course of the dispositive motion proceedings.

11